UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                     )
UNITED STATES OF AMERICA,            )
            PLAINTIFF,               )  CASE NO. 13CR4228-DMS
                                     )
                                     )  SAN DIEGO, CALIFORNIA
                                     )THURSDAY, MARCH 27, 2014
                                     )   1:30 P.M. CALENDAR
ERGUN YILDIZ, ARASH GHAHREMAN,       )
ET AL.,                              )
            DEFENDANTS.              )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

REPORTED BY:                  LEE ANN PENCE,
                              OFFICIAL COURT REPORTER
                              UNITED STATES COURTHOUSE
                              333 WEST BROADWAY ROOM 1393
                              SAN DIEGO, CALIFORNIA 92101

INTERPRETER:                  BADI BADIOZAMANI

```
COUNSEL APPEARING:

FOR PLAINTIFF:              LAURA E. DUFFY,
                           UNITED STATES ATTORNEY
                           BY:  SHANE P. HARRIGAN
                           ASSISTANT U.S. ATTORNEY
                           880 FRONT STREET
                           SAN DIEGO, CALIFORNIA 92101


FOR DEFENDANT              THOMAS J. WARWICK, ESQ.
YILDIZ:                    GRIMES AND WARWICK
                           2664 FOURTH AVENUE
                           SAN DIEGO, CALIFORNIA 92103

FOR DEFENDANT              FEDERAL DEFENDERS OF SAN DIEGO, INC.
GHAHREMAN:                      BY:  ELLIS M. JOHNSTON,
                                TRIAL ATTORNEY
                           225 BROADWAY, SUITE 900
                           SAN DIEGO, CALIFORNIA 92101
```

SAN DIEGO, CALIFORNIA – THURSDAY, MARCH 27, 2014 – 1:30 P.M.

\* \* \*

**THE CLERK:**  NO. 2 ON CALENDAR, CASE NO. 13CR4228, UNITED STATES OF AMERICA VERSUS ERGUN YILDIZ AND ARASH GHAHREMAN; ON FOR MOTION HEARING.

**MR. HARRIGAN:**  GOOD AFTERNOON, YOUR HONOR.  SHANE HARRIGAN ON BEHALF OF THE UNITED STATES.

**MR. WARWICK:**  GOOD AFTERNOON, YOUR HONOR.  TOM WARWICK APPEARING ON BEHALF OF ERGUN YILDIZ WHO IS PRESENT BEFORE THE COURT IN CUSTODY.

**THE COURT:**  GOOD AFTERNOON.

**MR. JOHNSTON:**  GOOD AFTERNOON, YOUR HONOR.  TRIP JOHNSTON OF FEDERAL DEFENDERS ON BEHALF OF MR. GHAHREMAN WHO IS PRESENT ON BOND.

WITH ME TODAY IS ONE OF OUR LEGAL INTERNS, ROXANNA SANDOVAL.

**MR. BADIOZAMANI:**  GOOD AFTERNOON, YOUR HONOR.  BADI BADIOZAMANI, FARSI INTERPRETER.

**THE COURT:**  THANK YOU.  WELCOME.

WE ARE SET TODAY FOR MOTIONS AND AN EVIDENTIARY HEARING.

WITH RESPECT TO THE EVIDENTIARY HEARING, I HAVE LISTENED TO THE AUDIO OF THE INTERVIEW AND I HAVE READ MOST OF THE TRANSCRIPT, CERTAINLY THE KEY PORTIONS OF IT THAT THE PARTIES FOCUSED ON IN THE BRIEFING.

DO THE PARTIES ANTICIPATE ADDITIONAL TESTIMONY?

**MR. HARRIGAN:**  WELL, YOUR HONOR, I HAVE AGENT HAMAKO HERE TODAY.  I GUESS I LEAVE THAT TO DEFENSE COUNSEL.

I THINK IT CAN BE DECIDED ON THE AUDIO RECORDING AND ON THE TRANSCRIPT BECAUSE DEFENSE COUNSEL HASN'T MENTIONED THAT THERE ARE ANY THREATS OR COERCIVE TACTICS.  I WOULD JUST CALL THE AGENT TO DESCRIBE MORE OF THE CIRCUMSTANCES OF THE INTERVIEW, AS WELL AS SOME OTHER MINOR ISSUES.

BUT THE EXTENT -- YOU KNOW, THE EXTENT THAT MR. JOHNSTON IS CLAIMING THAT IT IS MORE THAN THE THREE ISSUES THAT HE RAISED IN THE PAPERS, THEN WE HAVE AN AGENT WILLING TO TESTIFY HERE TODAY TO GIVE A COMPLETE PICTURE TO THE COURT.

**THE COURT:**  ALL RIGHT.

MR. JOHNSTON.

**MR. JOHNSTON:**  WELL, IT IS CERTAINLY THE GOVERNMENT'S BURDEN TO PROVE VOLUNTARINESS.  SO IF THE GOVERNMENT CHOOSES NOT TO PUT ON THEIR WITNESS, I THINK -- I AM PREPARED TO ARGUE ON THE TRANSCRIPT ITSELF WHAT I BELIEVE TO BE THE COERCIVE NATURE OF THIS INTERROGATION.

TO THE EXTENT THAT THE GOVERNMENT WANTS TO EXPLAIN FURTHER THE CIRCUMSTANCES OF THE OFFENSE, I DON'T SEE HOW IT HURTS.  I AM CERTAINLY NOT GOING TO GIVE UP THE OPPORTUNITY TO CROSS-EXAMINE ON THAT TO THE EXTENT THAT THE GOVERNMENT WANTS TO RELY ON IT.  SO WE HAVE GOT AGENT HAMAKO HERE, I AM PREPARED TO GO FORWARD WITH HIS TESTIMONY.

**THE COURT:**  ALL RIGHT.  WELL, I AM CONTENT TO
PROVIDE A TENTATIVE, AND THEN TO HEAR ARGUMENT.  AND IF THE
PARTIES THEREAFTER BELIEVE IT MAY BE APPROPRIATE TO HAVE THE
AGENT TESTIFY, WE CAN PROCEED THAT WAY AS WELL.

**MR. HARRIGAN:**  I THINK THAT MAKES SENSE, YOUR HONOR.
FOR THE RECORD, AGENT HAMAKO IS SEATED AT THE GOVERNMENT TABLE
HERE THIS AFTERNOON.

**THE COURT:**  YES.  THANK YOU.

ON THAT ISSUE, THE TENTATIVE WOULD BE TO DENY THE
MOTION ON THE THREE ASSERTED GROUNDS.

FIRST, AS TO THE SIXTH AMENDMENT ISSUE, THE
INVOCATION OF COUNSEL.  IN LISTENING TO THE AUDIO AND READING
THE TRANSCRIPT, THERE DID NOT APPEAR TO BE AN UNEQUIVOCAL
INVOCATION OF RIGHT TO COUNSEL.  INITIALLY THERE WAS AN
INDICATION THAT MR. GHAHREMAN WAS PREPARED TO TALK TO THE
AGENTS.  THERE WERE STATEMENTS INITIALLY THAT HE SAID:  I
DON'T NEED AN ATTORNEY.

HE INDICATED THAT HE WAS WILLING TO ANSWER QUESTIONS
AND SAID, IN EFFECT:  SURE, I AM GOOD WITH YOU GUYS, I DON'T
NEED AN ATTORNEY.

THEREAFTER, LATER IN THE INTERVIEW, THERE WERE
STATEMENTS BY MR. GHAHREMAN INDICATING THAT HE MAY NEED AN
ATTORNEY, AND THERE WAS A LOT OF DISCUSSION BACK AND FORTH AT
THAT JUNCTURE ABOUT WHETHER OR NOT MR. GHAHREMAN WAS IN FACT
INVOKING.

AND THE AGENTS SPENT QUITE A BIT OF TIME GOING OVER THAT ISSUE AND MAKING CLEAR THAT IF, IN FACT, MR. GHAHREMAN WAS ASKING FOR COUNSEL THAT THEY WOULD STOP QUESTIONING.

THEN THERE WAS SOME UNCERTAINTY ABOUT WHAT THAT MEANT IN THE MIND OF MR. GHAHREMAN, INCLUDING WHETHER HE COULD HAVE AN ATTORNEY AT THAT MOMENT OR AT A LATER TIME.  THE AGENTS MADE IT CLEAR THAT HE COULD NOT HAVE AN ATTORNEY RIGHT AT THAT MOMENT, BUT THAT IF HE INVOKED THE INTERROGATION WOULD STOP.  AND THAT AN ATTORNEY WOULD BE APPOINTED FOR HIM AND BE PRESENT AT ABOUT THE TIME OF THE ARRAIGNMENT.

WITH THAT CLARIFICATION, ULTIMATELY MR. GHAHREMAN INDICATED THAT HE WANTED TO CONTINUE THE DISCUSSION, AND HE DID.  SO ON THE SIXTH AMENDMENT ISSUE, THE TENTATIVE WOULD BE TO FIND THAT THERE WAS NOT A CLEAR INVOCATION.

ON THE MIRANDA ISSUE, IT APPEARED THAT THERE WAS AN ADEQUATE ADMONITION WITH RESPECT TO THE RIGHTS, AND THEN MR. GHAHREMAN ELECTED TO WAIVE AND SO INDICATED BY SIGNING.

AS TO THE COERCION ISSUES, THE ENTIRE SETTING BETWEEN THE PARTIES LASTED AN HOUR AND 40 MINUTES OR SO, AND IT APPEARED TO BE VERY CONVERSATIONAL.  NO THREATS, MATTER-OF-FACT DISCUSSION.  THE AGENTS WERE CERTAINLY DIRECT WITH MR. GHAHREMAN, BUT PROFESSIONAL.  AND MR. GHAHREMAN WAS, I WOULD CATEGORIZE, AT LEAST ON THE AUDIO PORTION, AS BEING VERY TALKATIVE.  VERY ENGAGING AND CONVERSATIONAL.  BUT IT APPEARED TO BE A PROFESSIONAL BACK-AND-FORTH DIALOGUE BETWEEN

THE PARTIES.

THE STATEMENTS ABOUT THE AGENTS TELLING THE PROSECUTOR THAT MR. GHAHREMAN ELECTED TO COOPERATE AND HOW, ESSENTIALLY, THAT WOULD BE THE BEST WAY TO GET THE BEST DEAL, I DON'T FIND THAT THOSE TYPES OF STATEMENTS, IN AND OF THEMSELVES, WOULD GIVE RISE TO ANY PROMISE OF A BENEFIT OR OF LENIENCY SUCH THAT IT WOULD RENDER THE STATEMENTS ATTRIBUTED TO MR. GHAHREMAN INVOLUNTARY. AND THE BRIEFING BY THE GOVERNMENT CITES A NUMBER OF CASES.

THAT WOULD BE THE TENTATIVE.

MR. JOHNSTON.

**MR. JOHNSTON:** THANK YOU, YOUR HONOR.

FIRST, I WOULD JUST LIKE TO NOTE THAT THE GOVERNMENT DID INDICATE IN THEIR PAPERS THAT IT DOES NOT INTEND TO INTRODUCE THE STATEMENTS OF MR. GHAHREMAN IN ITS CASE IN CHIEF, I THINK IN RECOGNITION -- AND I DON'T WANT TO PUT WORDS IN THE GOVERNMENT'S MOUTH BUT OF AT LEAST A SIGNIFICANT PROBLEM WITH THE RIGHT OF COUNSEL AND THE MIRANDA WARNINGS, OR THE EFFECTIVENESS OF THE MIRANDA WARNINGS. SO I DIDN'T COME TODAY PREPARED TO NECESSARILY ARGUE THAT. BUT LET ME START WITH THE VOLUNTARINESS ISSUE AND I CAN WORK MY WAY BACK INTO THAT TO EXPLAIN WHAT I THINK IS THE PRIMARY CONCERN IN THIS CASE.

AND THE COURT INDICATED THAT TELLING A DEFENDANT DURING AN INTERROGATION THAT THERE MAY BE SOME BENEFIT TO

TALKING, OF ITSELF, IS NOT AN IMPROPER PROMISE OR WOULD

UNNECESSARILY OVERBEAR SOMEONE'S WILL.  I UNDERSTAND THAT.

THE GOVERNMENT INDICATED THAT TELLING

SOMEONE THAT COUNSEL CANNOT BE PRESENT AT THAT MOMENT, OR IN

THE CASE OF MR. GHAHREMAN -- WELL, ARGUE THAT -- THE

GOVERNMENT ARGUED THAT COUNSEL NOT BEING ABLE TO BE PRESENT AT

THAT MOMENT IS NOT, IN AND OF ITSELF, A VIOLATION OF MIRANDA

OR THE SIXTH AMENDMENT RIGHT TO COUNSEL.

AND THEY CITE A SUPREME COURT CASE, OREGON VERSUS

HAAS -- H-A-A-S -- WHICH IS WHOLLY DIFFERENT THAN THE

CIRCUMSTANCES HERE.  AND LET ME JUST TELL YOU ABOUT HAAS FOR A

MINUTE AND THEN EXPLAIN THE CIRCUMSTANCES IN THIS CASE.

IN HAAS THE DEFENDANT WAS IN THE BACK OF A PATROL

CAR, HAD BEEN PICKED UP AND ARRESTED.  AND AT SOME POINT HE

SAYS:  I THINK I AM IN A LOT OF TROUBLE, CAN I CALL A LAWYER?

AND THE OFFICER IN THE FRONT OF THE CAR SAID:  NO,

YOU CAN'T DO IT NOW.  YOU CAN CALL WHEN WE GET BACK TO THE

STATION.

AT THAT POINT THE -- OR AT SOME SUBSEQUENT POINT,

BEFORE THEY GET TO THE STATION, THE DEFENDANT POINTED TO A

LOCATION WHERE THERE WAS EVIDENCE.  I DON'T REMEMBER EXACTLY

WHAT IT WAS, BUT ESSENTIALLY INCULPATED HIMSELF.

THAT IS NOT THE SITUATION THAT WE HAVE HERE.  HAD IT

BEEN THE AGENT SAYING:  LOOK, MR. GHAHREMAN, YOU WILL BE

APPOINTED AN ATTORNEY BUT THAT IS NOT HAPPENING TODAY.  WHAT

WE NEED FROM YOU IS IMPORTANT, WE NEED IT TODAY.  WE ARE NOT
GOING TO TALK TO YOU TOMORROW OR THE NEXT DAY AFTER YOU HAVE
AN ATTORNEY, WE NEED IT TODAY.  AND YOU ARE NOT GOING TO GET
APPOINTED AN ATTORNEY UNTIL YOU GO TO THE COURT.

IF THAT WAS THE SITUATION THAT WAS PRESENTED HERE
THAT MIGHT BE DIFFERENT.  BUT THAT WASN'T THE SITUATION
PRESENTED HERE.

THE SITUATION PRESENTED TO MR. GHAHREMAN BEGAN WITH
AGENT HAMAKO TELLING HIM UP FRONT:  YOU HAVE TO THINK -- YOU
HAVE GOT TO THINK, IF YOU WANT THE BEST DEAL FOR YOURSELF AND
IF YOU WANT TO TRY TO MAKE THINGS BETTER FOR YOURSELF,
COOPERATING WITH US AND BEING TRUTHFUL WITH US IS THE BEST WAY
TO GET YOURSELF THE BEST DEAL.

AGENT HAMAKO GOES ON TO SAY:  I DON'T WANT YOU TO
LOSE THE CHANCE TO COOPERATE BECAUSE THAT IS A GOOD
OPPORTUNITY FOR YOU.

THEN HE SUBSEQUENTLY SAYS:  AND TIME IS OF THE
ESSENCE RIGHT NOW.  THE FASTER YOU COOPERATE THE MORE VALUABLE
YOUR COOPERATION WILL BE.

IF THAT WAS ALL THAT WAS, FINE.  BUT MR. GHAHREMAN
DOES INDICATE THAT HE THINKS HE NEEDS AN ATTORNEY FOR THIS
IMPORTANT MOMENT WHERE HE HAS THE ONLY OPPORTUNITY -- THE BEST
OPPORTUNITY TO HELP HIMSELF.  AN OPPORTUNITY THAT BECOMES EVEN
MORE NECESSARILY GLARING FOR HIM WHEN THE AGENTS SAY:  YOU ARE
GOING TO JAIL.  AFTER WE GET DONE WITH YOU HERE YOU ARE GOING

TO JAIL.

THAT IS WHEN MR. GHAHREMAN SAYS:  OH MY GOD.  OH MY GOD.  OH MY GOD.

NEVERTHELESS, MR. GHAHREMAN IS ASKING FOR COUNSEL. AND THEY SAY:  LOOK, YOU CAN'T HAVE ONE UNTIL YOU GET ARRAIGNED.

HE SAYS -- AND THIS IS WHAT I THINK IS CRITICAL.

HE SAYS:  CAN I CALL MY GIRLFRIEND?

LET ME FIND THE EXACT WORDS.

I CAN'T WITH MY GIRLFRIEND TAKE SOME LAWYER FOR ME HERE?

THEN THIS IS THE OTHER AGENT WHO IS NOT HERE TODAY. AGENT PRECIADO SAYS TO MR. GHAHREMAN:  YOU CAN, YOU CAN TALK TO YOUR GIRLFRIEND AFTER.  BUT, AGAIN, THE ATTORNEY IS NOT GOING TO COME.  WE ARE NOT GOING TO LET HIM COME IN HERE RIGHT NOW.

THIS IS WHERE THE VIOLATION OF NOT ONLY THE SIXTH AMENDMENT RIGHT TO COUNSEL BUT THE OVERBEARING OF MR. GHAHREMAN'S WILL COMES TO A POINT.

THIS ISN'T SAYING:  HEY, YEAH, YOU CAN TRY TO CALL YOUR GIRLFRIEND BUT IF SHE DOESN'T GET YOU AN ATTORNEY HERE, LOOK, WE HAVE TO TALK NOW, WE HAVE TO ACT NOW, YOU HAVE TO ACT NOW.

THIS ISN'T A SITUATION WHERE THE DEFENDANT SAYS: WELL, I NEED AN ATTORNEY BUT I CAN'T AFFORD ONE.

AND THE AGENTS SAY:  WELL, YOU WILL JUST HAVE TO
WAIT UNTIL YOU GET APPOINTED ONE, BUT WE NEED TO TALK TO YOU
NOW.

THIS IS A SITUATION WHERE MR. GHAHREMAN, IN THE HEAT
OF THIS MOMENT, IS CONCERNED ABOUT THE CONSEQUENCES OF WHAT
HAS OCCURRED AND IS SAYING:  CAN I AT LEAST SEE IF I CAN GET
AN ATTORNEY HERE, NOW.

AGENT PRECIADO SAID:  NO, WE ARE NOT GOING TO LET AN
ATTORNEY IN HERE NOW.

THIS IS THE MOMENT WHERE I THINK THE COURT NEEDS TO
SERIOUSLY CONSIDER THE CIRCUMSTANCES OF MR. GHAHREMAN'S
DECISION TO CONTINUE TALKING TO THESE AGENTS.

THE AGENTS HAVE TOLD HIM UP FRONT:  THIS IS IT, THIS
IS YOUR BEST OPPORTUNITY, THIS IS YOUR ONLY OPPORTUNITY.  I
DON'T WANT YOU TO LOSE THIS OPPORTUNITY TO HELP YOURSELF.  YOU
ARE GOING TO JAIL.  THIS IS SERIOUS.

THIS IS WHEN MR. GHAHREMAN SAYS, AT VARIOUS POINTS:
I THINK I NEED A LAWYER.  YOU GUYS KNOW THE LAW, I DON'T.  I
WANT TO TAKE ADVANTAGE OF THIS OPPORTUNITY.  I NEED A LAWYER.

AND THE AGENTS SAY:  NO, YOU ARE NOT GOING TO HAVE
ONE HERE.  YOU CANNOT HAVE ONE IN HERE.

AND AGENT HAMAKO AFFIRMED WHAT AGENT PRECIADO SAID.
HE SAID:  YES, THAT IS RIGHT.  WE ARE NOT LETTING A LAWYER BE
PRESENT WITH YOU.  SO LET'S STEP BACK TO WHAT YOUR MIRANDA
RIGHTS ARE AND WHAT YOUR RIGHT TO COUNSEL IS.  IT IS NOT JUST

THE RIGHT TO REMAIN SILENT OR NOT ANSWER QUESTIONS OUTSIDE OF
THE PRESENCE OF YOUR ATTORNEY, IT IS THE RIGHT TO ANSWER
QUESTIONS WITH THE ASSISTANCE OF COUNSEL.

THEY DENIED MR. GHAHREMAN THAT RIGHT WHEN THEY TOLD
HIM:  NO, YOU CANNOT TALK TO US WITH YOUR COUNSEL.  NO, YOU
CANNOT SEE IF YOU CAN GET COUNSEL HERE DURING THIS CRITICAL
MOMENT THAT WE WANT TO TALK TO YOU ABOUT WHAT HAPPENED.

**THE COURT:**  BUT IN THE CONTEXT THEY SAY, RIGHT AWAY,
THE AGENTS THAT IS:  IF YOU ARE ASKING FOR A LAWYER THEN WE
ARE DONE TALKING TO YOU.  YOU WANT A LAWYER, CORRECT?  ONCE
YOU ASK FOR A LAWYER THEN WE CAN'T TALK TO YOU.

ISN'T THAT IMPORTANT?

**MR. JOHNSTON:**  THAT IS IMPORTANT, IT IS HALF OF
THE -- IT IS HALF OF THE ANSWER BECAUSE, YES, AGENTS CAN'T
CONTINUE TO QUESTION SOMEONE WITHOUT COUNSEL PRESENT.  BUT
WHAT THESE AGENTS HAVE TOLD MR. GHAHREMAN AT THIS CRITICAL
JUNCTURE IS NOT JUST THAT, LIKE:  HEY, IF YOU ASKING FOR
COUNSEL WE HAVE TO STOP QUESTIONING YOU.

BECAUSE HE SAID:  NO, I WANT MY COUNSEL HERE.  I
WANT THE GUIDANCE AND ASSISTANCE OF COUNSEL TO TALK WITH YOU
NOW.

AND THAT IS WHAT THEY DENIED IS THAT OPPORTUNITY
WHEN AGENT PRECIADO, AT MINUTE 2502, SAYS:  THE ATTORNEY IS
NOT GOING TO COME.  WE ARE NOT GOING TO LET HIM COME IN HERE
RIGHT NOW.

THAT WAS THE DENIAL OF THE RIGHT TO HAVE THE ASSISTANCE OF COUNSEL DURING INTERROGATION.

**THE COURT:**  BUT AREN'T THEY SIMPLY EXPLAINING WHAT HAPPENS IN THE REAL WORLD, AND THAT IS IF SOMEBODY INVOKES THE INTERVIEW ENDS.  THERE ISN'T THE OPPORTUNITY FOR AGENTS AT THE STATION TO CALL AN ATTORNEY AND HAVE AN ATTORNEY SHOW UP, AND THEN IF THE ATTORNEY AGREES TO ALLOW HIS CLIENT TO CONTINUE TO BE INTERVIEWED.

SO AREN'T THE AGENTS REALLY JUST SAYING THAT:  IF YOU ARE INVOKING THEN WE HAVE TO STOP TALKING TO YOU.  YOU WILL GET AN ATTORNEY BUT THAT WILL BE APPOINTED BY THE COURT, ESSENTIALLY, AND OCCUR AT A LATER TIME.

ISN'T THAT WHAT THEY ARE REALLY SAYING?

**MR. JOHNSTON:**  I DON'T THINK THAT IS A FAIR CHARACTERIZATION OF WHAT HAPPENED HERE.  THEY COULD SAY -- I MEAN, WE DON'T HAVE TO JUST WATCH TV TO SEE THAT ATTORNEYS DO SHOW UP DURING INTERROGATIONS AND ASSIST PEOPLE.  IT DOES HAPPEN.

YOU KNOW, PERHAPS NOT IN A DISTRICT OF REACTIVE CASES WHERE INDIGENT DEFENDANTS HAVE NO MEANS OF CONTACTING A FAMILY MEMBER WHO COULD SEND AN ATTORNEY TO ASSIST A DEFENDANT.  BUT UNDER THESE CIRCUMSTANCES MR. GHAHREMAN SAID: I THINK MY GIRLFRIEND CAN GET ME AN ATTORNEY.  I THINK I COULD HAVE AN ATTORNEY HERE.  CAN I TRY TO DO THAT, BECAUSE I DO WANT TO HELP YOU, I DO WANT TO TALK TO YOU.  I FEEL COMPELLED

TO TALK TO YOU NOW BECAUSE YOU TOLD ME THIS IS MY ONLY
OPPORTUNITY.  THIS IS SERIOUS.  I AM GOING TO JAIL.

SO I DON'T THINK IT IS A TOTALLY FAIR
CHARACTERIZATION TO SAY ALL THEY ARE TELLING MR. GHAHREMAN IS
IF YOU INVOKE YOUR RIGHT TO COUNSEL WE ARE DONE QUESTIONING
YOU.  THEY DON'T HAVE TO ASK ANY QUESTIONS FOR HIM TO SAY:
BUT I WANT TO TALK TO YOU, I JUST NEED AN ATTORNEY.  CAN I
MAKE THE EFFORT TO DO THAT?

HAD THEY SAID:  YEAH, HERE IS A PHONE.  TRY TO CALL
YOUR GIRLFRIEND, OR WE WILL TRY TO CALL HER.

AND THERE WAS NO ANSWER.  AND THEY ARE, LIKE:  ALL
RIGHT.  WE TRIED.  DO YOU WANT TO TAKE ADVANTAGE OF THIS
OPPORTUNITY OR NOT?

THAT MIGHT BE A DIFFERENT CASE, BUT THAT IS NOT WHAT
THEY SAID TO HIM.

THEY SAID:  WE ARE NOT GOING TO LET AN ATTORNEY COME
IN HERE WITH YOU.  IT IS YOUR ONLY OPPORTUNITY, YOUR MOST
IMPORTANT OPPORTUNITY TO HELP YOURSELF IN THIS SERIOUS
SITUATION.

AND I THINK THAT IS WHERE MR. GHAHREMAN'S WILL WAS
OVERBORNE.  AND IF YOU REVIEW THE TRANSCRIPT BEFORE THAT, HE
IS FLOORED BY THE FACT HE IS GOING TO JAIL.  HE IS VERY
CONCERNED ABOUT THIS SITUATION.  HE IS —— THE GOVERNMENT SAID
YOU CAN TAKE INTO CONSIDERATION HIS, YOU KNOW, HIS EDUCATION
AND OTHER THINGS.  AND THE COURT SHOULD.

HE WAS SMART ENOUGH TO KNOW THAT THIS WAS A CRITICAL MOMENT WHERE HE PROBABLY NEEDED SOME HELP.  NOT SMART ENOUGH TO KNOW THE LAW AND WHAT THE LEGAL CONSEQUENCES OF HIS ACTIONS WERE, BUT SMART ENOUGH TO KNOW THAT HE SHOULD TAKE ADVANTAGE OF HIS RIGHT TO HAVE COUNSEL PRESENT WHEN HE TALKS WITH AGENTS.

**THE COURT:**  THE ARGUMENT YOU ARE MAKING, IS IT THAT HE CLEARLY INVOKED, OR THAT THE STATEMENTS ARE RENDERED COERCIVE UNDER THOSE CIRCUMSTANCES?

**MR. JOHNSTON:**  THAT IS WHY I STARTED FIRST WITH THE VOLUNTARINESS.  MY ARGUMENT THAT I AM MAKING NOW IS THAT THE SUBSEQUENT STATEMENTS WERE BECAUSE MR. GHAHREMAN'S WILL WAS OVERBORNE IN THAT MOMENT WHEN HE WAS DENIED WHAT IS HIS RIGHT, WHICH IS TO HAVE THE ASSISTANCE OF COUNSEL.  AND TOLD THAT HE WOULD NOT HAVE THAT RIGHT TO BE ASSISTED BY COUNSEL, IF IT WAS POSSIBLE, BECAUSE THEY DIDN'T GIVE HIM THE POSSIBILITY OF THAT.  THEY SAID:  THAT IS NOT GOING TO HAPPEN, WE ARE NOT GOING TO LET THAT PERSON COME IN HERE.

**THE COURT:**  YOU WOULD AGREE THAT A SUSPECT WOULD HAVE A RIGHT TO COUNSEL, BUT HE DOESN'T HAVE THE RIGHT TO HAVE HIS COUNSEL AND THEN TO MAKE THE INTERVIEW OCCUR.  IN OTHER WORDS, THE AGENTS CAN SAY:  OKAY, YOU CAN HAVE YOUR ATTORNEY BUT WE ARE ELECTING NOT TO PROCEED WITH AN INTERVIEW.

BECAUSE, AS WE ALL KNOW, IT RARELY HAPPENS THAT COUNSEL WILL AGREE TO HAVE THEIR CLIENT TALK TO AGENTS, UNLESS

IT IS A PRE-TALK OR IT IS A VERY UNUSUAL CIRCUMSTANCE WHERE
COUNSEL HAS BEEN IN PLACE FOR A WHILE, AND THEN THERE IS A
TIME WHERE THEY SET UP AND MEET THE AGENTS AND TALK ABOUT THE
SITUATION AT A LATER TIME.

      **MR. JOHNSTON:** BUT I DON'T THINK IT IS FAIR TO
ASSUME WHAT COUNSEL WOULD HAVE DONE, UNDER THESE
CIRCUMSTANCES, WITH A CLIENT WHO CLEARLY WAS INTERESTED IN
TAKING ADVANTAGE OF WHAT WAS REPRESENTED TO HIM AS THE ONLY
OPPORTUNITY.

      THE COURT IS CORRECT.  THE AGENTS COULD SAY:  LOOK,
WE DECIDE WHO WE TALK TO.  WE DECIDE WHETHER WE WANT TO
INTERVIEW YOU OR NOT.  AND WE ARE NOT GOING TO INTERVIEW YOU.

      BUT THEY DID MORE THAN THAT.

      OR THEY SAID:  WE ARE ONLY GOING TO INTERVIEW YOU
FOR THE NEXT HOUR BECAUSE WE THINK THAT IS THE CRITICAL
WINDOW.

      I AM NOT SAYING THAT WAS THE CASE HERE.  I THINK IT
WAS MORE OBSCURE WHAT, REALLY, THE TIMING WAS.  I KNOW THE
AGENTS WANTED HIM TO DO THINGS, AND THAT IS CLEAR FROM THE
INTERROGATION ITSELF.

      BUT THAT IS NOT -- THAT IS NOT WHAT HAPPENED.  THEY
SAID:  WE ARE JUST NOT GOING TO LET COUNSEL IN HERE.

      I THINK WHEN THEY TIE THAT INTO HIS OPPORTUNITY, I
THINK HE FEELS COMPELLED TO TALK:  I DON'T HAVE ANY OTHER
CHOICE.  THEY ARE NOT GOING TO LET MY COUNSEL IN HERE.  IF HE

WAS STANDING OUTSIDE, WHETHER HE WAS GOING TO COME TELL HEY, I
THINK YOU NEED TO INVOKE YOUR RIGHT TO SILENCE NOW AND WE
SHOULD TALK ABOUT THIS OR LET ME GO TALK TO THE AGENTS AND SEE
HOW PRESSING THEY THINK THIS SITUATION IS AND THEN I WILL, YOU
KNOW, EXPLAIN TO YOU, YOU KNOW, WHAT MY OPINION IS, WHAT MY
LEGAL OPINION IS.

THAT WOULD BE ONE THING.  BUT HE WASN'T GIVEN THAT
OPPORTUNITY TO EVEN HAVE COUNSEL PRESENT IF COUNSEL WAS RIGHT
OUTSIDE THAT DOOR.  I MEAN, THAT IS WHAT AGENT PRECIADO SAID:
WE ARE NOT LETTING HIM IN HERE.

THAT IS INCREDIBLY COERCIVE TO HAVE AN INDIVIDUAL
BEING INTERROGATED BY TWO FEDERAL AGENTS BEING TOLD THAT HE
IS, AT THE CONCLUSION OF THAT INTERVIEW, GOING TO JAIL.  AND
BEING TOLD:  YOUR ONLY OPPORTUNITY IS NOW, YOU BETTER TAKE
ADVANTAGE OF IT.  I DON'T WANT YOU TO LOSE THIS OPPORTUNITY TO
HELP YOURSELF.  AND WE ARE NOT LETTING AN ATTORNEY IN THE
DOOR.  WHAT DO YOU WANT TO DO?

THAT IS COERCIVE.  AND I THINK, UNDER THE
CIRCUMSTANCES IN THIS CASE, THEY OVERBORE MR. GHAHREMAN'S
WILL.

HE TALKS REPEATEDLY ABOUT SAYING:  I NEED COUNSEL.
I BELIEVE I NEED COUNSEL.  YOU UNDERSTAND THE LAW, THE
PROSECUTOR UNDERSTANDS THE LAW.  I NEED SOMEONE HERE TO GUIDE
ME AND ASSIST ME.

AND THEY SAY:  NO, HE IS NOT ALLOWED THROUGH THAT

DOOR.

SO WHATEVER MAY OR MAY NOT HAPPEN HAD THEY GIVEN HIM THAT OPPORTUNITY, OR HAD THEY EVEN LET HIM PICK UP THE PHONE AND CALL HIS GIRLFRIEND, WHAT THEY ARE TELLING HIM IS:  IT DOESN'T MATTER.  THAT PERSON CAN BE RIGHT THERE, STANDING RIGHT NEXT TO THIS WALL.  AND YOU CAN CONSULT WITH HIM, BUT WE ARE NOT LETTING YOU.  YOU EITHER TAKE ADVANTAGE OF THIS OPPORTUNITY WITHOUT A LAWYER PRESENT, OR GIVE IT UP.

AND I THINK THAT IS COERCIVE.  AND I THINK IT IS BORNE OUT BY MR. GHAHREMAN'S TONE DURING THE INTERROGATION. THE SINCERE EMOTION THAT HE PUTS OUT WHEN THEY TELL HIM, RIGHT BEFORE THIS EXCHANGE WITH PRECIADO THAT:  YOU ARE GOING TO JAIL.

THE:  OH MY GOD.  OH MY GOD.  THIS IS SERIOUS.

BUT I THINK IT REALLY CROSSES THE LINE WHEN HE IS TOLD:  WE ARE NOT LETTING AN ATTORNEY IN HERE.

AND WHATEVER MAY OR MAY NOT HAPPEN AFTER THAT MOMENT, MR. GHAHREMAN DOESN'T HAVE THE BENEFIT OF KNOWING.  HE MAY HAVE LOST THE OPPORTUNITY TO SPEAK WITH AGENTS BECAUSE OF ADVICE OF COUNSEL, OR BECAUSE HIS GIRLFRIEND WOULDN'T PICK UP THE PHONE.  BUT HE DOESN'T KNOW THAT.  WHAT HE KNOWS IS NO MATTER HOW LIKELY IT IS HE WOULD HAVE COUNSEL, HE WOULD NOT BE ABLE TO BENEFIT FROM THAT.

AND THE SIXTH AMENDMENT CAN'T MEAN A WHOLE LOT IF YOU CAN'T TAKE ADVANTAGE OF THE BENEFIT OF COUNSEL, OR IF THE

GOVERNMENT PREVENTS YOU FROM TAKING ADVANTAGE OF THE
ASSISTANCE OF COUNSEL.

SO I THINK THAT GOES TOWARDS THE VOLUNTARINESS
ARGUMENT, BUT AT THE SAME TIME I THINK IT UNDERCUTS THE
VALIDITY OF ANY WAIVER TO COUNSEL AS WELL.  BUT I HAVE ARGUED
IT AS VOLUNTARINESS.  AND I THINK THE TRANSCRIPT BEARS OUT
THAT HE WAS OVERBORNE, FELT COMPELLED TO SPEAK TO THESE
AGENTS.  AND THEY PUT HIM IN AN IMPOSSIBLE SITUATION.  AND,
YOU KNOW, MISADVISED HIM OF HIS RIGHTS AT THAT MOMENT.

**THE COURT:**  DO YOU ALSO ARGUE THAT THERE IS AN
UNEQUIVOCAL INVOCATION OF RIGHT TO COUNSEL, OR IS YOUR FOCUS
ON VOLUNTARINESS?

**MR. JOHNSTON:**  MY FOCUS, BECAUSE THE GOVERNMENT IN
THEIR PAPERS HAD INDICATED THEY DO NOT INTEND TO INTRODUCE
STATEMENTS IN THE CASE IN CHIEF, IS ON VOLUNTARINESS.

AND, YOU KNOW, I KNOW THAT MR. GHAHREMAN, ON SEVERAL
OCCASIONS, RAISED HIS NEED FOR COUNSEL.  AND I THINK THAT, YOU
KNOW, IF I TOOK A MOMENT I COULD FIND THE STRONGEST INVOCATION
AND ARGUE THAT THAT WAS UNEQUIVOCAL.

BUT I THINK THE GOVERNMENT RECOGNIZES THAT THERE IS
AT LEAST AN ISSUE WITH THE INVOCATION.  I DON'T THINK THE
GOVERNMENT JUST WILLINGLY CONCEDES AWAY STATEMENTS IN THEIR
CASE IN CHIEF.  MR. HARRIGAN CAN CORRECT ME IF I AM WRONG
BUT --

**MR. HARRIGAN:**  WELL --

**MR. JOHNSTON:**  PLEASE DO.

**THE COURT:**  THE VOLUNTARINESS ISSUE GOES TO WHETHER OR NOT MR. GHAHREMAN COULD TESTIFY AND BE IMPEACHED.  BUT ASSUMING THERE IS AN UNEQUIVOCAL INVOCATION OF RIGHT TO COUNSEL, WOULD THAT ALSO PRECLUDE IMPEACHMENT IN THE EVENT THE GOVERNMENT DOESN'T USE THE STATEMENTS IN ITS CASE IN CHIEF BUT THEN MR. GHAHREMAN ELECTS TO TESTIFY, WOULD THEY BE PRECLUDED FROM IMPEACHING IF THERE IS A SIXTH AMENDMENT VIOLATION?

**MR. JOHNSTON:**  I WOULD LIKE TO SAY YES, BUT I AM NOT CONFIDENT OF THAT ANSWER.  I THINK THAT -- I AM ABSOLUTELY CERTAIN THAT AN INVOLUNTARY STATEMENT CANNOT BE PRODUCED IN ANY WAY AT TRIAL BECAUSE THERE ARE CONCERNS ABOUT THE CIRCUMSTANCES AND THE RELIABILITY OF THAT STATEMENT.

BUT I CERTAINLY THINK IT IS -- THE STATEMENTS ABOUT NOT EVEN HAVING ACCESS TO COUNSEL OR BEING PREVENTED FROM EVEN HAVING ACCESS TO COUNSEL WERE HE THERE THAT TRULY TAKES THIS INTO AN INVOLUNTARINESS SITUATION.

**THE COURT:**  OKAY.  THANK YOU.

MR. HARRIGAN.

**MR. HARRIGAN:**  YOUR HONOR, JUST TO CLARIFY THE RECORD.  THE DECISION NOT TO USE HIS STATEMENTS IN CASE IN CHIEF IS A TACTICAL DECISION BY THE GOVERNMENT.  WE ARE NOT CONCEDING THAT THERE WAS AN UNEQUIVOCAL ASSERTION OF HIS RIGHT TO COUNSEL.

WE AGREE WITH THE COURT'S TENTATIVE THAT IN FACT IT

WAS EQUIVOCAL.  AND REALLY YOU CAN CITE TO CERTAIN POINTS
WHERE HE MENTIONS A LAWYER, BUT UNLESS YOU LISTEN TO THE
ENTIRE CONTEXT, LISTEN TO HIS GRAMMAR, IT AT TIMES BECOMES
CONFUSING.

IT IS CLEAR BY WHAT AGENT HAMAKO AND WHAT AGENT
PRECIADO DID, ON MORE THAN ONE OCCASION, WHEN HE SAID:  I
DON'T HAVE A CHOICE.

THEY TELL HIM:  YOU HAVE A CHOICE, AND THAT CHOICE
IS YOU DON'T HAVE TO TALK TO US.  IF YOU WANT AN ATTORNEY WE
ARE NOT GOING TO TALK TO YOU.

MR. JOHNSTON WANTS TO SUGGEST SOMEHOW THAT THE LAW
GIVES DEFENDANT A RIGHT TO BE INTERVIEWED.  I AGREE WITH THE
COURT IT DOES NOT.  AND IT IS NOT A VIOLATION OF MIRANDA IF
YOU TELL SOMEBODY THEY HAVE A RIGHT TO COUNSEL DURING THE
INTERVIEW, AND IF YOU DECIDE NOT TO QUESTION THEM OR -- AND
ALSO TELL THEM:  IF YOU ARE INVOKING YOUR RIGHT TO COUNSEL WE
ARE NOT GOING TO QUESTION YOU.

OKAY, I WANT TO TALK TO YOU.

THAT DOESN'T MEAN IT IS A VIOLATION.  HE HAS MADE A
CHOICE, HE HAS MADE A RATIONAL CHOICE.

IN FACT, AFTER HE STATED THE BIT ABOUT HIS
GIRLFRIEND -- WHO BY THE WAY WAS IN NEW YORK AT THE TIME.  AND
IT IS NOT EVEN CLEAR -- HE WOULDN'T BE WAITING OUTSIDE THE
DOOR.  IT IS NOT CLEAR THERE WOULD BE ANY ATTORNEY THAT WOULD
BE ABLE TO SHOW UP.

BUT WHAT IS CLEAR IS THAT AFTER THAT STATEMENT WAS MADE AGENT PRECIADO SAID AGAIN:  THIS IS JUST AN OPPORTUNITY, WE READ YOUR RIGHTS.  WE WANT TO MAKE SURE YOU UNDERSTAND THEM.  WHICH AGAIN THEY WERE READ TO YOU AND YOU UNDERSTOOD THEM.  BUT IF YOU DON'T KNOW WHAT TO DO, LIKE I SAID, THAT'S YOUR DECISION.  YOU CAN SAY OKAY I WANT TO TALK TO YOU, OR I WANT A LAWYER I AM DONE.

IT COULDN'T HAVE BEEN MADE CLEARER TO HIM WHAT HIS CHOICES WERE.

AND I WOULD INVITE THE COURT ALSO TO LISTEN TO -- EVEN THOUGH THERE IS NOT A TRANSCRIPT -- THE LAST PART OF THIS INTERVIEW WHEN, AT THE END OF THEIR DISCUSSIONS, THEY INVITE HIM TO ACTUALLY COOPERATE AND MAKE THE CALLS.

MR. GHAHREMAN'S CHOICE WAS:  NO I AM NOT GOING TO DO THAT.  THE ONLY WAY I AM GOING TO DO IT IS IF YOU LET ME OUT OF JAIL.  IF I DON'T GO TO JAIL I WILL DO IT.

SO TO SUGGEST SOMEHOW THAT THE AGENTS' STATEMENTS HERE OR THE ATMOSPHERE SOMEHOW OVERCAME HIS FREE WILL IS BELIED BY THE VERY EVENTS THAT TAKE PLACE AT THE END OF THE INTERVIEW WHERE HE SAYS:  LOOK, I DON'T WANT TO COOPERATE WITH YOU ANY MORE UNLESS I GET OUT OF JAIL.

HE MADE A CHOICE.  IT IS PRETTY CLEAR HE IS EDUCATED, GIVEN THE TONE OF THE CONVERSATION THAT THIS WAS A REASONED DECISION BY HIM.  THERE WAS NO POLICE COERCION. THERE WERE NO THREATS.

AND I THINK WHEN MR. JOHNSTON, ALTHOUGH HE IS MAKING VERY FORCEFUL ARGUMENTS, HE IS TAKING CERTAIN STATEMENTS OUT OF CONTEXT AND NOT LOOKING AT THE WHOLE TRANSCRIPT, WHICH THIS COURT HAS DONE.

AND WHEN YOU LOOK AT THE WHOLE TRANSCRIPT THE TOTALITY OF THE CIRCUMSTANCES TELLS YOU THAT THIS WAS NOT COERCIVE.

THE LAST THING I WOULD SAY AS TO THE HAAS CASE, WE CITED THAT NOT FOR A VOLUNTARINESS ISSUE BUT JUST TO POINT OUT THAT ESSENTIALLY -- WE CITED IT FOR THE PROPOSITION, YOUR HONOR, THAT EVEN IF THIS COURT FINDS THERE WAS A VIOLATION OF MIRANDA THAT A STATEMENT CAN STILL BE USED, PROVIDED THAT IT IS VOLUNTARY.

**THE COURT:**  ALL RIGHT.

**MR. JOHNSTON:**  YOUR HONOR, I TOOK A MOMENT WHILE MR. HARRIGAN WAS ARGUING TO SEE IF I COULDN'T FIND WHAT I WOULD ARGUE IS THE UNEQUIVOCAL INVOCATION OF COUNSEL.  AND I WILL TRY TO DO IT HERE ON THE SCREEN, SO FORGIVE ME IF I MESS THIS UP.  MAYBE IT WILL WORK.

AT THE TOP OF THIS CASE PAGE --

**MR. HARRIGAN:**  I DON'T HAVE THAT.

**MR. JOHNSTON:**  NOW UNDERSTAND, MR. GHAHREMAN SPEAKS SOME ENGLISH.  HE SPOKE ENGLISH TO THE AGENTS DURING THIS INTERROGATION.  BUT EVEN TAKING JUST ONE EXAMPLE, THIS EXAMPLE HERE, HE DOES STRUGGLE WITH THE ENGLISH LANGUAGE.

TODAY HE IS HERE IN COURT, BECAUSE THIS IS AN IMPORTANT PROCEEDING, WITH THE ASSISTANCE OF A FARSI SPEAKING INTERPRETER.  BUT I THINK, REGARDLESS OF HIS LANGUAGE ISSUES, WE DO HAVE AN INVOCATION OF COUNSEL HERE.

CAN I ASK YOU -- CAN I ASK YOU LAWYER FOR THIS MOMENT BECAUSE REALLY I DON'T KNOW ABOUT THE LAW AND YOU KNOW I UNDERSTAND WE WANT TO WORK TOGETHER.  BUT YOU UNDERSTAND ABOUT THE COURT LAW, IS EVERYTHING IS NOT THE MATTER OF WHAT I DID.

HE GOES ON:  MY POINT, WHATEVER I SAY TO YOU HERE OR SOMETHING, IN THE COURT, THE STORY IS THE LAW OF WORDS AND FOR THIS REASON I NEED A LAWYER.

ONCE SOMEONE SAYS I NEED A LAWYER, IT IS NOT AMBIGUOUS.  THE GOVERNMENT AGENTS ARE NOT ENTITLED TO SAY WHAT DOES IT MEAN, I NEED A LAWYER.  DO YOU REALLY WANT A LAWYER? DO YOU KNOW HOW IMPORTANT THE SITUATION IS?

THE AGENTS DIDN'T GO THAT FAR IN THIS CASE BUT THEY DID CONTINUE TO ASK HIM AFTER HE SAYS I NEED A LAWYER.

AND MR. GHAHREMAN WENT EVEN FURTHER.  HE SAYS:  I AM TRYING TO EXPLAIN TO YOU WHY I NEED A LAWYER.

SO I THINK THERE WAS AN UNEQUIVOCAL INVOCATION OF COUNSEL AT THIS MOMENT.  AND TO THE EXTENT THAT THAT WOULD BE A VIOLATION OF MIRANDA OR MR. GHAHREMAN'S SIXTH AMENDMENT RIGHT TO COUNSEL, THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING THE STATEMENTS IN ITS CASE IN CHIEF.

BUT IT DIDN'T END THERE, AND THEY CONTINUED TO OBTAIN STATEMENTS FROM MR. GHAHREMAN AFTER TELLING HIM:  EVEN IF COUNSEL IS AT THE DOOR WE ARE NOT LETTING THEM IN.

THAT IS WHERE IT GOES TO VOLUNTARINESS.

TO THE EXTENT THE COURT WAS ASKING ABOUT INVOCATION, I THINK THIS IS PROBABLY MY STRONGEST EXAMPLE:  I NEED A LAWYER.

HE MIGHT HAVE GOTTEN ARTICLE A NOT IN THERE, BUT I NEED A LAWYER IS PRETTY UNEQUIVOCAL.  AND I THINK THE AGENTS HAD TO RESPECT THAT.  AND HAD THEY RESPECTED THAT THERE WOULD BE NO MORE STATEMENTS.  NO MORE STATEMENTS FOR MR. HARRIGAN TO ARGUE WELL, YOU KNOW, AN HOUR AND 40 MINUTES LATER MAYBE HE CHANGED HIS MIND ABOUT HOW MUCH HE WANTED TO HELP OR SAW THAT IT WAS GOING NOWHERE.

AT THIS MOMENT THE QUESTIONING SHOULD HAVE CEASED; IT DID NOT.  AND UNFORTUNATELY FOR MR. GHAHREMAN IT DIDN'T CEASE BY JUST ASKING QUESTIONS.  THEY TOLD HIM YOU CAN'T HAVE A LAWYER EVEN WHEN HE KEPT SAYING I THINK I NEED A LAWYER, CAN I CALL FOR A LAWYER, CAN I SEE WHAT I CAN DO.

SO I THINK THIS IS A UNIQUE CASE WHERE WE DO HAVE A VOLUNTARINESS ISSUE, A SIGNIFICANT ONE.  AND ONE THAT THE RECORD SHOWS TO ME OVERBORE MR. GHAHREMAN'S WILL AT THE MOMENT HE DECIDED TO CONTINUE TALKING.

**THE COURT:**  IN THIS SETTING, CONTEXT, THE ENTIRETY OF THE INTERROGATION BECOMES VERY IMPORTANT.  THE DISCUSSION

AND THE DIALOGUE BETWEEN MR. GHAHREMAN AND THE AGENTS OCCURS
RAPIDLY.  THAT IS, THE WORDS ARE SPOKEN QUICKLY, AND THEY
OFTEN TALK OVER EACH OTHER.

THE AGENTS, ON A NUMBER OF OCCASIONS, HAD TO TELL
MR. GHAHREMAN, ESSENTIALLY, TO HEAR THEM OUT.  LET THE AGENTS
TALK, BECAUSE MR. GHAHREMAN IS VERY VERBAL.

HE DID USE THE WORDS FOR THIS REASON I NEED A
LAWYER, AS HAS BEEN CITED IN THE TRANSCRIPT.  AND AGENT HAMAKO
THEN SAYS OKAY, I UNDERSTAND.

BUT THEN MR. GHAHREMAN CONTINUES WITH A LONG ANSWER.
AND HE ENDS AGAIN SAYING:  BUT I HAVE TO BRING A LAWYER HERE.

AND THEN THE AGENT, PRECIADO, THEN SAYS:  IF YOU ARE
ASKING FOR A LAWYER THEN WE'RE DONE TALKING.  YOU WANT A
LAWYER, CORRECT?

WHICH SEEMS TO ME IS A VERY FAIR QUESTION UNDER
THOSE CIRCUMSTANCES WHEN ONE VIEWS THE DIALOGUE BETWEEN THE
PARTIES.

AND THERE IS -- THEN THIS DISCUSSION CONTINUES WHERE
THE AGENTS ESSENTIALLY ARE SAYING:  IF YOU ARE INVOKING THEN
WE CAN'T TALK TO YOU.

IT THEN BECOMES CLEAR IN CONTEXT, TOO, THAT THE
AGENTS AREN'T THREATENING, EVEN IMPLICITLY, THAT YOU HAVE TO
TALK IN ORDER TO HAVE YOUR LAWYER PRESENT HERE AT THIS MOMENT.

RATHER WHAT THEY ARE SAYING IS -- AND THIS IS IN THE
TEXT -- WE CAN'T BRING A LAWYER FOR YOU IMMEDIATELY.

WHICH APPEARS TO BE TRUE UNDER THE CIRCUMSTANCES.
IT IS GOING TO TAKE -- YOU KNOW:  YOU WILL HAVE TO GO TO JAIL
OVERNIGHT.

AND IN THE CONTEXT IT WASN'T SAID IN A THREATENING
MANNER, IT WAS VERY MATTER OF FACT:  YOU WILL HAVE TO GO TO
JAIL OVERNIGHT.

THEN AGENT HAMAKO CONTINUES ON THAT:  YOU WILL BE
BOOKED INTO JAIL.  AND THEN TOMORROW OR POSSIBLY THE NEXT DAY
YOU WILL BE ARRAIGNED IN FRONT OF THE JUDGE, FORMALLY READ THE
CHARGES.  AND THEN YOU WILL HAVE AN ATTORNEY ASSIGNED TO YOU.

SO IT APPEARED TO ME, IN LISTENING TO THE DISCUSSION
BETWEEN THE PARTIES, THAT THE AGENTS WERE SIMPLY INFORMING
MR. GHAHREMAN OF THE WAY THIS REALLY WORKS:  IF YOU ARE GOING
TO INVOKE THEN OKAY WE HAVE TO STOP TALKING TO YOU AND YOU
WILL GET YOUR ATTORNEY IN DUE COURSE.

IT WASN'T SAID IN A WAY TO SUGGEST, ON AN OBJECTIVE
BASIS, THAT:  IF YOU ARE ASKING FOR A LAWYER THEN THIS
INTERVIEW IS OVER, AND THE ONLY WAY YOU GET ANY BENEFITS IS IF
YOU KEEP TALKING TO US NOW WITHOUT YOUR LAWYER.

SO FOR THOSE REASONS I WOULD FIND THAT IN THE ENTIRE
CONTEXT OF THE INTERROGATION THAT THE AGENTS DID NOT USE WORDS
OR TONE OR MANNER TO EXPLICITLY OR IMPLICITLY OVERBEAR THE
WILL OF MR. GHAHREMAN, RATHER IT APPEARED TO BE A FREE
GIVE-AND-TAKE DISCUSSION.  AND ULTIMATELY MR. GHAHREMAN
ELECTED TO CONTINUE TALKING AFTER FULLY UNDERSTANDING HIS

RIGHTS, AND SPECIFICALLY HIS RIGHT TO COUNSEL.

THAT ALSO LEADS ME TO CONCLUDE THAT THERE WASN'T A
CLEAR INVOCATION OF HIS RIGHT TO COUNSEL; RATHER, IT WAS A
DISCUSSION OF BRINGING A LAWYER AT THAT MOMENT.  THAT
DISCUSSION CONTINUED.  AND THEN MR. GHAHREMAN ELECTED TO
PROCEED WITHOUT AN ATTORNEY.

SO FOR THOSE REASONS I WOULD FIND THAT THERE IS NOT
A CLEAR INVOCATION OF RIGHT TO COUNSEL, AND THAT THE
STATEMENTS ATTRIBUTED TO MR. GHAHREMAN ARE VOLUNTARY, THAT
THEY WERE NOT COERCED BY ANY EXPRESS OR IMPLICIT THREATS OR
PROMISES OF BENEFITS.

AND THEN, FINALLY, IT SEEMED TO ME THAT THE MIRANDA
ADMONITION WAS APPROPRIATE.

LET'S MOVE TO SOME OF THE OTHER MATTERS.  ARE THERE
ANY OTHER COMMENTS OR ANY STATEMENTS BY COUNSEL TO PERFECT THE
RECORD ON THAT PARTICULAR ISSUE?

**MR. JOHNSTON:**  I DON'T WANT TO KEEP BARKING UP THE
SAME TREE, AND SO I WILL ACCEPT THE COURT'S RULING.  BUT IT IS
HARD TO UNDERSTAND WHAT AN AGENT CAN SAY AFTER YOU SAY:  YOU
HAVE TO BRING A LAWYER HERE.

THEY ARE NOT ENTITLED TO CLARIFY.  AND WHEN AN AGENT
SAYS YOU WILL HAVE TO GO TO JAIL BEFORE YOU GET A LAWYER, THAT
JUST WASN'T THE CASE UNDER THESE CIRCUMSTANCES.

AND ON THAT, I WILL SUBMIT.

**THE COURT:**  ALL RIGHT.

I AM MOVING KIND OF IN REVERSE ORDER.

ON THE BILL OF PARTICULARS, MR. JOHNSTON IS ASKING FOR A BILL OF PARTICULARS WITH RESPECT TO THE PARTICULAR LICENSE OR FORM OF AUTHORIZATION THAT WOULD BE REQUIRED.  AM I CORRECT?

**MR. JOHNSTON:**  YES, YOUR HONOR.

**THE COURT:**  WHAT WOULD BE THE -- JUST FROM A PRACTICAL STANDPOINT, WOULDN'T THAT BE SOMETHING THAT CAN BE FAIRLY EASILY PROVIDED TO THE DEFENSE?

**MR. HARRIGAN:**  YOUR HONOR, HERE IS THE ISSUE.  HE TALKS ABOUT WHAT LICENSES ARE NEEDED.  I PROVIDE IN MY PAPERS THE WEBSITES HE COULD GO TO TO FIGURE OUT WHAT LICENSE.

I BELIEVE THAT WE WILL HAVE SOMEONE FROM THE OFFICE OF FOREIGN ASSET CONTROLS HERE TO TESTIFY AT TRIAL WHO WILL SAY THAT THESE ITEMS YOU CAN'T GET A LICENSE FOR.

WE HAVE CHARGED IT BY UNLAWFUL EXPORT TO IRAN WITHOUT A LICENSE BECAUSE THE STATUTE SEEMS TO SUGGEST THAT WE HAVE TO PROVE IT IS WITHOUT A LICENSE, WHETHER A LICENSE IS REQUIRED OR NOT.

IF YOU TAKE A LOOK AT THE STATUTE ITSELF, IT TALKS ABOUT EXCEPT AS OTHERWISE AUTHORIZED IT IS UNLAWFUL TO SEND ANYTHING TO IRAN.

THEN YOU GO TO THE OTHER PARTS OF THE IRANIAN TRANSACTION SANCTIONS REGULATION AND IT HAS LIMITED EXCEPTIONS.  ONE OF THE EXCEPTIONS IS HUMANITARIAN AID, WHICH

HE IS NOT CLAIMING THIS IS HUMANITARIAN AID.  IT CERTAINLY

WASN'T.  AND THE OTHER ARE AGRICULTURAL AND OTHER, WHICH YOU

CAN GET LIMITED LICENSES.

       I BELIEVE THE ANSWER WOULD BE, FROM OFAC, IS THAT IT

IS SIMPLY NOT POSSIBLE TO GET A LICENSE.  BUT THE PROCEDURE

FOR GETTING A LICENSE -- IS A GENERAL LICENSE, THERE IS A

SPECIFIC LICENSE -- ARE LAID OUT IN THE REGS ON THE OFAC

WEBSITE.

       SO I DON'T KNOW WHAT HE IS ASKING.  I AM GOING TO

HAVE SOMEBODY HERE WHO WILL TESTIFY, WILL HAVE DONE A RECORD

SEARCH.  WE HAVE TO, I UNDERSTAND, UNDER THE LAW.  AND JUST

PUT IN OUR LACK OF RECORDS, BUT HAVE SOMEONE TESTIFY THEY

CONDUCTED A SEARCH AND THERE WAS NO LICENSE FOR MR. GHAHREMAN,

FOR MR. TAHERKHANI, FOR TIG MARINE OR FOR MR. YILDIZ FOR ANY

OF THESE PARTS TO GO TO IRAN.  THAT WILL BE THE PROOF OF THE

GOVERNMENT.

       CERTAINLY THE IDEA OF A BILL OF PARTICULARS, CAN I

DEFEND AGAINST THAT.  IF HE IS SAYING THAT MAYBE THERE WAS --

THIS STUFF WASN'T LICENSED, WE ARE GOING TO PUT ON PROOF THAT

THIS WOULD REQUIRE A LICENSE.  SO I DON'T KNOW WHAT HE IS

ASKING OR WHAT HE NEEDS IN TERMS OF A BILL OF PARTICULARS.

       **THE COURT:**  I SEE.  SO IN THE BRIEFING MR. JOHNSTON

ARGUES THAT THE INDICTMENT FAILS TO STATE WHAT PARTICULAR

LICENSES OR AUTHORIZATIONS THE DEFENDANT OR OTHER

CO-DEFENDANTS WERE REQUIRED TO OBTAIN.  YOUR RESPONSE WOULD BE

THAT THERE WERE NO LICENSES AVAILABLE FOR THIS CONDUCT.

     **MR. HARRIGAN:**  YES.  I THINK WE TRACK THE LANGUAGE
OF THE STATUTE AND REGULATIONS THAT THEY EXPORT, YOU KNOW,
EXCEPT, YOU KNOW -- EXCEPT AS OTHERWISE AUTHORIZED, WHICH
WOULD BE UNDER A LICENSE, THEY SENT THIS TO IRAN.

     SO WE ARE ALLEGING IN THE INDICTMENT, AS WE DO, THAT
THEY SENT IT TO IRAN WITHOUT A LICENSE, THEY DID SO WILLFULLY.
ALL RIGHT?  SO WE HAVE COVERED THE ELEMENTS OF THE STATUTE.
THAT IS WHY IT IS PLED THAT WAY.

     BUT MY UNDERSTANDING IS THE REASON FOR A BILL OF
PARTICULARS IS TO GIVE HIM THE RIGHT TO DEFEND HIMSELF.  I AM
MORE THAN WILLING TO WORK WITH MR. JOHNSTON ABOUT WHAT HE
THINKS HE NEEDS, BUT THE PROOF WILL BE FOR THESE ITEMS YOU
CANNOT GET A LICENSE OR THEY WEREN'T ABLE TO GET A LICENSE.

     I SAY THAT BECAUSE THERE MAY ALWAYS BE SOME
EXCEPTION.  BUT THEY DON'T HAVE A LICENSE.  WE PROVIDED THEM
WITH INFORMATION THAT THEY DID NOT OBTAIN A LICENSE.  SO THE
FACT THERE IS SOME LICENSE THEY COULD HAVE OBTAINED, YOU KNOW,
THEY HAVEN'T OBTAINED A LICENSE.

     **THE COURT:**  WHERE DOES THAT LEAVE US?  IF WE ACCEPT
THAT AS A PROFFER, DOES THAT ADDRESS THAT ISSUE?

     **MR. JOHNSTON:**  WELL, I APPRECIATE MR. HARRIGAN
POINTING ME TO THE WEBSITE AND WHAT THE NINTH CIRCUIT HAS
ALREADY DESCRIBED AS A LABYRINTH OF REGULATIONS WITH RESPECT
TO THE IRANIAN EMBARGO.

**MR. HARRIGAN:**   ACTUALLY, YOUR HONOR, IF I MAY.

THAT CASE HE CITES TO DEALS WITH COMMERCE DEPARTMENT REGULATIONS, WHICH ARE A LABYRINTH.  THE IRANIAN TRANSACTION SANCTIONS HAVE NEVER BEEN DESCRIBED AS A LABYRINTH.  ACTUALLY YOU CAN READ THROUGH THEM AND LOOK AT THEM.  FOR MAYBE THE UNEDUCATED OR NOT FAMILIAR WITH THEM -- THEY ARE NOT DIFFICULT TO GO THROUGH.

THE LICENSE PROCEDURE IS, I WOULD AGREE.  THAT IS SOMETHING THAT IS WITH OFAC.  THERE MAY BE SOME EXCEPTIONS, I DON'T KNOW.  BUT I HAVE BEEN TOLD THAT TYPICALLY THESE WOULD NOT -- A LICENSE WOULD NOT HAVE BEEN GRANTED FOR THESE.

I AM SORRY TO INTERRUPT HIM, BUT I JUST WANTED TO MAKE THAT CLEAR.

**MR. JOHNSTON:**   THAT IS ALL RIGHT.

THE POINT I WAS GETTING TO, YOUR HONOR, WAS IN THIS CASE THERE ARE ESSENTIALLY TWO TYPES OF ITEMS THAT THE GOVERNMENT WILL ARGUE MR. GHAHREMAN AND THE OTHER INDICTED DEFENDANTS ATTEMPTED TO OBTAIN.

ONE OF THOSE ITEMS, THE GOVERNMENT HAS SUGGESTED, REQUIRES A LICENSE TO BE EXPORTED FROM THE UNITED STATES TO ANY COUNTRY.  THAT IS WHAT HAS BEEN REFERRED TO AS THE Y-690 TRIODES.

THE OTHER ITEM WHICH HAS BEEN REFERRED TO IS A GYROCOMPASS, REQUIRES NO LICENSE TO BE EXPORTED FROM THE UNITED STATES TO ANY COUNTRY, NOTWITHSTANDING THE FACT THAT

THERE IS AN EMBARGO ON SENDING GOODS AND TECHNOLOGY TO IRAN.

ONE OF THE THINGS THE GOVERNMENT ALLEGES IN THE INDICTMENT AS PROOF THAT THESE INDIVIDUALS KNEW THAT THEY WERE VIOLATING THE LAW OR WERE WILLFULLY VIOLATING THE LAW CENTERS ON THE LICENSES THAT WOULD BE REQUIRED FOR THE Y-690.

PERHAPS I CAN DISCUSS WITH MR. HARRIGAN, HE CAN TALK ABOUT THE LICENSES THAT WOULD OTHERWISE BE REQUIRED.  BUT I KNOW WE ARE GOING TO HEAR AT TRIAL THAT THEY DIDN'T GET THESE LICENSES, THAT THE GOVERNMENT WILL ARGUE THEY KNEW THEY HAD TO HAVE LICENSES FOR THESE PARTICULAR ITEMS TO BE EXPORTED TO ANY PART OF THE COUNTRY.  AND THEN THEY WILL RELY ON THAT TO HAVE THE JURY INFER THAT THEY WERE VIOLATING THE IRANIAN TRADE EMBARGO.

AND I BROUGHT IT UP AS A BILL OF PARTICULARS BECAUSE I DID NOTE THAT AGENT HAMAKO, IN MY REVIEW OF DISCOVERY, WAS CONSISTENTLY SENDING OUT REQUESTS TO OFAC OR OTHER GOVERNMENT ENTITIES TO DETERMINE WHAT LICENSES WOULD BE REQUIRED TO EXPORT THESE ITEMS FROM THE UNITED STATES.  AND I JUST SIMPLY NEVER RECEIVED THE RESULTS OF THOSE REQUESTS.

IF THE GOVERNMENT HAS THE RESULTS OF THOSE REQUESTS, THAT WOULD PROBABLY SATISFY ME TO BE ABLE TO DEFEND, WHICH WILL BE A THEORY OF DEFENSE -- OR A THEORY OF THE CASE FOR THE GOVERNMENT, DEFEND AGAINST THE NEED FOR A LICENSE FOR THIS Y-690.

WE DO GET INTO THE LABYRINTH OF WHAT THEY CONSIDER

TO BE SCHEDULED DEFENSE RELATED ITEMS.  AND I HAVE NOT SEEN

THAT FROM THE GOVERNMENT'S DISCOVERY, I DO NOT SEE THAT FROM

THE INDICTMENT.  I THINK A BILL OF PARTICULARS WOULD ASSIST ME

IN DEFENDING AGAINST WHAT WILL BE THAT THEORY OF DEFENSE -- OR

THEORY OF PROSECUTION.

          **THE COURT:**  WAS THERE A RESPONSE TO AGENT HAMAKO'S

REQUEST?

          **MR. HARRIGAN:**  I THINK, THERE AGAIN, THERE IS SOME

CONFUSION, BECAUSE GOODS ARE REGULATED FROM EXPORT BY

DIFFERENT ENTITIES OF THE UNITED STATES.  THE DEPARTMENT OF

TREASURY REGULATES GOODS THAT GO TO EMBARGOED COUNTRIES, LIKE

IRAN.

          WHEN YOU ARE TALKING ABOUT THE TYPE OF ARTICLE, IF

IT IS A DEFENSE ARTICLE, THE DEPARTMENT OF STATE REGULATES

THAT LICENSE.  SO YOU MAY HAVE TWO AGENCIES.  IF THERE IS A --

LIKE, FOR EXAMPLE, A FIREARM.  THAT IS MUNITIONS.  THAT IS

REGULATED BY THE DEPARTMENT OF STATE.

          IF THAT IS GOING TO IRAN YOU WOULD HAVE TO GET A

LICENSE FROM BOTH DEPARTMENT OF STATE AND GET PERMISSION FROM

THE DEPARTMENT OF TREASURY.  OKAY.

          SIMILARLY, IF IT WAS A DUAL USE ITEM, WHICH IS WHEN

I TALK ABOUT COMMERCE, THERE ARE REGULATIONS FOR THAT WHICH

HAVE BOTH MILITARY AND CIVILIAN USE.  THOSE ARE REGULATED BY

THE DEPARTMENT OF COMMERCE.

          IN THIS CASE WHEN WE INITIALLY HAD UNDERCOVER

NEGOTIATIONS THERE WERE DETERMINATIONS SENT OUT WHETHER THE
GYROCOMPASS WAS A DEFENSE ARTICLE, WHICH WOULD HAVE BEEN
ANOTHER CHARGE.  AND IT IS NOT A DEFENSE ARTICLE, THE
GYROCOMPASS.

THERE WAS ALSO A REQUEST TO THE STATE DEPARTMENT --
I BELIEVE WE PROVIDED THIS TO MR. JOHNSTON, IF WE HAVEN'T I
WILL MAKE SURE WE GET THAT OUT TO HIM -- WHETHER THE Y-690,
WHAT ARE CALLED ELECTRON TUBES, WERE DEFENSE ARTICLES.

INITIALLY, INITIAL DETERMINATION WE WERE TOLD THEY
WERE.  THEY LATER CAME BACK AND SAID THEY ARE NOT.  SO WE ARE
NOT RELYING ON THE DEPARTMENT OF STATE REGULATIONS, IT WOULD
BE A SEPARATE VIOLATION VIOLATING THE ARMS EXPORT CONTROL ACT.

SO THAT IS WHERE THERE MAY BE THE CONFUSION.  OUR
ARGUMENT IS GOING TO BE THAT THERE WAS NO LICENSE FROM OFAC.

NOW, HAVING SAID THAT, THEY WERE TOLD THAT IT WAS --
INITIALLY THAT IT WAS A MILITARY ARTICLE, BOTH MR. GHAHREMAN
AND MR. YILDIZ, THE ELECTRON TUBE.

I THINK THE FACT THAT THEY THOUGHT THAT AND WERE
STILL WILLING TO GO FORWARD MAY BE SOME EVIDENCE WE WILL
PRESENT AT TRIAL, EVEN THOUGH IT WAS NOT.  BUT WE ARE NOT
GOING TO BE ABLE TO SAY AND WE ARE NOT PUTTING ON EVIDENCE
THAT EITHER THE GYROCOMPASS OR THE ELECTRON TUBES WERE
MILITARY ITEMS REGULATED BY THE DEPARTMENT OF STATE.  AND THEY
ARE NOT FACING CHARGES UNDER THOSE REGULATIONS, WHICH WOULD BE
THE ARMS EXPORT CONTROL ACT AND WHAT IS CALLED ITAR, THE

INTERNATIONAL TRAFFIC IN ARMS REGULATIONS, WHICH ARE SEPARATE

REGULATIONS FROM THE DEPARTMENT OF STATE.

        I HOPE THAT CLARIFIES IT, BUT I THINK THAT IS WHERE

THE CONFUSION LIES.  IF WE HAVEN'T GOTTEN TO MR. JOHNSTON YET

THE DETERMINATION OF THE DEPARTMENT OF STATE -- I THOUGHT WE

DID -- WE WILL MAKE SURE WE GET THAT TO HIM.

        BUT THERE WAS NO REQUEST FOR DETERMINATION OF OFAC,

YOU KNOW, WHETHER THIS IS REGULATED, SINCE ALL GOODS GENERALLY

ARE.  IT IS JUST A QUESTION OF WHETHER THEY HAVE A LICENSE OR

WAS A REQUEST PUT IN, DID ANY OF THESE INDIVIDUAL ENTITIES

ASSOCIATED WITH THIS CASE HAVE A LICENSE; AND THE RESPONSE WAS

NO, THEY DID NOT.

        **MR. JOHNSTON:**  I WOULD CERTAINLY APPRECIATE ANY

DISCOVERY REGARDING THE STATE DEPARTMENT'S RESPONSE WITH

RESPECT TO THE Y-690'S, PARTICULARLY A RESPONSE THAT INDICATES

THAT THEY DID NOT REQUIRE A LICENSE AS A MILITARY RELATED

ITEM.

        **THE COURT:**  SO THAT DISCOVERY YOU DO NOT HAVE.

        **MR. JOHNSTON:**  TO THE BEST OF MY KNOWLEDGE.  I HAVE

GOTTEN THOUSANDS OF PAGES FROM MR. HARRIGAN.  I AM NOT SAYING

HE HASN'T BEEN DILIGENT.  BUT TO THE EXTENT THAT IS OUT THERE,

I WOULD LOVE TO HAVE IT.  AND I AM PRETTY SURE I DON'T HAVE

IT.

        **MR. HARRIGAN:**  WE WILL MAKE SURE HE HAS IT.

        **THE COURT:**  ON THE BILL OF PARTICULARS, I THINK,

GIVEN OUR DISCUSSION THUS FAR, I WILL SIMPLY RESERVE ON IT

AND -- OR DENY WITHOUT PREJUDICE.

IF, MR. JOHNSTON, YOU BELIEVE THAT THERE IS

ADDITIONAL INFORMATION THAT WOULD BE HELPFUL TO THE DEFENSE,

IN OTHER WORDS IDENTIFYING TYPES OF LICENSES THAT MIGHT HAVE

BEEN ISSUED FOR THESE TRANSACTIONS, TO THE EXTENT THE

GOVERNMENT WOULD BE INTRODUCING ANY SUCH EVIDENCE AT TRIAL, IT

SEEMS TO ME IT WOULD BE FAIR THAT THEY IDENTIFY THOSE LICENSES

PRIOR TO TRIAL.  BUT WE CAN DO THAT FOUR WEEKS OR SO BEFORE

TRIAL, IF NECESSARY.  TREAT IT THAT WAY RATHER THAN A BILL OF

PARTICULARS.

ON THE MOTIONS RELATING TO THE VARIOUS COUNTS, THE

MOTIONS TO DISMISS.  THE GOVERNMENT HAS FILED A SUPERSEDING

INDICTMENT.  WE HAVE YET TO ARRAIGN ON THAT, AM I CORRECT?

**MR. HARRIGAN:**  WE DID.

**THE CLERK:**  ACCORDING TO THE DOCKET, I DON'T SEE

EITHER DEFENDANT BEING ARRAIGNED.

**MR. HARRIGAN:**  WE DID NOT ARRAIGN THEM.

**THE COURT:**  WE WILL HANDLE THAT TODAY.

BUT THE GOVERNMENT, SEEMS TO ME, ADDRESSED FLAWED

COUNTS 3 AND 4 IN LIGHT OF THE -- MIGHT HAVE BEEN THE KUOK,

K-U-O-K CASE, THE ATTEMPTED EXPORT -- ATTEMPT TO CAUSE THE

EXPORT ISSUE BY REDACTING THAT LANGUAGE FROM THE SUPERSEDING

INDICTMENT.

IN ALL OTHER RESPECTS, THE TENTATIVE IS TO DENY THE

VARIOUS MOTIONS FOR THE REASONS SET OUT IN THE GOVERNMENT'S
BRIEFING.  I READ MANY OF THE CASES AND THE STATUTES AND
REGULATIONS AT ISSUE, AND IT SEEMED TO ME, BY WAY OF A
TENTATIVE BASIS, THAT THE GOVERNMENT'S RESPONSE TO THE VARIOUS
ARGUMENTS TO DISMISS THE VARIOUS COUNTS HAD MERIT, THE
GOVERNMENT'S RESPONSE, THAT IS.  AND FOR THOSE REASONS THE
TENTATIVE WOULD BE TO DENY THE DEFENDANT'S MOTIONS.

       MR. JOHNSTON.

       **MR. JOHNSTON:**  WELL, YOUR HONOR, I WILL TRY NOT TO
JUST GO THROUGH ALL OF THE ARGUMENTS THAT WE ALREADY BRIEFED
IN OUR PAPERS, BUT I WOULD LIKE TO TRY TO POINT OUT PERHAPS A
FEW THINGS FOR A FEW OF THESE ARGUMENTS THAT MIGHT AT LEAST
HELP HIGHLIGHT WHAT MY ARGUMENTS ARE.

       I GUESS, GOING BACK TO THE BEGINNING OF THE MOTIONS,
IN COUNT 1.  I WOULD LIKE TO FOCUS ON THE VAGUENESS CHALLENGE.

       LET ME SEE IF I CAN PULL OUR LITTLE THING BACK UP
HERE AGAIN.

       THIS APPEARS TO BE COUNT 1 OF THE SUPERSEDING
INDICTMENT.  AND I WANT TO BRING IT UP BECAUSE TO THE EXTENT I
WASN'T CLEAR, THE GOVERNMENT DOES SEEM TO MISUNDERSTAND WHAT
MY ARGUMENT WAS AND SPENDS A CONSIDERABLE AMOUNT OF TIME
FOCUSING ON WHAT I AM CALLING COUNT 1A; WHEN IN FACT THE
VAGUENESS CHALLENGE IS TO COUNT 1B.

       SO LET ME SEE IF I CAN DO IT THIS WAY, YOUR HONOR.

       IN COUNT 1A THE GOVERNMENT HAS ALLEGED THAT

MR. GHAHREMAN AND THE OTHER DEFENDANTS CONSPIRED, WILLFULLY
AGREED TO EXPORT, SELL AND SUPPLY THESE ITEMS, DIRECTLY AND
INDIRECTLY, FROM THE UNITED STATES TO IRAN IN VIOLATION OF THE
REGULATIONS IN THE STATUTES.

THIS MAKES SENSE TO ME THAT YOU COULD SAY THAT THEY
CONSPIRED TO WILLFULLY EXPORT THESE GOODS EITHER DIRECTLY FROM
THE UNITED STATES TO IRAN OR INDIRECTLY FROM THE UNITED STATES
TO SOME OTHER COUNTRY OR SOME OTHER LOCALITY TO IRAN.  I
UNDERSTAND THAT.  AND I DON'T HAVE A VAGUENESS CHALLENGE TO
COUNT 1A.

WHERE I HAVE CONSIDERABLE CONCERN, THOUGH, IS IN
COUNT 1B.  AND THE GOVERNMENT HAS, IN ITS CHARGING DOCUMENT,
IMPORTED THIS DIRECTLY-AND-INDIRECTLY LANGUAGE INTO COUNT 1B
WHICH ALLEGES A SIMILAR CONSPIRACY TO ENGAGE IN TRANSACTIONS
WITHIN THE UNITED STATES THAT EVADE AND AVOID OR HAVE THE
PURPOSE OF EVADING AND AVOIDING THE PROHIBITIONS.

THEN THEY SAY:  DIRECTLY OR INDIRECTLY, COMMA, FROM
THE UNITED STATES TO IRAN.

HERE IS THE CONCERN WITH THE WAY THAT THIS IS PLED.

MR. GHAHREMAN COULD HAVE WILLFULLY AGREED TO ENGAGE
IN A TRANSACTION TO GET, SAY, THE GYROSCOPE TRIODE OR ANY
OTHER ITEM WILLFULLY AND INTENTIONALLY FROM THE UNITED STATES
TO DUBAI.

NOW, THE WAY THIS IS PLED IS THAT EVEN THOUGH HE MAY
HAVE WILLFULLY AND INTENTIONALLY CHOSE TO DO THAT, IT MAY

INDIRECTLY END UP EVADING THE TRADE VIOLATIONS.  FOR INSTANCE,
MR. -- LET'S NOT SAY YILDIZ, LET'S SAY MR. TAHERKHANI,
DEFENDANT NO. 1, MAY RECEIVE THOSE IN DUBAI AND THEN ON HIS
OWN TAKE THEM TO IRAN, WITH NO PARTICIPATION WHATSOEVER BY MR.
GHAHREMAN.  BUT HE WOULD BE GUILTY, AS PLED HERE, FOR HAVING
WILLFULLY ENGAGED IN A TRANSACTION THAT GOT THAT DEVICE, OR
WHATEVER IT IS, THAT ITEM TO DUBAI, EVEN THOUGH HE DIDN'T
DIRECTLY HELP EVADE TRADE SANCTIONS BECAUSE MR. TAHERKHANI
CHOSE TO TAKE IT ON TO IRAN.

DIRECTLY AND INDIRECTLY ISN'T EVEN IN THE
REGULATIONS CITED FOR COUNT 1B.  THAT IS TITLE 31 CFR 560.230.
DIRECTLY AND INDIRECTLY FITS NATURALLY IN COUNT 1A AND BELONGS
THERE BECAUSE IT SAYS, YOU KNOW, YOU CAN'T JUST STOP IN A
THIRD COUNTRY TO SEND IT TO ANOTHER COUNTRY.

BUT WHAT WE HAVE HERE IS SORT OF THE ACTUS REYES,
THE ACT THAT YOU HAVE TO DO HAS BEEN DIVORCED FROM THE MENS
REA, WHICH IS WILLFULLY AND INTENTIONALLY VIOLATING THE LAW IN
THE WAY THIS HAS BEEN PLED.

SO WE HAVE THE VAGUENESS BECAUSE BASICALLY YOU CAN
BE GUILTY OF DOING INNOCENT ACTIVITIES THAT ULTIMATELY END UP
IN IRAN AND ULTIMATELY EVADE THE TRADE SANCTIONS.  AND THAT IS
THE WAY IT HAS BEEN PLED HERE.

SO IT HAS BEEN -- THIS PART, COUNT 1B, HAS BEEN
MISPLED TO THE EXTENT THAT IT CREATES A VAGUE CHARGE THAT I
THINK GOES BEYOND THE REGULATION ITSELF AND THE STATUTES THAT

ALLOW ITS IMPLEMENTATION.

AND MAYBE IT IS JUST A COMMA OR THE PLACEMENT OF
DIRECTLY AND INDIRECTLY, BUT ALL OF THESE THINGS, THE
INCLUSION OF THAT PHRASE AND THE WAY IT IS PLED, LEADS TO THAT
RESULT.

I THINK IT IS A SIGNIFICANT PROBLEM WITH COUNT 1B.
I THINK IT IS ONE THAT THE GRAND JURORS COULD HAVE RELIED ON
IN INDICTING; AND CERTAINLY ONE JURORS CAN RELY ON AT TRIAL IN
CONVICTING SOMEONE WHO DID NOT WILLFULLY AND INTENTIONALLY TRY
TO EVADE AND AVOID OR WILLFULLY AND INTENTIONALLY HAD THE
PURPOSE OF AVOIDING OR EVADING THE TRADE SANCTIONS.

**THE COURT:**  THIS FOCUSES ON 560.203?

**MR. JOHNSTON:**  560.203, RIGHT.

**THE COURT:**  AND YOUR ARGUMENT WOULD BE THAT THIS
WOULD BE CLEAR IF DIRECTLY AND INDIRECTLY WAS MOVED PERHAPS
TO -- BETWEEN THE UNITED STATES AND TO IRAN.  SO IF IT READ
FROM THE UNITED STATES DIRECTLY AND INDIRECTLY TO IRAN.  THEN
IT WOULD BE CLEAR.

**MR. JOHNSTON:**  WELL, IT MIGHT BE MORE CLEAR BUT IT
CERTAINLY WOULDN'T TRACK THE REGULATION.  AND CERTAINLY
WOULDN'T SOLVE THE PROBLEM THAT A GRAND JURY HAS ALREADY
INDICTED ON THE CHARGE AS PLED.  THAT IS WHY IT IS STYLED AS A
MOTION TO DISMISS THAT COUNT.

**THE COURT:**  ALL RIGHT.

MR. HARRIGAN.

**MR. HARRIGAN:**   FRANKLY, YOUR HONOR, I AM CONFUSED BY HIS ARGUMENT.

THERE IS -- YOU ARE RIGHT, WE CHARGED TWO MEANS OF VIOLATING WHAT IS CALLED THE INTERNATIONAL ECONOMIC EMERGENCY PROCEDURES ACT, OR IEEPA.  ONE OF THOSE WAYS YOU CAN DO IT IS THE ONE HE DOESN'T HAVE OBJECTION TO WHICH IS ESSENTIALLY EXPORTING DIRECTLY OR INDIRECTLY -- THAT IS THE LANGUAGE -- FROM THE UNITED STATES DIRECTLY OR INDIRECTLY TO THE GOVERNMENT OF IRAN.  THE 506. -- EXCUSE ME.  I SHOULD KNOW THESE BY HEART.

BUT THE 560.203 IS A -- WHICH MAKES UNLAWFUL TO ENGAGE IN ANY TRANSACTIONS WITHIN THE UNITED STATES THAT EVADE AND AVOID, OR HAS THE PURPOSE OF EVADING OR AVOIDING, THE PROHIBITIONS OF ANYTHING ELSE UNDER THE IRANIAN TRANSACTION SANCTIONS, REGULATIONS, WHICH INCLUDES 506.204.

WE JUST KIND OF REINSTATED THE LANGUAGE OF 560.204, YOU CAN'T EVADE IT FOR THE PURPOSES OF SENDING SOMETHING TO IRAN DIRECTLY OR INDIRECTLY.

IT SEEMS TO ME CHARGED PROPERLY, IF THERE IS AN ISSUE WITH WHAT MODIFIES WHAT, I THINK IT ACTUALLY FOLLOWS THE LANGUAGE OF THE 560.204.

BUT, IN ANY EVENT, HAVING SAID ALL THAT, THE GOVERNMENT'S PROOF AT TRIAL, IT HAS TO BE THAT IT WAS WILLFUL. THE GOVERNMENT CANNOT ARGUE HERE THAT DEFENDANT INTENTIONALLY SENT IT -- WILLFULLY SENT IT TO IRAN BUT SOMEHOW IT ENDED UP

HE IS GUILTY.  THE WILLFUL REQUIREMENT KNOWS THAT IT IS
AGAINST THE LAW, WHICH REQUIRES THAT HE KNOW IT IS GOING TO
IRAN.  SO THAT WOULD BE THE GOVERNMENT'S PROOF.

EVEN ASSUMING YOU FIND THAT, YOU KNOW, SOMEHOW THESE
STATUTES ARE UNCONSTITUTIONALLY VAGUE -- AND THAT IS WHAT I
UNDERSTOOD, HE SAID IT IS UNCONSTITUTIONALLY VAGUE -- HE CAN'T
GIVE A DUE PROCESS CHALLENGE WHERE IT IS NOT
UNCONSTITUTIONALLY VAGUE AS TO HIM.

AS CHARGED HERE AN OVERT ACT -- I THINK IT IS AAA.,
IT IS ALLEGED THAT HE TOLD THE UNDERCOVER AGENT THAT BOTH THE
GYROCOMPASSES AND THE ELECTRON TUBES WERE GOING TO IRAN.
SPECIFICALLY THE GYROCOMPASSES WERE GOING TO A FERRY COMPANY
IN IRAN AND THE ELECTRON TUBES WERE GOING TO AN AIRPORT IN
IRAN.

SO I GUESS THE ARGUMENT IS THIS.  ONE, IT IS CHARGED
PROPERLY.  TWO, IT IS NOT UNCONSTITUTIONALLY VAGUE BECAUSE
THERE IS THE WILLFULNESS REQUIREMENT.  AND CERTAINLY NEITHER
THE STATUTE NOR DOES THIS INDICTMENT SAY THAT ONE CAN BE
CONVICTED WITHOUT KNOWING SOMETHING IS GOING TO IRAN DIRECTLY
OR INDIRECTLY.

AND THIRDLY, TO THE EXTENT HE IS -- THERE IS SOME
UNCONSTITUTIONAL VAGUENESS ABOUT THE STATUTE, AS APPLIED TO
HIM IT IS NOT UNCONSTITUTIONALLY VAGUE.  WE HAVE ALLEGED HERE
THAT HE KNEW EXACTLY WHERE BOTH OF THESE ARTICLES WERE GOING,
THEY WERE GOING TO IRAN.  AND THAT WILL BE THE GOVERNMENT'S

PROOF AT TRIAL.

**THE COURT:** SO IN LIGHT OF THE SUPERSEDING
INDICTMENT YOU WOULD ARGUE THAT BECAUSE OF PARAGRAPH AAA AT
PAGE 21 THERE IS NO CONCERN THAT THE GRAND JURY MAY HAVE BEEN
MISINFORMED, OR THERE IS NO CONCERN AS TO WHAT POSSIBLE BASIS
THE GRAND JURY MAY HAVE --

**MR. HARRIGAN:** I GUESS I WAS A LITTLE CONFUSED
BECAUSE THE ARGUMENT IN HIS PAPERS SAY UNCONSTITUTIONALLY
VAGUE, BUT HE SEEMS TO MIX AND MATCH. AND NOW HE SAYS THEY
CHARGED HIM IMPROPERLY. THE STATUTE IS OKAY, BUT THEY CHARGED
HIM IMPROPERLY. SO I DON'T KNOW WHAT I AM ADDRESSING HERE.

TO THE EXTENT HE IS SAYING THAT IT IS CHARGED OR
THEY WERE INSTRUCTED WRONG AND IT IS CHARGED IMPROPERLY I
AGREE, YES, AAA CLEARS THAT UP. CLEARLY THE JURY WAS
PRESENTED EVIDENCE THAT -- GRAND JURY WAS PRESENTED EVIDENCE
THAT HE KNEW THE DESTINATION WHERE BOTH OF THESE ARTICLES WERE
GOING.

**MR. JOHNSTON:** TO THE EXTENT THAT THE CHALLENGE IS
TO THE STATUTE BEING UNCONSTITUTIONALLY VAGUE, THAT IS IF THE
STATUTE PERMITS THIS LANGUAGE THAT WE HAVE BEFORE US ON THE
SCREEN, THEN IT IS UNCONSTITUTIONALLY VAGUE BECAUSE IT DRAWS
IN A SWATH OF INNOCENT ACTIVITY THAT CANNOT BE PROTECTED BY
ANY MENS REA OF WILLFULNESS, IF THE WILLFULNESS IS TO ENGAGE
IN AN INNOCENT ACT AND THEN THE SUBSEQUENT ACT LEADS TO THESE
ITEMS GOING TO IRAN.

SO THAT IS WHY IT IS STYLED AS A CHALLENGE FOR VAGUENESS.  IF THE STATUTE PERMITS THIS, THEN IT IS VAGUE AND IT IS UNCONSTITUTIONAL IN THIS COUNT.

AS APPLIED, THE GOVERNMENT HAS POINTED TO ONE PART OF ITS INDICTMENT, I BELIEVE, TRIPLE A, TRIPLE MINI A PARAGRAPH, TRIPLE MINI A.  AND THERE CERTAINLY WILL BE A DISPUTE AT TRIAL ABOUT WHAT THE NATURE OF THAT CONVERSATION WAS, WHAT WAS SAID, WHAT WAS AGREED TO AND WHAT WAS ADMITTED.

MY CONCERN IS THAT EVEN THOUGH THAT IS WHAT WAS PRESENTED TO THE GRAND JURY, THAT THEY MAY NOT NEED TO WORRY ABOUT THE ACCURACY OF THE STATEMENTS WHEN THEY ARE PRESENTED WITH THE POSSIBILITY OF INDICTING ON A CHARGE THAT SAYS YOU CAN BE CONVICTED UNDER THIS SCENARIO.  SO I DON'T THINK THAT SAVES THE GOVERNMENT'S AS-APPLIED RESPONSE.

**MR. HARRIGAN:**  NOTHING FURTHER, YOUR HONOR.

**THE COURT:**  ANY OTHER ARGUMENTS AS TO THE VARIOUS MOTIONS TO DISMISS?

**MR. JOHNSTON:**  NOT ON THAT ONE, YOUR HONOR.

YOUR HONOR, I WOULD LIKE TO TALK BRIEFLY ABOUT -- IN MY MOTION ROMAN NUMERAL II B.5, THE CLAIM THAT THE DEPARTMENT OF HOMELAND SECURITY WAS ACTING BEYOND ITS AUTHORITY UNDER THE REGULATIONS IN THIS -- UNDER THE REGULATIONS IMPLEMENTED UNDER IEEPA.

AND I APOLOGIZE TO THE COURT REPORTER FOR ALL OF THIS DIFFICULTY OF MIX-MATCHED TERMS AND WHATNOT.

BUT THE POINT IS THIS.  THERE IS A COMPLEX -- EVEN FOR THE EDUCATED AND LAWYERLY OBSERVER OF THESE REGULATIONS THERE IS A COMPLEX PROCESS OF KNOWING WHAT YOU CAN AND CANNOT DO AND WHAT THE CONSEQUENCES AND PENALTIES ARE.

AND THE PRESIDENT, UNDER THE AUTHORITY OF IEEPA, SECTION 1701 THROUGH 1705, AUTHORIZED THE DEPARTMENT OF TREASURY TO IMPLEMENT THESE REGULATIONS, THE VERY REGULATIONS THAT MR. GHAHREMAN IS NOW BEING CHARGED WITH HAVING VIOLATED. AND THOSE REGULATIONS GO FURTHER TO SAY THAT -- AND I BELIEVE THIS IS 560.802, THAT THESE REGULATIONS, EVEN IF OTHER AGENCIES TAKE OTHER ACTIONS RELATED TO THE MATTERS INVOLVING THESE REGULATIONS, THAT IT IS FOR THE OFFICE -- OR SORRY -- IT IS FOR THE DEPARTMENT OF THE TREASURY, OFAC'S DIVISION, TO DETERMINE OR TO, YOU KNOW, BASICALLY IMPLEMENT AND POLICE THESE REGULATIONS.

THE GOVERNMENT SAYS NO, THAT IS NOT TRUE.  AND THEY HAVE CITED TO -- AND THE REASON I WANTED TO BRING THIS UP IS THEY HAVE AN APPENDIX AT THE END OF THEIR RESPONSE, WHICH I BELIEVE IS 19 CFR 161.2.

AND I BELIEVE THAT THEY STATED IN THEIR PAPERS THAT -- AND THEY HAVE ATTACHED NOT ONLY THE REGULATION BUT THE SUPPLEMENTAL INFORMATION AND BACKGROUND TO A RULE CHANGE.  AND 161.2 BASICALLY SAYS THAT CUSTOMS HAS DETERMINED THAT THEY HAVE AUTHORITY OVER THE REGULATIONS, INCLUDING THESE REGULATIONS AT ISSUE IN THIS CASE.  THE GOVERNMENT SAYS THAT

WAS DONE WITH THE CONSENT OF THE DEPARTMENT OF TREASURY.

LET ME JUST SEE IF I CAN GET THIS PULLED UP.  I CAN'T DO THIS WHERE IT IS NOT GOING TO MAKE YOU DIZZY.

BUT LET ME SAY THAT REVIEWING THE SUPPLEMENTARY INFORMATION, NOWHERE DOES IT SAY ANYTHING ABOUT THE DEPARTMENT OF TREASURY AUTHORIZING CUSTOMS, WHAT IS NOW THE DEPARTMENT OF HOMELAND SECURITY, AUTHORIZING THEM TO POLICE THESE REGULATIONS.

I MEAN, WHAT WE HAVE IN THIS CASE IS A COMPLEX SCHEME OF REGULATIONS AND STATUTES THAT TRY TO PREVENT ITEMS FROM BEING EXPORTED TO IRAN.  AND WHAT WE HAVE HERE IS NOW A SIX-MONTH INVESTIGATION WITH UNDERCOVER AGENTS TRYING TO DRAW IN THESE INDIVIDUALS HERE AT DEFENSE TABLE INTO A PROSECUTION FOR VIOLATION OF TRYING TO OBTAIN THESE ITEMS.

THE WAY OFAC HANDLES THESE ISSUES IS FIRST WITH CIVIL PENALTIES, FIRST WITH NOTICES THAT THERE MAY BE VIOLATIONS.  AND THEN THERE IS A HEAVY HAMMER AFTER THAT.  IT IS A SIGNIFICANT CRIMINAL PENALTY WITH A 20-YEAR MAXIMUM OF FEDERAL FELONIES.  BUT THE DEPARTMENT OF TREASURY NEVER AUTHORIZED CUSTOMS.

AND TO THE EXTENT THE GOVERNMENT RELIES ON THIS REGULATION TO SAY THAT TREASURY GAVE CUSTOMS -- OR WHAT WE ARE NOW CALLING DEPARTMENT OF HOMELAND SECURITY -- THE AUTHORITY TO POLICE THESE REGULATIONS, IT IS NOT HERE.

WHAT IT SAYS IS CUSTOMS HAS DETERMINED ITS

REGULATIONS AREN'T SUFFICIENTLY CLEAR.  CUSTOMS HAS DETERMINED
THAT WE WANTED TO CHANGE OUR REGULATIONS TO INCLUDE POLICING
OF THESE REGULATIONS THAT HAVE BEEN CHARGED IN THIS CASE.

   **THE COURT:**  WHAT ABOUT THE INITIAL ARGUMENT THAT IT
IS THE U.S. ATTORNEY'S OFFICE THAT IS BRINGING THE CHARGES?

   **MR. JOHNSTON:**  WELL, THE U.S. ATTORNEY'S OFFICE, I
MEAN, CERTAINLY IS ANOTHER ENTITY THAT CAN BRING CHARGES.  AND
THIS IS UNIQUE BECAUSE WHAT WE HAVE HERE IS REGULATIONS THAT
ARE ALLEGED TO BE VIOLATED THAT HAVE BEEN CREATED BY AN ENTITY
WITHIN THE EXECUTIVE BRANCH; REGULATIONS CREATED BY AN ENTITY
THAT HAS CREATED A CIVIL ENFORCEMENT SECTION AND ALSO HAS
CREATED -- ESSENTIALLY CREATED CRIMINAL ACTIONS THAT ARE
GRAFTED ONTO THE CIVIL PENALTIES.

   WHAT WE HAVE HERE IS HOMELAND SECURITY ACTING BEYOND
THEIR AUTHORITY CREATING, ESSENTIALLY, A CASE.  GOING OUT AND
FINDING AN INDIVIDUAL AND, YOU KNOW, ATTEMPTING TO GET HIM --
OR ATTEMPTING TO SET UP A TRANSACTION THAT IS NEVER GOING TO
HAPPEN BECAUSE THESE AGENTS AREN'T -- THEY AREN'T EVEN DEALING
WITH REAL ITEMS.  AND THEY ARE ACTING BEYOND THEIR AUTHORITY.

   SO I THINK THAT THE COUNTS MUST FAIL BECAUSE THEY
CREATED AN INVESTIGATION, THEY CREATED A CASE WITHOUT THE
AUTHORITY TO ACT UNDER THE REGULATIONS.

   FOR MR. GHAHREMAN, YOU KNOW, A FOREIGN COMPANY OR
SOMETHING, MAYBE HE WOULD HAVE GOTTEN A LETTER FROM OFAC
SAYING, YOU KNOW, ATTEMPTING TO ACQUIRE THESE ITEMS WOULD BE

IN VIOLATION.  IT COULD LEAD TO A CIVIL FINE OR CRIMINAL
PENALTIES.

       HE WAS GIVEN NO SUCH NOTICE.  INSTEAD HE WAS LURED
IN, LURED AWAY FROM HIS HOME IN NEW YORK.  FLOWN OVER TO THE
WEST COAST BY UNDERCOVER AGENTS, AND THEN ARRESTED AND CHARGED
WITH SIGNIFICANT SERIOUS FEDERAL OFFENSES.

       **THE COURT:**  WHAT AGENCY, THEN, WOULD HAVE THE
AUTHORITY TO DO THE INVESTIGATION?

       **MR. JOHNSTON:**  ANY AGENCY THE DEPARTMENT OF TREASURY
DETERMINES SHOULD BE DOING THIS, THAT SHOULD BE POLICING THESE
REGULATIONS.  AND, YOU KNOW, WHETHER THE GOVERNMENT SEEKS TO
CHARGE IT CRIMINALLY OR CIVILLY, THE ENTIRE IEEPA SCHEME HAS
BEEN CREATED TO GIVE THE DEPARTMENT OF TREASURY THE AUTHORITY
TO PROMULGATE REGULATIONS AND THEN GIVE AUTHORITY TO OTHER
ENTITIES, AS IT SEES FIT, TO ENFORCE AND IMPLEMENT THESE
REGULATIONS.

       THERE IS ANOTHER PART OF THE ACTUAL ITAR REGULATIONS
THAT SUGGESTS THAT THERE MAY BE ANOTHER AGENCY WHO IS ACTING
ON A MATTER THAT INVOLVES THESE VIOLATIONS WHO, FOR INSTANCE,
MIGHT BRING A 1001 PROSECUTION, A FALSE STATEMENT PROSECUTION,
SUGGESTING THAT OTHER AGENCIES MIGHT BE ABLE TO PURSUE
CRIMINAL MATTERS AGAINST THE INDIVIDUAL FOR OTHER CHARGES.
BUT IT SEEMS LIKE THE CHARGES THAT ARE WITHIN THE REGULATIONS
THEMSELVES, THE AUTHORITY HAS BEEN GIVEN EXCLUSIVELY TO THE
DEPARTMENT OF TREASURY.  AND THE DEPARTMENT OF TREASURY, AS OF

YET, HAS NOT DELEGATED THAT AUTHORITY TO CUSTOMS.

AND I JUST WANTED TO BRING UP THE FACT THAT TO THE EXTENT THE GOVERNMENT SAYS NO, NO, NO, THEY PERMITTED THIS WITH THIS CHANGE TO THE CUSTOMS REGULATIONS, THAT IS NOT THE CASE.

**THE COURT:** MR. HARRIGAN.

**MR. HARRIGAN:** YOUR HONOR, I GO BACK TO THE LANGUAGE OF THE FIRST STATUTE THAT HE CITES, WHICH IS 560.802. AS WE STATED IN OUR PAPERS, IT TALKS ABOUT ANY ACTION WHICH THE SECRETARY OF THE TREASURY IS AUTHORIZED TO TAKE PURSUANT TO EXECUTIVE ORDERS.

THE ACTION THEY ARE AUTHORIZED TO TAKE, THE DEPARTMENT OF THE TREASURY, IS TO IMPLEMENT THE REGULATIONS. ALL RIGHT. THIS DOESN'T SPEAK TO ANYTHING ABOUT WHO IS INVOLVED IN ENFORCING THOSE REGULATIONS.

I WOULD POINT OUT FOR MR. JOHNSTON'S BENEFIT, OFAC DOESN'T HAVE SPECIAL AGENTS. UNLESS THERE WERE SOME OTHER AGENTS TO INVESTIGATE THIS, NO ONE WOULD BE ABLE TO INVESTIGATE, IN HIS WORLD, WITHOUT SOME SORT OF AUTHORIZATION. IT IS NOT REQUIRED FOR AN INVESTIGATION. THAT WOULD BE MY FIRST POINT. IT IS A MISREADING OF THE STATUTE.

TO THE EXTENT HE IS SUGGESTING THAT HOMELAND SECURITY INVESTIGATIONS DOESN'T HAVE THE AUTHORITY TO DO THAT, THAT IS WHY I INCLUDED THE CUSTOMS REGULATION WHICH CLEARLY STATES THAT THEY HAVE THE POWER TO ENFORCE VIOLATIONS OF

IRANIAN -- ANY VIOLATIONS OF FOREIGN EXPORT LAWS.

SO, FOR THAT REASON, THEY ARE EMPOWERED TO DO THAT.
AND THEN TO SUGGEST SOMEHOW, CITING TO A STATUTE THAT TALKS
ABOUT MONETARY PENALTIES, YOU KNOW, NOTHING TO DO WITH
CRIMINAL SANCTIONS, THAT YOU HAVE TO GIVE SOME NOTICE.

THIS IS NOT A CIVIL ACTION WE ARE TAKING, AND
NOWHERE IN THAT REGULATION YOU CAN FIND ANYTHING THAT SAYS
BEFORE YOU INSTITUTE CRIMINAL CHARGES IN AN INVESTIGATION YOU
FIRST HAVE TO TAKE THE CIVIL ROUTE.

THAT AGAIN IS A MISREADING OF THE STATUTE, AND IT
REALLY SKEWERS WHAT THE STATUTE SAYS.  SO THE PLAIN LANGUAGE
DOES NOT LIMIT HSI'S ABILITY TO INVESTIGATE OR ENFORCE THESE
LAWS.

I WOULD ARGUE THEY CAN'T -- HSI CAN'T IMPLEMENT
REGULATIONS.  THAT IS NOT WHAT THEY HAVE DONE.  THAT IS WITHIN
THE DEPARTMENT OF TREASURY.  THAT IS WHAT THE DEPARTMENT OF
TREASURY DOES AND HAS DONE HERE.  HSI IS FULLY EMPOWERED,
UNDER THE LAW, TO INVESTIGATE THESE CASES.  ANY SUGGESTION
THAT THESE CASE CAN'T -- THERE CAN BE NO CRIMINAL
INVESTIGATION UNLESS A DEFENDANT IS GIVEN NOTICE, FIRST WE ARE
GOING TO GO AFTER YOU CIVILLY, I WOULD SUGGEST THERE WOULD BE
NO CRIMINAL INVESTIGATION DONE AT ALL BECAUSE CRIMINAL
ACTIVITY WOULD STOP.  IT IS LUDICROUS TO SUGGEST, AND THERE IS
NOTHING IN THE STATUTE THAT WOULD SUGGEST THAT'S A
REQUIREMENT.

**THE COURT:** ALL RIGHT.

MR. JOHNSTON, ANYTHING?

**MR. JOHNSTON:** I HAVE NOTHING FURTHER ON THAT POINT, YOUR HONOR.

**THE COURT:** ANY OTHER ARGUMENT AS TO ANY OF THE OTHER MOTIONS TO DISMISS?

**MR. JOHNSTON:** YOUR HONOR, I JUST WANT TO TAKE A BRIEF MOMENT WITH THE COUNTS 2, 5 AND 6, AND THEN THE MONEY LAUNDERING COUNTS.

**THE COURT:** YES.

**MR. JOHNSTON:** COUNTS 2, 5, AND 6 INVOLVE VIOLATIONS OF SECTION 544, I GUESS WHAT I WOULD CALL THE GENERAL EXPORT LAW.

AND WHAT THE GOVERNMENT HAS CHARGED MR. GHAHREMAN AND THE OTHER CO-DEFENDANTS WITH DOING IS IN ONE COUNT CONSPIRING BUT IN THE OTHER TWO ATTEMPTING TO RECEIVE, BUY OR OTHERWISE FACILITATE THE TRANSPORTATION OF ITEMS OUT OF THE UNITED STATES.

AND LET ME JUST PULL THIS UP HERE SO I MAKE SURE I GET THE WORDING RIGHT.

KNOWING THE SAME TO BE INTENDED FOR EXPORTATION CONTRARY TO ANY LAW OR REGULATION OF THE UNITED STATES.

AND THIS IS A POINT THAT IS CONCERNING UNDER THE FACT PATTERN THAT WE HAVE HERE. AS I SAID BEFORE, WE HAVE AN UNDERCOVER OPERATION INVOLVING A FICTITIOUS CORPORATION WITH

AGENTS WHO NEVER AT ALL HAD THE INTENT TO EXPORT CONTRARY TO
LAW ANY OF THESE ITEMS.  BUT TO BE GUILTY OF 544 MR. GHAHREMAN
AND OTHERS EITHER HAVE TO CONSPIRE OR ENGAGE IN THE ACT OF
RECEIVING OR BUYING OR SELLING ITEMS -- OR RECEIVING, BUYING
OR SENDING FROM THE UNITED STATES ANY MERCHANDISE, KNOWING
THAT IT IS INTENDED FOR EXPORTATION IN VIOLATION OF THE LAW.

            THAT JUST CAN'T HAPPEN UNDER THESE FACTS.  AN AGENT
CAN'T FORM THE MENS REA TO INTENTIONALLY VIOLATE THE LAW, TO
INTENTIONALLY SEND ITEMS.  THE AGENTS, TO MY UNDERSTANDING,
HAD ITEMS IN A BOX THAT WERE INERT, THAT WEREN'T THE ACTUAL
ITEMS THAT ARE PROHIBITED.  THE AGENTS NEVER INTENDED FOR
THOSE ITEMS TO LEAVE THE SHIPPING FACILITY.  THE AGENTS IN
THIS CASE SIMPLY DIDN'T HAVE THE MENS REA TO SATISFY THIS
ELEMENT AGAINST THESE DEFENDANTS.

            THE GOVERNMENT POINTS TO A CASE THAT AROSE IN THIS
DISTRICT, UNITED STATES VERSUS KUOK -- K-U-O-K -- TO SAY THAT
THIS ARGUMENT HAS BEEN FORECLOSED; AND IT HAS NOT.

            WHAT THE NINTH CIRCUIT ADDRESSED IN KUOK WAS AN
ARGUMENT BY THE DEFENDANT IN THAT CASE -- AND THIS IS THE
ENTIRETY OF THEIR REASONING ON THIS POINT.  THAT MR. KUOK
ARGUES THAT THERE HAD TO BE PROOF OF HIS INTENT TO EXPORT IN A
VERY SIMILAR CASE WHERE THERE IS AN UNDERCOVER AGENT, NO
INTENT BY THE GOVERNMENT TO EVER EXPORT AN ITEM CONTRARY TO
LAW.  THE COURT ADDRESSED AN ARGUMENT THAT THE DEFENDANT HAD
TO HAVE THE INTENT TO EXPORT.

AND WHAT THEY SAID IS NO, THE STATUTE IS WRITTEN IN THE PASSIVE.  NO SPECIFIC PERSON HAS TO HAVE INTENDED FOR THAT ITEM TO BE EXPORTED CONTRARY TO LAW.

AND THAT'S FINE, I ACCEPT THAT.  BUT SOMEBODY HAS TO HAVE THE INTENT TO EXPORT THAT CONTRARY TO LAW, AND THE AGENTS IN THIS CASE DIDN'T, COULDN'T.  LEGALLY COULD NOT HAVE THAT INTENT.

**THE COURT:**  COULDN'T IT BE THE DEFENDANT?

**MR. JOHNSTON:**  THEY COULD CHARGE IT AS THE DEFENDANTS INTENDING TO EXPORT, BUT WHAT THEY HAVE CHARGED IS THE DEFENDANTS RECEIVING ITEMS THAT WERE INTENDED FOR EXPORT, BUYING ITEMS THAT WERE INTENDED FOR EXPORT.  SO THE INTENTION IN THIS CASE NECESSARILY FALLS ON THE PERSON FROM WHOM THEY RECEIVED THESE ITEMS, AND THAT PERSON OR THAT ENTITY IS UNDERCOVER AGENTS WHO CAN'T FORM THAT INTENT.

**THE COURT:**  MR. HARRIGAN.

**MR. HARRIGAN:**  YOUR HONOR, I JUST THINK HE MISREADS KUOK.  KUOK STANDS FOR THE PROPOSITION THAT NO ONE, THE DEFENDANT NOR THE UNDERCOVER AGENT HAS TO INTEND TO EXPORT IT, IT IS THAT THEY HAVE TO KNOW THAT THE ITEM IN QUESTION IS INTENDED FOR EXPORT.

WHETHER SOMEONE ACTUALLY WAS GOING TO EXPORT IT OR NOT DOESN'T MATTER, BECAUSE IN KUOK THEY WEREN'T GOING TO EXPORT ANY ITEMS.  THEY WEREN'T GOING TO PANAMA.  AND THEY UPHELD THE 554 CHARGE THERE.  I MEAN, CERTAINLY IT IS ON ALL

FOUR SQUARES -- ON POINT.

AND I WOULD ADD, AS THE COURT, I THINK, ADDRESSED, THIS CASE IS A LITTLE BIT DIFFERENT THAN KUOK.  ACTUALLY MR. GHAHREMAN AND MR. YILDIZ WENT WITH THE AGENTS TO THE UPS AND HELPED FILL OUT PAPERWORK.  SO THERE WAS THEIR OWN INTENT TO EXPORT IT.

BUT WHAT WE HAVE PROOF FOR THAT COUNT IS JUST THAT THEY KNEW THAT THESE ITEMS WERE INTENDED FOR EXPORT, WHETHER THEY WERE EXPORTED OR NOT.  AND IT IS THE SAME REASONING THAT THERE IS A DIFFERENCE, AS THEY SAY IN KUOK, BETWEEN INTENDING OR KNOWING SOMETHING TO BE INTENDED TO EXPORT.

A MOVIE CAN BE INTENDED TO ONLY HAVE ADULTS, YOU KNOW, INTENDED, WHETHER ANYBODY GOES TO IT OR NOT.  AND IT IS THE ITEM ITSELF, WHAT WAS THE INTENT OF THAT ITEM.  WHAT WAS HIS INTENT WHERE THAT ITEM WOULD GO.  THAT IS WHAT KUOK STANDS FOR.

I WOULD SUBMIT NO SPECIFIC ACTOR HAS TO INTEND; IN OTHER WORDS, NO SPECIFIC ACTOR -- IN KUOK, THE GUY WAS IN PANAMA OR WAS PLANNING TO BE IN PANAMA.  HE WAS PLANNING TO HAVE THE UNDERCOVER AGENTS DO IT.

AND THE UNDERCOVER AGENTS WERE NEVER GOING TO PANAMA, YET THE COURT UPHELD THE 544 CONVICTION.  AND IT SEEMS TO BE EXACTLY ON POINT TO ADDRESS THE ISSUE OF MR. JOHNSTON. I DON'T SEE THE DISTINCTION, IS MY POINT.

**THE COURT:**  SO IN KUOK THEY HOLD IN PART THAT NO

SPECIFIC ACTOR NEED FORM THE INTENT TO EXPORT THE ITEM.  YOU

ARGUE THAT THAT MEANS EXACTLY WHAT IT SAYS.  YOU CAN HAVE A

CASE WHERE NEITHER THE UNDERCOVER AGENTS NOR THE DEFENDANTS

HAVE THE INTENT AND STILL RUN AFOUL OF 554.

       **MR. HARRIGAN:**  RIGHT.  IT COULD HAVE BEEN A CASE --

I WOULD ARGUE IN THIS CASE HERE THAT ACTUALLY -- AND THIS MAY

BE AN ISSUE AT TRIAL.  WE WILL HAVE PROOF THAT THEY WERE THE

ONES INTENDING TO EXPORT IT, BOTH THE AGENTS AND MR. YILDIZ

AND MR. GHAHREMAN WERE THERE.

       BUT EVEN IF THAT IS NOT THE CASE, THE FACT THAT THEY

WENT WITH THEM KNOWING THAT -- AT LEAST THEY THOUGHT THE

AGENTS WERE GOING TO, KNOWING THEY WERE INTENDED FOR, THAT IS

ENOUGH TO VIOLATE THIS STATUTE.

       WE DON'T HAVE TO SHOW AN INTENT BY EITHER ACTOR,

JUST THE ONLY MENS REA WE HAVE TO SHOW, AS SAID IN KUOK, IS

THAT THEY KNEW THE ITEM WAS INTENDED FOR EXPORT.  THAT IS WHY

THE LANGUAGE IS IN THE PASSIVE.  THAT IS WHAT MAKES IT

DIFFERENT FROM THE OTHER CHARGES, LIKE THE IEEPA CHARGES OR

ANY OTHER CHARGE WHERE THE PROOF WOULD BE DIFFERENT.

       **THE COURT:**  ALL RIGHT.

       MR. JOHNSTON.

       **MR. JOHNSTON:**  WELL, I THINK MR. HARRIGAN HAS

TOUCHED ON SEVERAL DIFFERENT POINTS.

       THE FIRST WAS THAT HE ARGUES NO SPECIFIC ACTOR NEED

FORM THE INTENT TO EXPORT THE ITEM.  I DON'T DISAGREE WITH

THAT.   THAT IS THE HOLDING OF KUOK.   BUT THAT DOESN'T MEAN
THAT NO ACTOR, AS THE COURT INQUIRED, NEEDS TO HAVE THE
INTENT.

ONE OF THE ELEMENTS OF 544 IS KNOWING THAT IT IS
INTENDED FOR EXPORT CONTRARY TO LAW.   SO IT CAN'T BE THAT WE
READ THAT ELEMENT OUT OF THE STATUTE BY SAYING WELL, NO ONE
REALLY HAS TO HAVE THAT INTENT.

SO WHILE IT IS NO SPECIFIC ACTOR NEED FORM THE
INTENT, SOME SPECIFIC ACTOR NEEDS TO BE ABLE TO FORM THE
INTENT.   AND UNDER THE WAY THAT IT IS CHARGED HERE THERE IS NO
SUCH ACTOR.

THE GOVERNMENT DIDN'T CHARGE MR. GHAHREMAN OR
MR. YILDIZ WITH EXPORTING THESE ITEMS.   THAT IS NOT AN
ELEMENT, TO KNOW THAT THEY WERE INTENDED FOR EXPORT FOR THAT
PART.   INSTEAD THEY CHARGED RECEIVING AND BUYING THESE ITEMS,
WHICH HAS THE ADDITIONAL ELEMENT OF KNOWING THAT THEY ARE
INTENDED FOR EXPORTATION.   AND THERE WAS ABSOLUTELY NO WAY
THAT THOSE AGENTS INTENDED TO EXPORT CONTRARY TO LAW.

AND NOTHING -- THIS IS THE ENTIRETY OF KUOK'S
REASONING.   NOTHING IN HERE ADDRESSES THE ARGUMENT I AM
RAISING TODAY, WHICH IS I AM NOT ARGUING THAT MR. GHAHREMAN
HAD TO HAVE THE INTENT AND COULDN'T HAVE IT; I AM ARGUING THAT
THE AGENT IS THE ONLY OTHER PERSON WHO COULD HAVE THAT INTENT,
AND HE DIDN'T.

IF THEY THINK MR. GHAHREMAN HAD THE INTENT TO EXPORT

IT, THEN THEY SHOULD HAVE CHARGED IT AS EXPORTING.  SO I THINK
ALL OF THESE COUNTS FAIL ON THAT POINT.

      **THE COURT:**  KUOK DOES SAY THAT THE MENS REA REQUIRES
ONLY KNOWING THAT THE ITEM IS INTENDED FOR EXPORT, RATHER THAN
AN INTENT TO EXPORT.

      **MR. JOHNSTON:**  THAT IS CORRECT.

      **THE COURT:**  THEN IT GOES ON TO SAY NO SPECIFIC ACTOR
NEED FORM THE INTENT TO EXPORT.

      THAT LANGUAGE, TAKEN IN ITS ENTIRETY, ISN'T THAT
MORE CONSISTENT WITH THE GOVERNMENT'S POSITION?

      **MR. JOHNSTON:**  KNOWING THAT SOMETHING IS INTENDED
FOR EXPORT IS PRETTY SIGNIFICANT MENS REA.  YOU KNOW THAT IT
IS GOING TO BE EXPORTED.  YOU KNOW THAT SOMEONE INTENDS TO
EXPORT IT.

      WHAT THE GOVERNMENT'S REASONING IS, IS MR. GHAHREMAN
BELIEVED THIS WAS INTENDED FOR EXPORT.  HE BELIEVED THESE
AGENTS WERE FOR REAL, THAT IS WHY HE FLEW OUT THERE AND WENT
DOWN TO SAN DIEGO WITH THEM, AND WENT TO THE UPS STORE TO PUT
THE BOX TOGETHER.  HE BELIEVED THAT THESE PEOPLE FULLY
INTENDED TO PUT THOSE BOXES IN THE MAIL, SEND THEM TO DUBAI SO
THAT, YOU KNOW, THE ONLY DEFENDANT WHO ISN'T AT THIS TABLE,
MR. TAHERKHANI, COULD RECEIVE THEM AND DO WHATEVER HE WAS
GOING TO DO WITH THEM.

      BUT BELIEVING THAT SOMETHING IS INTENDED FOR EXPORT
SIMPLY ISN'T THE SAME AS KNOWING THAT SOMETHING IS INTENDED

FOR EXPORT.  AND I THINK I EVEN CITED AN EXAMPLE.

CONGRESS KNOWS THIS DISTINCTION.  I THINK IN THE MONEY LAUNDERING STATUTE THEY ACTUALLY ACCOUNTED FOR A SITUATION WHERE SOMEONE BELIEVES OR THINKS THAT SOMETHING -- MONEY CAME FROM -- I CAN'T REMEMBER EXACTLY WHAT THE EXAMPLE IS.  BUT CONGRESS KNOWS HOW TO TAKE THE SCENARIO THE GOVERNMENT HAS EXPLAINED AND CREATE A STATUTE THAT ENCOMPASSES IT.  BUT THIS IS KNOWING THAT IT IS INTENDED FOR EXPORTATION, AND I JUST DON'T SEE HOW THE GOVERNMENT GETS AROUND THAT IN THIS CASE.  AT LEAST THE WAY THEY CHARGED IT.

**THE COURT:**  ANY OTHER ARGUMENTS?

**MR. JOHNSTON:**  AND FINALLY, WITH RESPECT TO THE MONEY LAUNDERING.  THE GOVERNMENT HAS CHARGED ALL OF THESE VARIOUS REGULATIONS, BUT IN ADDITION THEY HAVE CHARGED, I BELIEVE, THREE MORE COUNTS OF MONEY LAUNDERING, SPECIFICALLY REGARDING THE PAYMENT THAT WAS BEING SENT FOR THE ITEMS THAT WERE BEING SHIPPED OUT.  AND WHAT THE GOVERNMENT MUST PROVE IS THAT INTERNATIONAL PAYMENTS THAT COME INTO THE UNITED STATES PROMOTE THE UNLAWFUL ACTIVITY.

IN THIS CASE, ALL THEY WERE WAS PART OF THE UNLAWFUL ACTIVITY.  TO THE EXTENT THAT THE SPECIFIED UNLAWFUL ACTIVITY WAS EXPORTING THESE ITEMS, THIS WAS MONEY PAID SO THAT THAT COULD HAPPEN.  IT IS PART AND PARCEL OF THE OTHER OFFENSES THEY CHARGED IN THE OTHER SIX COUNTS.

THE GOVERNMENT CITES TO AN INTERESTING CASE -- I

THINK IT IS REALLY MY CASE, KRASINSKI -- K-R-A-S-I-N-S-K-I -- FROM THE SEVENTH CIRCUIT, AND SUGGESTS THAT WHERE SOMEONE BASICALLY BRINGS IN MONEY TO BUY ILLEGAL ITEMS, THAT THAT IS ENOUGH TO SATISFY THE MONEY LAUNDERING STATUTES PROMOTION REQUIREMENT.

IT IS THE RED HIGHLIGHTED SENTENCE THAT WAS OMITTED IN THE GOVERNMENT'S BRIEF THAT I THINK IS WHAT THE SEVENTH CIRCUIT MEANT WHEN IT SAID IT IS ENOUGH TO SATISFY PROMOTING.

AT OTHER TIMES THE DEFENDANT IN THAT CASE RECEIVED MONEY, BROUGHT IT BACK WITH HIM TO PAY FOR THE PILLS THAT HE WOULD EVENTUALLY PASS ON TO MAKE MORE MONEY.  THE MONEY WAS BEING USED TO PROMOTE THE ILLEGAL ACTIVITY, IN THAT CASE THE DISTRIBUTION OR IMPORTATION OF DRUGS.

WE DON'T HAVE THAT HERE.  THERE IS NO PROOF -- OR THERE IS NOTHING IN THE INDICTMENT THAT SUGGESTS THAT THE MONEY THAT WAS COMING TO PAY FOR THESE ITEMS WAS SOMEHOW FURTHERING OTHER ITEMS PURCHASED OR ANYTHING OF THE SORT.

WHAT WE HAVE IS BASICALLY DOUBLE DIPPING ON ALREADY SEVERE AND SIGNIFICANT CRIMINAL CHARGES IN THE FIRST SIX COUNTS, AND SAYING THAT THE MONEY THAT THEY WERE GOING TO PAY FOR THESE ITEMS IS NEW, YOU KNOW, NEW LIABILITY, NEW CRIMINAL LIABILITY.

SO EVEN THE CASE THE GOVERNMENT CITES, I THINK, SUPPORTS MY VIEW.  IN FACT, THE SEVENTH CIRCUIT BEFORE KRASINSKI ESSENTIALLY SAID THAT PROMOTING IS -- AND THIS IS

FEBUS -- F-E-B-U-S -- A TRANSACTION SATISFIES THE PROMOTION
PROVISION IF IT CONSTITUTES, QUOTE, THE PRACTICE OF PLOWING
BACK PROCEEDS OF THE ILLEGAL ACTIVITY TO PROMOTE THAT
ACTIVITY.

VERY MUCH WHAT WAS OMITTED FROM THE KRASINSKI QUOTE
BY THE GOVERNMENT.  THERE HAS TO BE A SOMETHING MORE; THERE IS
NOT A SOMETHING MORE HERE.  THIS IS PAYMENT FOR ITEMS THAT ARE
PART OF THE CHARGED OFFENSES.

I MEAN, EVEN THE FIFTH CIRCUIT IS IN AGREEMENT THAT
THERE HAS TO BE SOMETHING MORE.  WE ARE NOT TALKING ABOUT, YOU
KNOW, LIBERAL DISTRICTS OR LIBERAL CIRCUITS, WE ARE TALKING
ABOUT A NEED FOR IT TO BE SOMETHING MORE THAN THE SIMPLE
PAYMENT FOR THESE ACTIVITIES.

SO I THINK THE MONEY LAUNDERING COUNTS DON'T SATISFY
THE PROMOTION, CAN'T SATISFY THE PROMOTION REQUIREMENT OR
ELEMENT, AND THEREFORE SHOULD BE DISMISSED.

**MR. HARRIGAN:**  YOUR HONOR, I AM LOOKING AT THE QUOTE
AND I THINK HE MISREADS THE QUOTE.  IT SAYS BOTH OF THESE
THINGS HAPPEN AND THAT SATISFIES.  NOWHERE DOES IT SAY THAT
THERE HAS TO BE MONEY GENERATED FROM ILLEGAL ACTIVITY AND THEN
THAT USED TO PURCHASE.

AND I THINK KRASINSKI STANDS FOR EXACTLY WHAT I
CITED AS WELL AS THE SECOND CIRCUIT CASE OF PIERVINANZI -- NOT
GOOD AT ITALIAN.  BUT IT SPECIFICALLY SAYS SUBSECTION
(A)(2)(A) CONTAINS NO REQUIREMENT THAT PROCEEDS FIRST BE

GENERATED BY UNLAWFUL ACTIVITY FOLLOWED BY A FINANCIAL
TRANSACTION WITH THOSE PROCEEDS FOR CRIMINAL LIABILITY TO
ATTACH.

THAT IS WHAT HE IS ARGUING HAS TO HAPPEN; THAT'S
SIMPLY NOT THE LAW.

I FOLLOW IT BY THAT, YOU KNOW, THIS MERGER DOC, IF
THAT IS A CONCERN, IT REALLY ONLY ARISES AT SENTENCING.  AND
THAT CAN BE ADDRESSED AT SENTENCING, I THINK, IF THERE IS SOME
SENSE THAT THERE IS A MERGER PROBLEM.

BUT I DON'T THINK THERE IS A MERGER PROBLEM HERE, I
THINK THE LAW SUPPORTS IT.  I THINK WE DON'T HAVE TO SHOW
SEPARATE TRANSACTION, PARCEL AND PART FROM THE ACTIONS THEY
TOOK IN THIS CASE UNDER THE LAW, UNDER THE FIFTH CIRCUIT,
SEVENTH CIRCUIT OR SECOND CIRCUIT.

**THE COURT:**  SO THE LAST ARGUMENT YOU MADE IS EVEN IF
THERE IS A PROBLEM, IT WOULD FALL OUT AT THE TIME OF
SENTENCING BECAUSE THERE WOULDN'T BE ADDITIONAL PUNISHMENT.

**MR. HARRIGAN:**  RIGHT.

**MR. JOHNSTON:**  I WOULD BE SHOCKED IF THE GOVERNMENT
WASN'T SEEKING ADDITIONAL PUNISHMENT FOR A CONVICTION ON THESE
CHARGES AT THE TIME OF SENTENCING.

**MR. HARRIGAN:**  WELL, IT IS NOT GOING TO INCREASE THE
MAXIMUM.  IT IS GOING TO BE A PLUS TWO, BASICALLY, WHICH WOULD
BE WITHIN -- YOU KNOW, I THINK THAT IS WHAT THEY ARE LOOKING
AT.  THEY ARE CONCERNED ABOUT THE EXTENT IF YOUR HONOR -- FOR

EXAMPLE, IF HE IS CONVICTED AND IT GOES BEYOND MAYBE A 20-YEAR

ON ONE COUNT, IF HE IS CONVICTED OF TWO COUNTS AND THE OTHER

COUNT IS THE MONEY LAUNDERING, THEN THERE MIGHT BE A PROBLEM

IF THERE IS ADDED PUNISHMENT BECAUSE OF THAT.

       BUT THE GUIDELINES ARE THE GUIDELINES WHETHER -- YOU

KNOW, WHETHER, YOU KNOW, THE GUIDELINE DETERMINATION WOULD

AFFECT -- IT WOULDN'T AFFECT THE MAXIMUM TERM OF PRISON

BECAUSE THEY WOULD PROBABLY MERGE INTO EACH OTHER THE WAY THEY

WORK UNDER THE GUIDELINES.

       YOU ARE NOT GOING TO HAVE, I DON'T BELIEVE, IN THIS

CASE -- AND I WILL TELL YOU THE GUIDELINES WITHOUT ANY

ENHANCEMENTS ARE A LEVEL 26, WHICH IS APPROXIMATELY FIVE

YEARS.  IF HE IS CONVICTED ON ONE COUNT OF THE IRANIAN

TRANSACTION, I THINK THAT IS A 20-YEAR COUNT, FALLS BELOW

THAT.  SO I DON'T SEE THERE BEING A MERGER PROBLEM.

      **THE COURT:**  THE MAIN ARGUMENT YOU ADVANCE IS THAT

THE CASE LAW REJECTS THE ARGUMENT THAT THE TRANSACTIONS MUST

BE DISTINCT FROM SPECIFIED UNLAWFUL ACTIVITIES.

      **MR. HARRIGAN:**  YES.

      **MR. JOHNSTON:**  CAN I JUST SPEAK TO THE ONE OTHER

CASE HE CITED?

      **THE COURT:**  YES.

      **MR. JOHNSTON:**  WE ALL HAVE KRASINSKI IN FRONT OF US,

SO I DON'T HAVE TO SAY ANYTHING MORE ABOUT THAT.

      BUT THE SECOND CIRCUIT CASE THAT THE GOVERNMENT HAS

CITED IS A CASE THAT INVOLVED A FORMER BANK FRAUD HERE IN THE
UNITED STATES.  THE MONEY LAUNDERING COUNT WAS FOR THE
DEFENDANTS INVOLVED IN THE BANK FRAUD TAKING THOSE FUNDS AND
TAKING THEM OVERSEAS.  AND THE SECOND CIRCUIT UPHELD THE MONEY
LAUNDERING CONVICTIONS BECAUSE IT WAS ESTABLISHED AT TRIAL
THAT THAT MONEY WAS BEING TAKEN OVERSEAS TO FURTHER HIDE THE
BANK FRAUD THAT HAD OCCURRED HERE IN THE UNITED STATES.

         THAT IS NOT THE CASE THAT WE HAVE HERE.  EVERY
SINGLE CASE CITED BY THE GOVERNMENT HAS SOMETHING MORE THAN
THIS IS JUST MONEY PAID FOR ILLEGAL GOODS.  AND IT IS NOT JUST
ABOUT SENTENCING, IT IS ABOUT WHETHER YOU CAN CHARGE SOMEONE
WITH A FEDERAL FELONY OFFENSE WHEN, YOU KNOW, THESE ARE THE
FACTS THAT HAVE BEEN PLED IN THE INDICTMENT.

         I DON'T THINK THE GOVERNMENT IS GOING TO VARY FROM
THE INDICTMENT.  AND THERE IS GOING TO BE A RULE 29 ON THIS,
ULTIMATELY, AS WELL.  BUT THEY HAVE ALLEGED NOTHING MORE THAN
THAT THIS MONEY WAS USED TO PAY FOR THESE GOODS.  AND IT JUST
DOESN'T SATISFY ANY OF THE CASES THEY CITE, AND CERTAINLY
DOESN'T DISTINGUISH ANY OF THE CASES THAT WE HAVE CITED.

         **THE COURT:**  MR. HARRIGAN, HOW DO YOU RESPOND TO THAT
LAST ARGUMENT?

         **MR. HARRIGAN:**  I COULD PROVIDE FURTHER BRIEFING.  I
THINK, AGAIN, HE IS MISCONSTRUING THE LAW.  I THINK THE LAW
DOES NOT REQUIRE -- THE MERGER DOCTRINE ISN'T A PROBLEM HERE.
SO WE HAVE A GENERAL DISAGREEMENT.

I AM POINTING TO -- THIS ONE SECTION DOES NOT SAY WHAT HE SAYS IT SAYS, YOUR HONOR.  IT SAYS IN THIS CASE THE AMOUNT OF TRANSFERRED FUNDS CONTRIBUTED TO THE DRUG CONSPIRACY'S PROSPERITY AND FURTHERED IT ALONG.  ONE, ONE OF THE CO-CONSPIRATORS BROUGHT OR SENT MONEY IN CANADA AND IN RETURN HE SUPPLIED THEM ECTASY PILLS.  TWO, AT OTHER TIMES HE DID THIS.

THERE IS NO SUGGESTION THAT AT THE OTHER TIME IS THE ONLY REQUIREMENT.  SO I TAKE ISSUE WITH MR. JOHNSTON SAYING, LOOKING AT THE CASE IT SAYS SOMETHING COMPLETELY DIFFERENT. IT DOESN'T, YOUR HONOR.  IT DOESN'T FIND THAT THERE IS A MERGER PROBLEM.

AND WE CAN PROVIDE FURTHER BRIEFING IF THE COURT LIKES, BUT I SUGGEST THE CASE LAW DOES NOT SUPPORT HIS QUESTION.  AND I FALL BACK TO THE ISSUE OF THE SUPREME COURT CASE THAT ESSENTIALLY FOUND THE MERGER DOCTRINE IS REALLY, YOU KNOW, A QUESTION -- A CONCERN THAT ARISES ONLY AT SENTENCING. THE IDEA IS ARE WE PUNISHING SOMEONE TWICE FOR THE SAME CONDUCT, AND THAT WOULD AFFECT THE MAXIMUM TERM OF IMPRISONMENT.

SO, FOR EXAMPLE, LET'S ASSUME THAT HE IS CONVICTED BOTH OF THE 20-YEAR COUNT FOR THE IRANIAN TRANSACTION AND THE MONEY LAUNDERING.  AND HE FACES NOW FOUR YEARS RATHER THAN JUST 20 YEARS.  IF THE GUIDELINES, EVEN WITH THE MONEY LAUNDERING ENHANCEMENTS, ARE NOT ABOVE THE 20 YEARS, I DON'T

THINK YOU HAVE A MERGER PROBLEM.

**THE COURT:**  DOESN'T MR. JOHNSTON'S ARGUMENT, THOUGH, MAKE COMMON SENSE THAT THERE HAS TO BE SOMETHING ELSE, OTHER THAN JUST --

**MR. HARRIGAN:**  NOT WHEN YOU ARE TALKING ABOUT THE TRANSFER OF MONEY THROUGH, ACROSS INTERNATIONAL LINES TO PROMOTING.  THERE IS AN EXTRA HARM FROM THAT.  I WOULD SUGGEST THAT THAT IS DIFFERENT THAN THE TYPICAL CASE WHERE YOU ARE TALKING ABOUT THE MOTION AND THE MERGER PROBLEM.  I DON'T THINK IT EXISTS HERE IN THIS CASE.

BECAUSE THE MONEY LAUNDERING INVOLVES THE ADDITIONAL ACT OF TAKING IT FROM A PLACE OUTSIDE OF THE UNITED STATES INTO THE UNITED STATES RATHER THAN JUST HAVING A FINANCIAL TRANSACTION THAT PROMOTES SOMETHING.  SO THEREIN LIES, I ARGUE, THE DIFFERENCE BECAUSE CONGRESS HAS SPECIFICALLY RECOGNIZED A SEPARATE HARM FROM THAT TO THE FINANCIAL SYSTEM BY HAVING MONEY GOING IN AND OUT OF THE COUNTRY THAT IT EITHER IS DESTINED TO PROMOTE OR TO HIDE FUNDS FROM ILLEGAL PROCEEDS. THAT IS THE DIFFERENCE.

**THE COURT:**  WHERE IS THE LAUNDERING, THOUGH?

**MR. HARRIGAN:**  THE LAUNDERING IS IN THE -- YOU ARE RIGHT, IS IN THE WIRING OF THE MONEY.  THAT IS CORRECT.  THAT IS WHERE THE LAUNDERING OCCURS.  THAT IS THE FINANCIAL TRANSACTION.  HERE THE MONEY WAS LAUNDERED -- WAS SENT FROM A BANK IN DUBAI TO THE UNITED STATES.  SO IT IS A FINANCIAL

TRANSACTION, BUT THE SPECIFIC FINANCIAL TRANSACTIONS THAT HAVE
TO OCCUR -- THE LAUNDERING IS THE TRANSPORT AS OPPOSED TO
DEPOSITING THE PROCEEDS IN A BANK.  THAT IS WHAT IS REQUIRED
UNDER -- AS WE HAVE CHARGED IT.  IT REQUIRES TAKING PROCEEDS
FROM A PLACE OUTSIDE OF THE UNITED STATES INTO THE UNITED
STATES, OR INTO THE UNITED STATES, OUTSIDE OF THE UNITED
STATES TO EITHER PROMOTE -- PROMOTE UNLAWFUL ACTIVITY; WHICH
IS MUCH DIFFERENT THAN THE TYPICAL MERGER PROBLEM THAT I THINK
YOU SEE WHICH IS JUST REALLY PROMOTING, JUST DEPOSITING CHECKS
THAT ARE PROCEEDS FROM AN ILLEGALLY ACTIVITY.

          HERE THEY ARE RECOGNIZED AS SEPARATE HARM.  THE HARM
IS MONEY GOING TO THE UNITED STATES, GOING TO AND FROM THE
COUNTRY AFFECTING OUR FINANCIAL STABILITY.  THAT IS WHY I
ARGUE THAT IS DIFFERENT FROM THE TYPICAL MERGER DOCTRINE
CASES.

          **MR. JOHNSTON:**  IT SEEMS LIKE IN A CASE WHERE MONEY
IS COMING INTO THE UNITED STATES, IF ANYTHING IT HAS IMPROVED
THE FINANCIAL STABILITY OF THE FEDERAL GOVERNMENT WHO SEIZES
THAT MONEY.  BUT IN ALL SERIOUSNESS, THIS IS AN ISSUE THE
SUPREME COURT HAS CONSIDERED IN A SLIGHTLY DIFFERENT CONTEXT,
IN SANTOS, WHEN THEY WERE CONSIDERING WHETHER PROCEEDS AND
WHETHER PROCEEDS FROM A TRANSACTION ARE SUFFICIENT.  AND THE
COURT SAID, QUOTE, WHY CONGRESS WOULD HAVE WANTED A
TRANSACTION THAT IS A NORMAL PART OF A CRIME IT HAD DULY
CONSIDERED AND APPROPRIATELY PUNISHED ELSEWHERE IN THE

CRIMINAL CODE TO RADICALLY INCREASE THE SENTENCE FOR THAT
CRIME; THE SUPREME COURT SAID THEY DON'T KNOW WHAT ANSWER
THERE WOULD BE.

AND I DON'T THINK MR. HARRIGAN HAS ARTICULATED
EXACTLY WHAT IT IS ABOUT MONEY COMING FROM ONE COUNTRY TO THIS
COUNTRY, IT HAPPENS EVERY DAY.  WHAT IS ILLEGAL WOULD BE THE
EXPORTING OF THESE ITEMS FROM THE UNITED STATES, BUT WHAT IS
IT ABOUT MONEY COMING FROM ANOTHER COUNTRY TO THE UNITED
STATES THAT MAKES THAT EVEN MORE ILLEGAL.  I AM AT A LOSS.  I
DON'T KNOW WHAT THAT WOULD BE.  BUT I AM CERTAIN THAT PROMOTE
HAS TO MEAN SOMETHING OTHER THAN TRANSACTION.  AND IT DOES.
IN EVERY CASE THAT WE CITED AND EVERY CIRCUIT THAT WE HAVE
LOOKED AT THERE HAS BEEN SOMETHING EXTRA.

**THE COURT:**  ON THESE VARIOUS MOTIONS, I WOULD STAND
ON THE TENTATIVE AND DENY THE MOTIONS TO DISMISS THE VARIOUS
COUNTS FOR THE REASONS SET FORTH IN THE GOVERNMENT'S BRIEFING.

THE ONE QUALIFICATION I WOULD MAKE IS AS TO THE
MONEY LAUNDERING COUNTS, 7, 8 AND 9.  I WOULD LIKE ADDITIONAL
BRIEFING ON THAT ISSUE.  AND WE CAN ADDRESS THAT IN A MOMENT.

SO I WOULD DENY ALL OF THE MOTIONS, EXCEPT AS TO
COUNTS 7, 8 AND 9.  I WILL DEFER PENDING FURTHER BRIEFING.

LET'S PROCEED WITH THE ARRAIGNMENT ON THE
SUPERSEDING INDICTMENT, AND THEN WE WILL SET FUTURE DATES.

ARE WE READY TO PROCEED WITH THE ARRAIGNMENT ON THE
SUPERSEDING?

**MR. JOHNSTON:**  YES, YOUR HONOR.

**THE COURT:**  MADAM CLERK.

**THE CLERK:**  IS ERGUN YILDIZ YOUR TRUE NAME?

**DEFENDANT YILDIZ:**  YEAH.

**THE CLERK:**  AND IS ARASH GHAHREMAN YOUR TRUE NAME?

**DEFENDANT GHAHREMAN:**  (THROUGH INTERPRETER)  YES.

**THE CLERK:**  YOU ARE EACH INFORMED THAT A SUPERSEDING INDICTMENT HAS BEEN FILED CHARGING YOU WITH CONSPIRACY TO EXPORT TO EMBARGOED COUNTRY, CONSPIRACY TO SMUGGLE GOODS FROM THE UNITED STATES, ATTEMPTED EXPORT TO EMBARGOED COUNTRY, SMUGGLING OF GOODS FROM THE UNITED STATES, CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS, LAUNDERING OF MONETARY INSTRUMENTS, AIDING AND ABETTING, AND CRIMINAL FORFEITURE.

HAVE YOU EACH RECEIVED A COPY OF THE SUPERSEDING INDICTMENT AND DO YOU WAIVE FURTHER READING?

**DEFENDANT YILDIZ:**  YES, MA'AM.

**DEFENDANT GHAHREMAN:**  YES.

**THE CLERK:**  YOU ARE FURTHER ADVISED THAT YOU ARE ENTITLED TO A TRIAL BY JURY, TO BE REPRESENTED BY COUNSEL AT ALL STAGES OF THE PROCEEDINGS BEFORE THIS COURT, AND TO HAVE WITNESSES SUMMONED TO TESTIFY IN YOUR BEHALF.  HOW DO YOU NOW PLEAD TO THIS SUPERSEDING INDICTMENT, COUNTS 1 THROUGH 9: GUILTY OR NOT GUILTY?

**MR. WARWICK:**  I ASK THAT A NOT GUILTY PLEA BE ENTERED.

**MR. JOHNSTON:**  NOT GUILTY ON BEHALF OF MR. GHAHREMAN.

**THE COURT:**  WE WILL ENTER NOT GUILTY PLEAS, DENIAL OF ANY AND ALL ALLEGATIONS.  REAPPOINT COUNSEL AND BOND ON THE MATTER AS WELL.

WITH RESPECT TO FUTURE SETTING, WHAT DO COUNSEL REQUEST?  ARE WE IN A POSITION TO SET ALL DATES, INCLUDING A TRIAL DATE?

**MR. JOHNSTON:**  HONESTLY, YOUR HONOR, I HAVEN'T TAKEN AN OPPORTUNITY TO SPEAK WITH MR. HARRIGAN ABOUT TRIAL DATES. I COULD SET –– WE COULD SET ANOTHER HEARING DATE FOR THESE MOTIONS.  WE COULD –– I AM REALLY AT THE COURT'S PLEASURE ON THIS ONE.  I WOULD BE HAPPY TO TALK TO MR. HARRIGAN FOR A MOMENT BUT WE HAVEN'T DISCUSSED ––

**MR. HARRIGAN:**  LET ME SUGGEST, YOUR HONOR, THAT WE SET ANOTHER HEARING FOR FINAL RULING ON THAT MOTION, AT THE TIME HAVE A STATUS.  AND I WOULD HAVE A CHANCE TO TALK TO MR. JOHNSTON AND MR. WARWICK ABOUT TRIAL DATES THAT WOULD BE ACCEPTABLE TO ALL.

**THE COURT:**  DO YOU HAVE A GUESSTIMATE AS TO GOVERNMENT'S CASE IN CHIEF FOR TRIAL?

**MR. HARRIGAN:**  I TALKED TO THE AGENT.  I THINK FOUR DAYS OF TESTIMONY WOULD BE –– IT IS NOT GOING TO BE A LOT OF WITNESSES, REALLY WE ARE TALKING ABOUT EMAILS AND AUDIO RECORDINGS.  I HAVEN'T SAT DOWN YET AND WEEDED OUT HOW MANY OF

THOSE WE ARE GOING TO PLAY, WE WILL TRY TO PLAY.  I THINK FOUR
DAYS, ABOUT A WEEK FOR THE GOVERNMENT'S CASE IN CHIEF.  WE
MIGHT BE DONE SOONER THAN THAT.

       **THE COURT:**  WITH RESPECT TO DISCOVERY, IS THERE ANY
OUTSTANDING DISCOVERY?

       **MR. HARRIGAN:**  THERE MAY BE SOME OUTSTANDING FOR --
OBVIOUSLY, I THINK THERE IS MORE WE ARE GOING TO HAVE TO GIVE
DEFENSE COUNSEL FROM OFAC.  WE MAY HAVE WITNESSES REGARDING
THE ARTICLES THAT MAY -- THAT WERE ATTEMPTED TO BE EXPORTED
WHICH MAY RESULT IN SOME ADDITIONAL DISCOVERY.  NOT A
TREMENDOUS AMOUNT, BUT I WOULD RECOMMEND THAT WE LEAVE THE
DISCOVERY MOTIONS PENDING SO I CAN MEET WITH COUNSEL AND MAKE
SURE THEY HAVE EVERYTHING THEN AND MAKE SURE THAT WE GIVE TO
MR. JOHNSTON AND MR. WARWICK AT LEAST THE DEPARTMENT OF STATE
REQUESTS, MAKE SURE THEY HAVE THOSE.

       **THE COURT:**  HOW MUCH DISCOVERY HAS BEEN PRODUCED?
IS IT VOLUMINOUS?

       **MR. HARRIGAN:**  IT HAS BEEN VOLUMINOUS BECAUSE THERE
ARE NUMEROUS SEARCH WARRANTS WHICH RESULTED IN CD'S AND THERE
WERE EMAIL ACCOUNTS AND OF COMPUTERS.  SO THERE HAVE BEEN
QUITE A FEW DISKS.  I THINK THERE IS ABOUT OVER 60 ROI'S.
THERE ARE SOME TRANSCRIPTS THAT WE PRODUCED TO DATE.  THERE
HAVE BEEN, I THINK, AT LEAST 80 PHONE CALLS.  VARIOUS TEXT
MESSAGES.  SO IT HAS BEEN QUITE VOLUMINOUS, THE DISCOVERY.

       **THE COURT:**  80 PHONE CALLS?

**MR. HARRIGAN:**  YEAH, 80 RECORDED PHONE CALLS, I BELIEVE.  80 TO 100.

**THE COURT:**  I THINK WHAT I WOULD LIKE TO DO IS TO GO AHEAD AND SET ALL DATES, INCLUDING A TRIAL DATE, SINCE WE HAVE MR. GHAHREMAN PRESENT FROM THE EAST COAST.  IT SEEMS TO ME WE OUGHT TO BE ABLE TO DO THAT.  WE CAN SET A FOLLOW-UP MOTION DATE AS WELL.

SO AS FAR AS A TRIAL SETTING, WHAT WOULD COUNSEL PROPOSE?

**MR. HARRIGAN:**  I PLAN TO BE OUT OF THE COUNTRY A LARGE PART OF APRIL.  AND DO HAVE TO TRAVEL ON BUSINESS IN MAY ON ANOTHER CASE.

I WAS HOPING THAT WE COULD SET IT SOME TIME DURING THE SUMMER, DEPENDING ON THE COURT'S SCHEDULE AND DEFENSE COUNSEL'S SCHEDULE.  THAT WOULD BE MY SUGGESTION, YOUR HONOR. AUGUST OR JULY.

**MR. JOHNSTON:**  I DON'T KNOW WHAT THE COURT'S SCHEDULE LOOKS LIKE, YOUR HONOR.  I HAVE -- I WILL BE OUT OF THE DISTRICT FOR A SIGNIFICANT PART OF AUGUST.  IF WE ARE TALKING ABOUT A LATE JULY DATE -- IF THE GOVERNMENT'S ESTIMATE OF FOUR DAYS IS CORRECT FOR THEIR CASE IN CHIEF, MAYBE A LATE JULY DATE WOULD WORK.  OTHERWISE, I THINK I WOULD BE REQUESTING SOMETHING IN SEPTEMBER.

**THE COURT:**  WHAT ABOUT JULY 21ST OR JULY 28.

THOSE ARE GOOD DATES, ARE THEY NOT, JAMIE?

**THE CLERK:**  YES.

**MR. HARRIGAN:**  EITHER DATE WILL WORK FOR THE GOVERNMENT, YOUR HONOR.

**THE COURT:**  MR. WARWICK.

**MR. WARWICK:**  ONE MOMENT, PLEASE, IF I COULD, YOUR HONOR.

JULY 21ST WORKS WITH ME, YOUR HONOR.

**THE COURT:**  MR. JOHNSTON, IS THAT A GOOD DATE FOR YOU?

**MR. JOHNSTON:**  YOUR HONOR, PERHAPS THE WEEK OF THE 28TH WOULD BE BETTER FOR ME.

**MR. WARWICK:**  THAT IS GOOD FOR ME, YOUR HONOR.

**MR. HARRIGAN:**  THAT WORKS FOR THE GOVERNMENT, YOUR HONOR.

**THE COURT:**  OKAY.

**MR. JOHNSTON:**  THAT IS WITH THE CAVEAT THAT, AS I DO MY INVESTIGATION IN THIS CASE, IT DOES INVOLVE SOME OVERSEAS ASPECTS.  I HAVEN'T AT THIS POINT DETERMINED HOW FAR REACHING THAT INVESTIGATION MAY NEED TO BE, BUT I DO WANT TO ALERT THE COURT THAT I COULD BE COMING BACK BEFORE THE COURT REQUESTING MORE TIME TO DO WHAT IS ESSENTIAL INVESTIGATION.

TODAY I CAN SAY THAT JULY 28 SEEMS LIKE A DATE I COULD BE PREPARED FOR BASED ON WHERE WE ARE AT WITH DISCOVERY, BUT THE INVESTIGATION COULD CERTAINLY LEAD ME TO COME BACK TO THE COURT AT A LATER POINT AND REQUEST A LATER TRIAL DATE.

**THE COURT:** LET'S, THEN, SET JULY 28 AT 9:00 FOR TRIAL.

MOTIONS IN LIMINE I WOULD PROPOSE JULY 18 AT 11:00 O'CLOCK. AND WE CAN SET ANY SUBSTANTIVE MOTIONS, INCLUDING COUNTS 7, 8, 9, THE FOLLOW-UP THERE.

IS JUNE 20 CONVENIENT FOR ALL, AT 1:30?

**MR. WARWICK:** YOUR HONOR, I HAVE A -- GOING TO BE BACK IN NEW JERSEY ON THE 18TH OF JUNE THROUGH THE FOLLOWING WEEK. I APOLOGIZE.

**MR. HARRIGAN:** I AM SORRY YOU HAVE TO GO TO JERSEY IN JUNE.

**THE COURT:** I AM TOO.

(LAUGHTER)

**MR. WARWICK:** I APPRECIATE YOUR EMPATHY.

**THE COURT:** HOW ABOUT JUNE 27?

**MR. WARWICK:** YOUR HONOR, I AM RETURNING ON THE 28TH.

**THE COURT:** OKAY. IF WE MOVED IT UP TO JUNE 13?

**MR. WARWICK:** JUNE WHEN?

**THE COURT:** JUNE 13TH, OR JUNE 6TH.

**MR. WARWICK:** JUNE 13 WORKS FOR ME, YOUR HONOR.

**MR. JOHNSTON:** THAT WOULD BE THE BEST FOR ME, YOUR HONOR.

**THE COURT:** GOOD FOR THE GOVERNMENT?

**MR. HARRIGAN:** THAT WILL WORK FOR THE GOVERNMENT,

YOUR HONOR.

        **THE COURT:**  LET'S DO JUNE 13 AT 1:30 FOR ALL

SUBSTANTIVE MOTIONS, INCLUDING THE SUPPLEMENTAL BRIEFING ON

COUNTS 7, 8 AND 9.

        ARE THERE ANY OTHER MATTERS AT THIS TIME?

        **MR. HARRIGAN:**  YOUR HONOR, JUST AS TO THE

SUPPLEMENTAL BRIEFING.  THERE WERE TWO ARGUMENTS MADE, ONE WAS

THE DUPLICITY ARGUMENT, THAT SOMEHOW THEY ARE DUPLICITOUS.  I

TAKE IT THE COURT ONLY WANTS THE BRIEFING ON THE ISSUE OF THE

MERGER.

        **THE COURT:**  RIGHT.  YES.

        **MR. HARRIGAN:**  I COULD POINT OUT FOR THE COURT THAT

THIS VERY ISSUE WAS RAISED IN ANOTHER EXPORT VIOLATIONS CASE

WHICH FEDERAL DEFENDERS REPRESENTED THE DEFENDANT.  AND JUDGE

LORENZ -- SAME ARGUMENTS WERE MADE.  JUDGE LORENZ RULED -- THE

CASE IS 11CR5726-L, IT IS UNITED STATES VERSUS NAZEMZADEH, AND

RULED IN THE GOVERNMENT'S FAVOR ON THE MERGER ISSUE, RELYING

IN PART ON KRASINSKI AND THE PIERVINANZI CASE CITED BY THE

GOVERNMENT AS WELL AS UNITED STATES VERSUS SAVAGE, 67 F.3RD

1435.

        **THE COURT:**  WOULD YOU INCLUDE THAT IN YOUR

SUPPLEMENTAL BRIEFING?

        **MR. HARRIGAN:**  YES, I WILL.

        **THE COURT:**  ARE THERE ANY OTHER MATTERS?

        **MR. JOHNSTON:**  YOUR HONOR, WITH THE UNDERSTANDING OF

THE TRAVEL REQUIREMENTS FOR MR. GHAHREMAN, WHILE HE MAY BE ABLE TO APPEAR AT ALL OF THESE OTHER MOTION HEARINGS, THERE MAY BE A REQUEST THAT -- THERE MAY BE A REQUEST FOR HIS PRESENCE TO BE EXCUSED.  I AM NOT MAKING THAT REQUEST TODAY, BUT I AM JUST ALERTING THE COURT, PERHAPS FOR THE 6/13 HEARING AT LEAST.

**THE COURT:**  DO YOU WANT TO ADDRESS THAT NOW, OR WOULD YOU PREFER TO DO THAT PERHAPS BY --

**MR. JOHNSTON:**  WELL, LET ME SPEAK WITH MR. GHAHREMAN AFTER COURT TODAY.  AND I WOULD MAKE A MOTION TO EXCUSE HIS PRESENCE.  I BELIEVE THE RULES PERMIT IT WHERE EVIDENCE ISN'T BEING TAKEN AND PURELY LEGAL MATTERS ARE BEING ADDRESSED.

**THE COURT:**  ALL RIGHT.

**MR. HARRIGAN:**  NO OBJECTION BY THE GOVERNMENT, YOUR HONOR.

**THE COURT:**  MR. GHAHREMAN, WHAT WE HAVE DONE IS WE HAVE SET A COUPLE OF DATES HERE.  ONE IS JUNE 13 FOR ALL REMAINING SUBSTANTIVE MOTIONS.  NO EVIDENCE WOULD BE TAKEN. AND THE OTHER IS A MOTIONS IN LIMINE FOR JULY 11.  AND MR. JOHNSTON IS INDICATING THAT HE IS WILLING TO WAIVE YOUR PRESENCE.

YOU OBVIOUSLY HAVE A RIGHT TO BE PRESENT, BUT IN THE EVENT YOU ELECT NOT TO BE PRESENT, ARE YOU INDICATING AT THIS TIME THAT YOU WOULD WAIVE YOUR PRESENCE FOR THE JUNE 13 AND JULY 11 MOTIONS?

**DEFENDANT GHAHREMAN:**  YES, YOUR HONOR.  THANK YOU.

**MR. JOHNSTON:**  I HAVEN'T NECESSARILY MADE THAT REQUEST IN THE IN LIMINE HEARING, THAT MAY INVOLVE SOME MORE SUBSTANTIVE TRIAL ISSUES THAT I WOULD WANT MR. GHAHREMAN TO BE HERE WITH ME ON.

**THE COURT:**  YES.

**MR. JOHNSTON:**  I THINK THE MONEY LAUNDERING ADDITIONAL BRIEFING WE CAN HANDLE WITHOUT HIM.

**THE COURT:**  ALL RIGHT.  BUT IN THE EVENT YOU ELECT TO PROCEED ON JUNE 11 --

**MR. JOHNSTON:**  JUNE 13TH.

**THE COURT:**  WHAT ABOUT -- OR JULY 11, AS WELL.

**MR. JOHNSTON:**  JULY 18, THE IN LIMINE HEARING?

**THE COURT:**  YES.  MR. GHAHREMAN, OBVIOUSLY, IS FREE TO BE HERE.

**MR. JOHNSTON:**  YES, YES, YES.

**THE COURT:**  JUST SO WE ARE CLEAR, YOU ARE WAIVING YOUR PRESENCE.  OF COURSE YOU CAN BE HERE IF YOU WANT TO, BUT IF YOU ELECT NOT TO YOU ARE WAIVING YOUR PRESENCE FOR BOTH JUNE 13 AND JULY 11, CORRECT?

**MR. JOHNSTON:**  JULY 18, RIGHT?

**THE COURT:**  DID WE SET JULY 18?

**THE CLERK:**  I WROTE DOWN JULY 18.

**THE COURT:**  I WROTE JULY 11.  JULY 18.

**MR. JOHNSTON:**  NONE OF US WOULD BE HERE.

**THE COURT:**  SO MOTIONS IN LIMINE WE SET FOR JULY 18. SO IT WOULD BE JUNE 13 AND JULY 18 YOU WOULD WAIVE YOUR PRESENCE.  AM I CORRECT?

**DEFENDANT GHAHREMAN:**  THANK YOU, YES.

**THE COURT:**  ALL RIGHT.  OKAY.

WE HAVE ADDRESSED ALL MATTERS?

**MR. HARRIGAN:**  YES, YOUR HONOR.  THANK YOU.

**MR. WARWICK:**  WE HAVE.

**THE COURT:**  THANK YOU.

\* \* \*

I CERTIFY THAT THE FOREGOING IS A CORRECT
TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
IN THE ABOVE-ENTITLED MATTER.

S/LEEANN PENCE                            6/30/2014

LEEANN PENCE, OFFICIAL COURT REPORTER    DATE