UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
UNITED STATES OF AMERICA,               )
            PLAINTIFF,                  )  CASE NO. 13CR4228-DMS
                                        )
                                        )  SAN DIEGO, CALIFORNIA
                                        )  FRIDAY, APRIL 17, 2015
                                        )   1:30 P.M. CALENDAR
ARASH GHAHREMAN,                        )
            DEFENDANT.                  )
_____)       VOLUME V


REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL/JURY INSTRUCTION CONFERENCE


REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

```
COUNSEL APPEARING:

FOR PLAINTIFF:          LAURA E. DUFFY,
                        UNITED STATES ATTORNEY
                        BY:   SHANE P. HARRIGAN
                              TIMOTHY D. COUGHLIN
                        ASSISTANT U.S. ATTORNEYS
                        880 FRONT STREET
                        SAN DIEGO, CALIFORNIA 92101

FOR DEFENDANT           FEDERAL DEFENDERS OF SAN DIEGO, INC.
GHAHREMAN:                    BY:   ELLIS M. JOHNSTON
                                    JOSEPH S. CAMDEN
                        TRIAL ATTORNEYS
                        225 BROADWAY, SUITE 900
                        SAN DIEGO, CALIFORNIA 92101
```

```
 1   SAN DIEGO, CALIFORNIA - FRIDAY, APRIL 17, 2015 - 1:30 P.M.

 2                            *   *   *

 3              THE WITNESS:  NO. 11 ON CALENDAR, 13CR4228, UNITED

 4   STATES OF AMERICA VERSUS ARASH GHAHREMAN; ON FOR A JURY

 5   INSTRUCTION CONFERENCE.

 6              THE COURT:  GOOD AFTERNOON.

 7              WE HAVE MR. HARRIGAN, MR. JOHNSTON, MR. CAMDEN ONLY

 8   TO START THE JURY INSTRUCTION CONFERENCE.

 9              PERHAPS I CAN INQUIRE FIRST OF MR. CAMDEN.

10              DO YOU AGREE WITH THE GOVERNMENT'S INSTRUCTIONS?

11              MR. CAMDEN:  NO.  THERE ARE SOME POINTS OF

12   CONTENTION, I THINK.

13              I HAVEN'T HAD A CHANCE TO TALK TOO MUCH ABOUT THE

14   PRELIMINARY AND THE GENERAL INSTRUCTIONS.  I KNOW MR. JOHNSTON

15   WOULD LIKE TO ADDRESS MAYBE AN INSTRUCTION ON CIRCUMSTANTIAL

16   EVIDENCE AND THE CREDIBILITY OF WITNESSES.

17              THE COURT:  THOSE CAN SIMPLY BE SUBMITTED, WRITTEN

18   PROPOSED INSTRUCTIONS.

19              MR. CAMDEN:  YES.

20              THE COURT:  TODAY WHY DON'T WE FOCUS ON COUNTS 1

21   THROUGH 9.

22              MR. CAMDEN:  THE ACTUAL ELEMENTS.

23              THE COURT:  RIGHT.

24              MR. CAMDEN:  AND HOW IT IS GOING TO BE ORGANIZED.

25              I MEAN, THE GOVERNMENT'S INSTRUCTIONS KIND OF --
```

APRIL 17, 2015

```
 1   THEY GROUP COUNTS TOGETHER.  AND BASICALLY I KIND OF JUST DID
 2   MY OWN VERSION FROM THE START.  SO I AM ORGANIZING THEM
 3   ACCORDING TO THE CHART THAT I SUBMITTED, AND I GAVE THE
 4   GOVERNMENT A COPY OF THAT AS WELL.
 5           SO THE FIRST SUBSTANTIVE AREA OF LAW IS IEEPA, WHICH
 6   IS 50 USC 1705(C).  REALLY THE DIFFICULTY, JUST AS AN OVERVIEW
 7   ON THIS, YOUR HONOR, IS IT CHARGES A CONSPIRACY TO VIOLATE A
 8   CRIMINAL STATUTE THAT PUNISHES THE WILLFUL VIOLATION OF, AT
 9   ITS MOST COMPLEX, A REGULATION THAT PROHIBITS A TRANSACTION
10   THAT IS INTENDED TO EVADE OR AVOID ANOTHER REGULATION.  SO WE
11   HAVE GOT FOUR LEVELS OF NESTED LAW TO GIVE THE JURY.
12           SO I ACTUALLY -- MAYBE SEE IF I HAVE THESE.  THEY
13   ARE IN REVERSE ORDER.  I PRINTED OUT EVERYTHING IN A RUSH.
14           BUT IF I COULD HAND A COUPLE OF THINGS UP.
15   THE COURT:  YES.
16   MR. CAMDEN:  THIS WOULD BE -- JUST TO KEEP
17   EVERYTHING SEPARATED AND ORGANIZED.  SO THIS WOULD BE THE
18   FIRST BOX OF THE CHART.
19           MR. GHAHREMAN IS NOT CHARGED WITH SUBSTANTIVE ACTUAL
20   VIOLATIONS OF THE REGULATIONS OR THE IEEPA, IT IS A COUNT OF
21   CONSPIRACY AND TWO COUNTS OF ATTEMPT.  SO THIS WOULD BE THE
22   FIRST THING JUST TO SAY TO THE JURY, YOU HAVE TO UNDERSTAND
23   THAT THERE ARE TWO UNDERLYING CRIMES THAT REALLY UNDERLIE ALL
24   THE REST OF THE OFFENSES.  ALTHOUGH HE IS NOT CHARGED DIRECTLY
25   WITH COMMITTING THESE, ALL OF THE CHARGES INVOLVE THESE
```

APRIL 17, 2015

1    VIOLATIONS.  SO THESE TWO STATUTES -- OR THESE TWO LAWS,

2    IEEPA, WHICH IS THE EMERGENCY ECONOMIC POWERS ACT, AND THEN

3    ITSR IS THE ACTUAL REGULATIONS 560.203 AND .204.  AND THEY ARE

4    INVOLVED IN EVERY SINGLE COUNT.  THE SMUGGLING OF GOODS

5    REQUIRES THE INTENTION TO PROMOTE THE -- OR FACILITATE -- OR

6    PROMOTE THE CARRYING ON OF THESE VIOLATIONS.  ON THE

7    TRANSPORTING FUNDS COUNT IS ALSO INTENT OF PROMOTING THESE

8    VIOLATIONS.

9         SO THESE WOULD BE THE TWO INSTRUCTIONS GIVEN UP

10   FRONT ABOUT HERE IS WHAT THE VIOLATIONS -- THE REGULATIONS

11   ARE.

12        THEN THE FURTHER INSTRUCTIONS ABOUT CONSPIRACY,

13   THERE IS TWO WAYS TO DO IT.  ONE IS TO JUST SAY -- WELL, I

14   ONLY MANAGED TO PRINT OUT THE SHORT VERSION FOR COUNT 1.

15        I HATE TO DO THIS PIECEMEAL.  I WAS PRINTING STUFF

16   OUT AT THE LAST MINUTE, JUST BEFORE I CAME.

17        **THE COURT:**  SO YOU ARE PROPOSING THE COURT FIRST

18   READ THE IEEPA, AND THEN THE ITSR INSTRUCTION, AND THEN GO TO

19   COUNT 1, CONSPIRACY?

20        **MR. CAMDEN:**  YES, YOUR HONOR.

21        SO THIS IS A SHORT VERSION THAT JUST SAYS THERE WAS

22   AN AGREEMENT BETWEEN TWO OR MORE OTHER PEOPLE TO -- ACTUALLY

23   THAT SHOULD BE -- IT WAS 1705 SO IT SHOULD BE WILLFULLY

24   VIOLATE SECTION 502.  THEN THAT CAN HAVE A CITE BACK TO THE

25   ITSR INSTRUCTION.

APRIL 17, 2015

96

```
 1            OR, AN ALTERNATIVE -- I DRAFTED A COPY BUT I DON'T

 2    HAVE IT RIGHT HERE.  WE COULD LIST OUT, AGAIN, THE TEXT OF THE

 3    ITSR REGULATIONS THAT ARE AT ISSUE THERE.

 4            THE NINTH CIRCUIT, THE MODEL JURY INSTRUCTIONS FOR

 5    CONSPIRACY SAY EITHER THE COURT CAN INCLUDE THE ELEMENTS OF

 6    THE OBJECT OF THE CONSPIRACY RIGHT THERE IN THE INSTRUCTION,

 7    OR IF THEY ARE ADDRESSED IN ANOTHER INSTRUCTION THEY CAN BE

 8    REFERRED BACK TO THE OTHER INSTRUCTION.

 9            THE COURT:  RIGHT.

10            MR. CAMDEN:  WE CAN GO EITHER WAY.  I THINK,

11    ACTUALLY, IT MIGHT BE BETTER IF WE INCLUDE FULL TEXT OF THE

12    ITSR AGAIN IN THE CONSPIRACY REGULATIONS.

13            THE OTHER THING I HAVE DONE IN THE COUNT 1

14    INSTRUCTION IS, THERE IS A UNANIMITY REQUIREMENT AS TO THE

15    OBJECT OF THE CONSPIRACY, AND COUNT 1 ALLEGES TWO OBJECTS; ONE

16    IS A VIOLATION OF 560.201 AND ONE IS A VIOLATION OF 560.204.

17    SO THAT IS JUST AN ADMONITION.

18            IT IS FROM -- I TOOK THE TEXT FROM AN UNPUBLISHED

19    CASE BUT I FELT LIKE IT COVERS BOTH SIDES OF WHAT MAY BE

20    ARGUED.  IT IS SUFFICIENT IF THE UNITED STATES PROVES BEYOND A

21    REASONABLE DOUBT A CONSPIRACY TO ATTAIN AT LEAST ONE OF THE

22    OBJECTS, BUT IN ORDER TO RETURN A VERDICT OF GUILTY YOU MUST

23    UNANIMOUSLY AGREE ABOUT THE OBJECTS.  IF YOU CAN'T AGREE IN

24    THAT MANNER YOU MUST VOTE NOT GUILTY.

25            THAT JUST COVERS THE UNANIMITY AS TO THE OBJECT OF
```

APRIL 17, 2015

```
 1  THE CONSPIRACY.
 2          THE COURT:  IS THAT IN ONE OF THESE INSTRUCTIONS,
 3  THE UNANIMITY?
 4          MR. CAMDEN:  YES, IT IS.  IT IS -- IT GOES 1A OR B.
 5  THEN THE PARAGRAPH DIRECTLY BELOW THAT, IT IS INDENTED AND IT
 6  SAYS IT IS SUFFICIENT, ON THE FIRST PAGE OF THE COUNT 1
 7  INSTRUCTION.  AND IN THE FOOTNOTE IS WHERE I PUT THE CITATIONS
 8  TO UNANIMITY.
 9          THE COURT:  I SEE.  OKAY.
10          MR. CAMDEN:  THAT, TO BE HONEST, YOUR HONOR, COUNT 1
11  IS ABOUT, I THINK, AS FAR AS I GOT.  I STARTED TO WORK ON
12  COUNT 3, WHICH WOULD BE ATTEMPT TO VIOLATE IEEPA AND THE ITSR.
13  SO WE WOULD GO, HERE IS ITSR, HERE IS IEEPA, NOW HERE IS
14  CONSPIRACY TO VIOLATE THAT, NOW HERE IS ATTEMPT TO VIOLATE
15  THAT; AND THAT WILL COVER COUNTS 1, 3 AND 4.  THEN WE DO THE
16  SAME FOR, HERE IS SMUGGLING GOODS FROM THE UNITED STATES --
17  AND HE IS CHARGED TWO COUNTS, 5 AND 6, WITH THAT.  THEN --
18  YEAH, AND THEN SAY -- SO THAT IS THE SUBSTANTIVE CRIME.  THEN
19  SAY HERE IS COUNT 2, IT IS CONSPIRACY TO COMMIT THOSE CRIMES,
20  AND HERE ARE THE ELEMENTS OF THAT AS WELL.  AND THEN MOVE ON
21  TO TRANSPORTING FUNDS.
22          BUT BECAUSE ALL OF THE COUNTS RELATE BACK TO THE
23  INTENT TO VIOLATE ITSR OR IEEPA, WE WOULD LIKE THOSE
24  INSTRUCTIONS, I THINK, ON WHAT THOSE ARE UP FRONT.
25          I AM STILL WORKING ON PUTTING THOSE TOGETHER IN A
```

```
 1   COHERENT FORM, YOUR HONOR.
 2            THE COURT:  OKAY.
 3            MR. CAMDEN:  I WILL GET THOSE TO THE COURT AS SOON
 4   AS I CAN.
 5            THE COURT:  HOW ABOUT WILLFULLY, OR WASN'T THERE --
 6            MR. CAMDEN:  I AM STILL DOING THE RESEARCH ON THIS,
 7   TO BE HONEST, YOUR HONOR.  THERE IS, IF I CAN FIND --
 8            MR. HARRIGAN:  I JUST POINT OUT THAT THE MOUSAVI
 9   CASE DEALS WITH IEEPA AND IRAN TRADE SANCTIONS.  THAT IS WHERE
10   I GOT THE LANGUAGE FOR THAT.  NOW, I DON'T THINK IT DIFFERS
11   MUCH WITH THE 554.  I COMBINED THAT.  THERE IS NO SPECIFIC
12   CASE LAW THAT I COULD FIND IN THE NINTH CIRCUIT ON 554
13   WILLFULNESS, BUT THERE IS ON THE OTHER WAY AROUND WHERE
14   IMPORTING OUT OF THE COUNTRY, 545, WHICH ALTHOUGH THE STATUTE
15   DOESN'T SEEM TO REQUIRE WILLFULNESS IT DOES SEEM TO REQUIRE
16   UNDER THAT -- I THINK IT IS THE GARCIA-PAZ, OR PAZ-GARCIA CASE
17   I CITED.  SO I PUT THAT IN ONE STATUTE.  I KNOW THERE HAS BEEN
18   A LOT OF ARGUMENT ABOUT WHAT WE CAN SHOW REALLY AS IT
19   PARTICULARLY RELATES TO HIS -- AT LEAST THE GOVERNMENT WILL
20   ARGUE HIS AGREEMENT, HIS WILLINGNESS TO SEND STUFF IN
21   VIOLATION OF ITAR, EVEN THOUGH IT WASN'T ULTIMATELY AN ITAR
22   PRODUCT.
23            THE GOVERNMENT WOULD AGREE TO A LIMITING INSTRUCTION
24   THAT, YOU KNOW, WE CAN'T USE THAT TO SHOW HE INTENDED IT TO GO
25   TO IRAN, WE HAVE TO SHOW THAT HE INTENDED IT TO GO TO IRAN.
```

APRIL 17, 2015

1    BUT I WOULD LIKE TO BE ABLE TO ARGUE, AND WHATEVER LIMITING
2    INSTRUCTION THE COURT WANTS, THAT THE FACT THAT HE WAS WILLING
3    TO VIOLATE ITAR JUST TO GET THAT TO IRAN SHOWS HIS WILLFULNESS
4    TO VIOLATE U.S. LAWS, AND IS CIRCUMSTANTIAL EVIDENCE THAT HE
5    ACTED WILLFULLY IN THIS CASE.  DOES THAT MAKE SENSE, YOUR
6    HONOR?
7              **THE COURT:**  YES.
8              **MR. HARRIGAN:**  IN TERMS OF WILLFULNESS, I KNOW THERE
9    WILL BE DISCUSSION ABOUT IT, BUT I THINK THE CASE LAW IS WELL
10   SET IN MOUSAVI.  AND THEY HAVE KNOWN FROM THE GET-GO, I THINK
11   TODAY IS THE DAY TO DECIDE THAT.  I THINK I AM GOING TO HAVE
12   TO GIVE MY CLOSING ON MONDAY.  I UNDERSTAND EVERYBODY HAS BEEN
13   WORKING PRETTY HARD ON THIS THING, BUT JUST TO GIVE ME AN
14   IDEA, IF I HAVE TO GIVE CLOSING ON MONDAY, WHAT I AM GOING TO
15   BE ARGUING.  WHAT I AM GOING TO HAVE TO PROVE.
16             **THE COURT:**  ON THAT, THE TIMING, HOW MUCH DIRECT DO
17   YOU HAVE WITH THE AGENT?
18             **MR. HARRIGAN:**  IT SHOULD BE VERY SHORT.  WE
19   ANTICIPATE THAT HIS TESTIMONY WILL COVER THE SHIPPING.  THERE
20   MAY BE CROSS-EXAMINATION, MR. HELSING WAS PRESENT AT THE
21   UNDERCOVER MEETING.  BUT, AGAIN, I THINK 45 MINUTES OR LESS
22   FOR MR. HELSING ON DIRECT.  THAT'S MY ESTIMATE.  MR. COUGHLIN
23   IS HANDLING THAT WITNESS, BUT THAT IS MY BEST ESTIMATE.
24             **MR. JOHNSTON:**  YOUR HONOR, I THINK IT IS FAIR TO SAY
25   THAT WE WILL GO AT LEAST TO THE END OF THE DAY MONDAY WITH

APRIL 17, 2015

```
 1    BOTH SIDES' PRESENTATION OF THE EVIDENCE.
 2              THE COURT:  RIGHT.
 3              MR. JOHNSTON:  I WOULD ESTIMATE MOST LIKELY THE
 4    CLOSINGS WOULD OCCUR ON TUESDAY.
 5              THE COURT:  INSTRUCT AND ARGUE TUESDAY?
 6              MR. JOHNSTON:  YES, YOUR HONOR.
 7              THE COURT:  DO YOU THINK WE WILL USE ALL OF MONDAY?
 8              MR. JOHNSTON:  IT SEEMS LIKE IT.
 9              MR. HARRIGAN:  IS DEFENDANT GOING TO TESTIFY?  THAT
10    WOULD BE SOME HELP.
11              MR. JOHNSTON:  I AM NOT GOING TO GIVE TOO MUCH WAY,
12    BUT I THINK WE WILL GO THROUGH MONDAY.
13              THE COURT:  THERE IS YOUR HINT.
14              MR. HARRIGAN:  WHAT?
15              THE COURT:  THAT MAY BE YOUR HINT.
16              MR. HARRIGAN:  I DIDN'T HEAR WHAT HE SAID.
17              MR. JOHNSTON:  WELL, THAT IS TOO BAD.
18              MR. HARRIGAN:  YOUR HONOR, WHAT DID DEFENSE COUNSEL
19    SAY?
20              MR. JOHNSTON:  YOUR HONOR, I DON'T THINK WE WILL BE
21    CLOSING BEFORE TUESDAY IS MY BEST GUESS.
22              MR. HARRIGAN:  I APPRECIATE THAT.  THAT IS MY
23    CONCERN.  I UNDERSTAND THEY HAVE BEEN WORKING VERY HARD.
24              THE COURT:  JUST SO YOU HAVE COMFORT, WE WILL SETTLE
25    THE INSTRUCTIONS MONDAY.
```

APRIL 17, 2015

965

 1          **MR. HARRIGAN:**  OKAY.

 2          **THE COURT:**  THEN YOU CAN PLAN ON ARGUING NO EARLIER

 3   THAN TUESDAY.

 4          **MR. HARRIGAN:**  AND I UNDERSTAND WHAT MR. CAMDEN IS

 5   TRYING TO DO HERE, AND I WANT TO SIMPLIFY IT FOR THE JURY TOO.

 6   THEY ARE DIFFICULT TO GRAB BECAUSE THERE IS REALLY NO GO-BY.

 7   I DON'T THINK THEIR STRUCTURE IS MUCH DIFFERENT THAN I HAVE

 8   DONE EXCEPT I STARTED WITH THE CONSPIRACY AND SAY, YOU HAVE TO

 9   CONSPIRE TO DO THIS, THIS IS WHAT THE CRIME IS, IT IS EITHER,

10   YOU KNOW, DIRECTLY, INDIRECTLY FROM THE UNITED STATES TO IRAN

11   WITHOUT A LICENSE OR ACTING WITHIN THE UNITED STATES FOR THE

12   PURPOSE OF EVADING THOSE REQUIREMENTS OF GETTING A LICENSE.

13          SO IN THE END I DON'T KNOW THERE IS GOING TO BE MUCH

14   DISAGREEMENT.

15          WOULD YOU AGREE, JOE, IN TERMS OF THE BASIC

16   STRUCTURE?

17          **MR. CAMDEN:**  THE STRUCTURE, NO, I DON'T THINK THERE

18   IS GOING TO BE DISAGREEMENT.  WE CAN WORK OUT SOME WAY.  WE

19   WANT THE JURY TO BE ABLE TO SORT THROUGH IT EASILY.

20          **MR. HARRIGAN:**  AT LEAST I DON'T SEE IT FROM THEIR

21   OUTLINE.

22          **MR. JOHNSTON:**  YOUR HONOR, BEFORE WE GET TOO FAR

23   AHEAD, I DID WANT TO GO BACK TO MR. HARRIGAN'S COMMENT ABOUT

24   HOW HE INTENDS TO ARGUE THE ALLEGED OR THE ATTEMPTED VIOLATION

25   OF ITAR.

APRIL 17, 2015

```
 1            HE HAS INDICATED THAT THE GOVERNMENT WOULD LIKE TO
 2    ALLEGE THAT THE DEFENDANT'S WILLINGNESS TO VIOLATE ITAR
 3    SHOWS -- AND I CAN'T REMEMBER THE EXACT WORDS -- SHOWS
 4    CIRCUMSTANTIALLY -- I BELIEVE WAS THEIR WORD --
 5    CIRCUMSTANTIALLY CAN BE USED TO SHOW THAT HE INTENDED TO
 6    VIOLATE IEEPA.
 7            MR. HARRIGAN:  CIRCUMSTANTIAL EVIDENCE IS WHAT I WAS
 8    SAYING.
 9            MR. JOHNSTON:  CIRCUMSTANTIAL EVIDENCE OF
10    WILLFULNESS TO VIOLATE IEEPA, AND SPECIFICALLY THE PROHIBITION
11    AGAINST ENGAGING IN TRANSACTIONS WHERE THESE ITEMS GO TO IRAN.
12            BUT THE PROBLEM WITH THE ITAR ISSUE, OR ONE OF THE
13    MANY PROBLEMS WITH THE ITAR ISSUE, IS EVEN IF HE WAS WILLING
14    TO AND SOMEHOW AIDED AND ABETTED THE AGENT IN THAT, WE KNOW
15    THAT IS A FICTION, YOU CAN'T AID AND ABET AN AGENT.  BUT EVEN
16    IF HE WERE, THAT DOESN'T MAKE IT MORE OR LESS LIKELY THAT HE
17    WOULD VIOLATE A LAW THAT HAS TO DO WITH SHIPPING TO A
18    PARTICULAR COUNTRY.  THE FACT THAT HE MIGHT BE WILLING TO --
19    BECAUSE HE BELIEVES THERE NEEDS TO BE A SPECIAL LICENSE FOR
20    SOMETHING TO GO TO ANY COUNTRY, DOESN'T MAKE IT MORE OR LESS
21    LIKELY THAT HE IS WILLING TO VIOLATE THIS VERY SPECIFIC
22    CHARGE.
23            THE COURT:  DOESN'T IT STAND TO REASON THAT -- THE
24    ARGUMENT WOULD BE IT DOESN'T MATTER WHAT THE VIOLATION IS, IF
25    IT IS ITAR OR, YOU KNOW, IF IT REQUIRES A LICENSE TO EXPORT TO
```

APRIL 17, 2015

1    ANY COUNTRY, HE DIDN'T CARE.

2          **MR. JOHNSTON:**  THAT IS THE CONCERN IS THAT THAT, IN

3    ESSENCE, IS PROPENSITY.  HIS WILLINGNESS TO DO A BAD ACT HERE

4    SUGGESTS THAT HE IS WILLING TO DO IT IN A DIFFERENT

5    CIRCUMSTANCE.  AND IT IS DIFFICULT IN THIS CASE, BUT IT IS NOT

6    THE DEFENSE'S DIFFICULTY.

7          **THE COURT:**  BUT THE ARGUMENT IS NOT HE DID IT BEFORE

8    SO HE IS DOING IT AGAIN; IT IS THAT IN THIS CASE, WHEN THESE

9    EVENTS ARE GOING ON, HE IS TOLD THIS IS A VIOLATION OF SOME

10    LAW THAT IS EVEN BROADER IN SCOPE, AND HE DIDN'T CARE.  BUT

11    THAT JUST GOES TO SHOW HIS STATE OF MIND AT THE TIME OF THESE

12    EVENTS IS HE WASN'T CONCERNED ABOUT EXPORT LAWS OF ANY KIND.

13          **MR. JOHNSTON:**  BUT IT IS ACTUALLY NARROWER IN SCOPE,

14    THE ITAR VIOLATION.  IEEPA YOU HAVE TO INTEND FOR A SPECIFIC

15    COUNTRY, YOU HAVE TO WILLFULLY ENGAGE WITH THE BAD PURPOSE OF

16    WANTING AN ITEM TO GO TO IRAN.

17          SO IT SEEMS HARD THAT HE MIGHT NOT HAVE A PROBLEM

18    WITH THIS ITEM BEING SHIPPED TO A DIFFERENT COUNTRY IS GOING

19    TO PROVE MORE OR LESS LIKELY THAT HE WANTS THIS ITEM TO GO TO

20    IRAN.  SO IF THEY WANT TO ARGUE THIS SHOWS THAT HE WILLFULLY

21    IS TRYING TO GET THIS ITEM TO IRAN, I DON'T SEE THE COMPARISON

22    OTHER THAN HE IS A BAD PLAYER HERE SO HE MUST BE A BAD PLAYER

23    OVER HERE.

24          **MR. HARRIGAN:**  I AM CERTAINLY NOT GOING TO ARGUE HE

25    IS A BAD PLAYER.  I KNOW THERE HAS BEEN A LOT ABOUT THE --

APRIL 17, 2015

```
 1   MAYBE IT IS TIME TO BRING THAT UP -- ABOUT THE MILITARY ISSUE.
 2              I DON'T PLAN TO ARGUE AT ANY POINT THAT HE INTENDED
 3   THIS TO GO TO MILITARY.  I MEAN, I DON'T THINK HE KNEW HOW
 4   ULTIMATELY IT WAS GOING TO BE USED, OTHER THAN IT WAS GOING TO
 5   IRAN.  AND HIS MAIN INTEREST WAS MAKING MONEY.  THAT IS PRETTY
 6   CLEAR FROM THE GET-GO.
 7              SO I KNOW THERE IS A LOT -- AND I THINK I WILL EVEN
 8   CAUTION THE JURY, YOU KNOW, THAT'S NOT WHY THAT EVIDENCE IS
 9   THERE.  BUT, YOU KNOW, IT JUST SHOWS THAT HE REALLY DIDN'T
10   CARE.
11              WHAT -- THE REASON I WANT TO BE ABLE TO ARGUE THAT
12   FROM THE ITAR, BECAUSE THERE HAS BEEN A LOT PUT ON DIRECT
13   ABOUT THE COMPLEXITY OF THESE REGULATIONS.  AND I DON'T KNOW
14   IF THEY STILL PLAN TO ATTACK MOLLY MILLER'S BASIC TESTIMONY
15   WHICH WAS, THIS REQUIRES A LICENSE.  RIGHT?  AND THEY DIDN'T
16   HAVE A LICENSE.  THAT ULTIMATELY WAS HER TESTIMONY.
17              THERE WAS STILL SOME BROUGHT IN, WELL, YOU KNOW,
18   LICENSES FOR DUBAI, DOESN'T NEED THAT.
19              HE REALLY DIDN'T EVEN CARE ABOUT WHAT THE LICENSE
20   REQUIREMENTS WERE, OR ANY LICENSE REQUIREMENT, AS SHOWN BY HOW
21   HE REACTED TO THE ITAR STUFF.  SO IT IS HE WILLFULLY VIOLATED
22   THE LAW.
23              BUT, AGAIN, I AM IN FAVOR OF ANY LIMITING
24   INSTRUCTION THE COURT WANTS TO PUT IN IN TERMS OF THE
25   MILITARY.  I KNOW THAT IS THEIR CONCERN.
```

APRIL 17, 2015

 1          **THE COURT:**  I ALREADY GAVE THAT LIMITING

 2     INSTRUCTION.

 3          **MR. HARRIGAN:**  RIGHT.  RIGHT.  BUT I WANT TO ALLAY

 4     THEIR CONCERNS.  IT IS NOT MY INTENT TO SAY, YOU KNOW -- THE

 5     ONLY WAY I THINK THAT COMES INTO PLAY IS TO SAY THIS JUST

 6     INVOLVES -- THEY MAKE THE ARGUMENT, THIS COVERS JUST INNOCUOUS

 7     GOODS; BECAUSE IT DOESN'T COVER JUST INNOCUOUS GOODS.  WE HAVE

 8     HEARD THAT.  AND I THINK A FAIR REPLY WOULD BE TO BE ABLE TO

 9     ARGUE THAT IT DOESN'T COVER INNOCUOUS GOODS, IN FACT BOTH OF

10     THESE GOODS CAN BE MILITARIZED AND USED IN MILITARY PURPOSE,

11     YOU KNOW, IN FAIR REPLY TO ANYTHING DEFENSE SAYS.

12          THAT I THINK WOULD BE PROPER, BUT I UNDERSTAND THEIR

13     CONCERNS.  AND I THINK THAT MR. COUGHLIN AND I TRIED TO SEE IT

14     FROM THE OUTSET, THAT IS NOT WHAT WE PLAN TO ARGUE TO THE

15     JURY.

16          **MR. JOHNSTON:**  EXCEPT FOR THAT IS WHAT HAS BEEN

17     PRESENTED IN EVIDENCE, QUITE SUBSTANTIALLY, IS THE MILITARY

18     APPLICATIONS OF THESE ITEMS.  THE FACT THAT ONE OF THESE ITEMS

19     IS A MUNITION, THAT IT IS USED FOR ELECTRONIC WARFARE.  I

20     MEAN, THE JURY HAS ABSORBED THIS, AND WE HAD TO CONFRONT IT.

21     BUT IN OUR CASE -- I THINK THE INSTRUCTION HAS BEEN HELPFUL.

22          **THE COURT:**  IN THAT REGARD, THAT IS THE CASE.  SO IN

23     MY VIEW YOU CAN'T MAGICALLY MAKE THAT GO AWAY BECAUSE IT IS

24     PREJUDICIAL.  IT IS NOT UNDULY OR UNFAIRLY PREJUDICIAL.

25     THAT'S THE CASE IS THAT MR. GHAHREMAN WAS TOLD IT IS A

```
 1   MUNITION AND SUBJECT TO SPECIAL EXPORT LAWS, AND THE
 2   GOVERNMENT IS NOT GOING TO BE UNFAIRLY ARGUING THAT.
 3           I THINK THEY ARE GOING TO CONCEDE, AND WHAT THE
 4   EVIDENCE HAS SHOWN IS THAT MR. GHAHREMAN THOUGHT IT WAS GOING
 5   TO AN AIRPORT, AND THAT IT WASN'T GOING TO HAVE ANY MILITARY
 6   USE.  SO, IN MY VIEW, ALL OF THE EVIDENCE HAS COME IN AND
 7   FAIRLY SO ON THIS ISSUE.
 8           THE REALITY STILL EXISTS, BASED ON THIS EVIDENCE,
 9   THAT THE GOVERNMENT CAN MAKE AN ARGUMENT THAT MR. GHAHREMAN
10   DIDN'T REALLY CARE HOW IT WAS GOING TO BE USED OR WHAT EXPORT
11   LAWS WERE INVOLVED, HE JUST WANTED TO MAKE THE SALE AND GET
12   THE COMMISSION.  HE WAS TOLD IT COULD BE A MUNITION -- HE WAS
13   TOLD IT WAS A MUNITION, AND HE WAS -- HE BELIEVED, I THINK,
14   THAT IT WAS GOING TO BE USED FOR AN AIRPORT.  BUT A FAIR
15   INFERENCE CAN BE MADE IS HE DIDN'T REALLY -- MR. TAHERKHANI
16   COULD HAVE GIVEN THESE DEVICES TO ANYONE IN IRAN, MILITARY OR
17   OTHERWISE.  I THINK THAT IS ALL FAIR ARGUMENT.
18           **MR. JOHNSTON:**  I DON'T MEAN TO INTERJECT, BUT MY
19   CONCERN IS WHERE WE HAVE A STATUTE THAT REQUIRES A WILLFUL
20   VIOLATION OF THE LAW, THAT THOSE ARGUMENTS CAN BE PARTICULARLY
21   CORROSIVE IN THE SENSE THAT THE JURY WILL NOT FEEL COMPELLED
22   TO DETERMINE WHETHER HE HAD THE PURPOSE OF ENGAGING IN THESE
23   TRANSACTIONS SO THAT THESE ITEMS COULD GET TO IRAN FOR ANY
24   PURPOSE, MILITARIZED OR COMMERCIAL OR OTHERWISE.
25           **THE COURT:**  THERE WAS --
```

APRIL 17, 2015

```
 1            MR. JOHNSTON:  I WILL RESERVE MY OBJECTIONS FOR THE
 2   GOVERNMENT'S ARGUMENT, BUT I DO HAVE THE CONCERNS THAT THEY
 3   CAN BLEED INTO PROPENSITY.  AND THAT, YOU KNOW, IT CAN
 4   UNDERCUT THE JURY'S ABILITY TO CONSIDER WILLFULNESS, WHICH
 5   REALLY BRINGS US TO ONE OF OUR MOST CONTENTIOUS ISSUES ON THE
 6   JURY INSTRUCTIONS, WHICH IS THE GOVERNMENT'S REQUEST FOR A
 7   DELIBERATE IGNORANCE INSTRUCTION.
 8            THE COURT:  I DID GIVE A LIMITING INSTRUCTION ON
 9   THIS ISSUE DURING THE TRIAL --
10            MR. JOHNSTON:  THAT IS CORRECT.
11            THE COURT:  -- ABOUT THE MUNITIONS.
12            MR. JOHNSTON:  WE APPRECIATE THAT.
13            THE COURT:  SO I THINK THAT HAS BEEN DONE.  AND
14   GIVEN THE WAY MR. HARRIGAN HAS JUST PORTRAYED HIS ARGUMENT, I
15   DON'T THINK THERE IS ANY OTHER CONCERN THAT HASN'T ALREADY
16   BEEN ADDRESSED.  DO YOU AGREE?
17            MR. JOHNSTON:  WELL, I NEED TO GO BACK.  I TRIED TO
18   TAKE NOTES OF THE LIMITING INSTRUCTION DURING TRIAL.  I VERY
19   WELL MAY ASK THAT IT BE GIVEN AGAIN IN FINAL INSTRUCTIONS,
20   SINCE IT DID COME BEFORE ONE WITNESS AND WE HAVE HAD SEVERAL
21   WITNESSES NOW WHO DISCUSSED THAT.  I THINK IT BEGAN WITH:
22   BEFORE THE NEXT WITNESS TESTIFIES.
23            THE COURT:  I AM OKAY WITH THAT.
24            MR. HARRIGAN:  I HAVE NO OBJECTION TO THAT, YOUR
25   HONOR.
```

APRIL 17, 2015

```
1           MR. JOHNSTON:  I DON'T WANT TO JUMP OVER MR. CAMDEN
2    HERE, BECAUSE I KNOW WE DO HAVE AN ISSUE ABOUT HOW WE ARE
3    GOING TO DEFINE WILLFULNESS.  BUT IT IS GOING TO BLEED INTO
4    THE CONCERN ABOUT THE GOVERNMENT'S REQUEST FOR WHAT WE CALL
5    THE JEWELL INSTRUCTION OR THE DELIBERATE IGNORANCE.
6           THE COURT:  ARE YOU REQUESTING THAT?  THAT IS A CAN
7    OF WORMS.
8           MR. HARRIGAN:  I AM NOT.
9           MR. JOHNSTON:  THEY ARE WITHDRAWING THAT?
10          THE COURT:  THEY ARE WITHDRAWING THAT.
11          MR. JOHNSTON:  WELL, GOOD.  YOU JUST CUT OUT ALL MY
12   RESEARCH FROM LAST NIGHT.
13          MR. CAMDEN:  SIX HOURS.
14          MR. JOHNSTON:  NO, I APPRECIATE THAT.  IT REALLY IS
15   A CAN OF WORMS.
16          MR. HARRIGAN:  I THINK GIVEN SOME OF THE ADMISSIONS
17   IT WOULD BE A CAN OF WORMS.  BUT I DIDN'T KNOW HOW IT WAS
18   GOING TO COME OUT.  IT COULD CHANGE IF HE TESTIFIES, SO I
19   WOULD LIKE TO RESERVE THAT.  AS THE EVIDENCE STANDS NOW, NO.
20          THE COURT:  I AM ALWAYS RELUCTANT TO GIVE THAT ONE,
21   ESPECIALLY IN A CASE LIKE THIS.  BUT I WOULD RESERVE ON IT,
22   AND IT WOULD PROBABLY BECOME ACADEMIC.
23          WILLFULNESS, DO YOU WANT TO GIVE HE A HEADS-UP
24   THERE, BEFORE WE RECESS?
25          MR. CAMDEN:  THE GOVERNMENT'S INSTRUCTION, I
```

APRIL 17, 2015

```
 1   BELIEVE, JUST SAYS -- SO KNOWLEDGE THAT IT WAS PROHIBITED BY

 2   LAW AND WITH THE PURPOSE OF DISOBEYING OF THE LAW.

 3           SO WHAT I AM CONCERNED WITH, I THINK WE CAN -- JUST

 4   BECAUSE ALL OF THE STATUTES -- OR ALL OF THE CHARGES AND ALL

 5   OF THE COUNTS RELATE SPECIFICALLY TO THE INTENT TO EITHER

 6   PROMOTE THE CARRYING ON OF VIOLATIONS OF IEEPA OR THE INTENT

 7   TO VIOLATE IEEPA, I THINK WE CAN NARROW IT.  MOUSAVI DOES

 8   HAVE -- THERE IS A PASSAGE THAT IS PRESENT CLOSELY DIRECTLY TO

 9   THE POINT, IT SAYS, QUOTE, DEFENDANTS CHARGED WITH A VIOLATION

10   OF IEEPA AND THE ITR ARE ADEQUATELY PROTECTED BY THE --

11   REQUIRING THE GOVERNMENT TO PROVE THAT THE DEFENDANT'S ACTIONS

12   VIOLATED THE UNITED STATES EMBARGO ON TRANSACTIONS WITH IRAN.

13           SO I THINK WILLFULLY, IN THIS CASE, WE DON'T HAVE TO

14   SAY -- I MEAN, WITH THE GOVERNMENT'S INSTRUCTION I THINK THERE

15   IS A LITTLE BIT OF A RISK BY JUST SAYING THE LAW.  BUT THE

16   JURY COULD THINK WELL, INTENDED TO VIOLATE ANY OTHER LAW AND

17   CAN USE THAT TO FIND WILLFULNESS.  IT HAS TO BE AN INTENT TO

18   VIOLATE THE PROHIBITION AGAINST SENDING GOODS TO IRAN UNDER

19   MOUSAVI.

20           SO WE WEREN'T -- YOU KNOW, THE GOVERNMENT DOESN'T

21   HAVE TO PROVE THAT HE READ THE CFR, THAT HE KNEW EXACTLY WHAT

22   THE LICENSING EXCEPTIONS WERE, OR ANYTHING LIKE THAT.  JUST

23   THAT HE KNEW, IN GENERAL, IT WAS ILLEGAL TO SEND STUFF TO

24   IRAN.  AS LONG AS THE WILLFULNESS INSTRUCTION REFLECTS THAT.

25           THE COURT:  YOU AGREE WITH THAT?
```

APRIL 17, 2015

```
 1          MR. HARRIGAN:  YES, YOUR HONOR.  I DON'T DISAGREE
 2   WITH THAT.  I DON'T THINK MY INSTRUCTION MEANT TO SAY ANYTHING
 3   OR I INTEND TO ARGUE ANYTHING ELSE.  I THINK THE ISSUE BECAME
 4   THAT BECAUSE HE HAD AN INTENT TO VIOLATE ITAR CAN I ARGUE FROM
 5   THAT HE INTENDED THIS TO GO TO IRAN.
 6          I STILL THINK -- AND THAT WAS THE REASON WHY I SAID
 7   EVIDENCE OF HIS WILLFULNESS TO VIOLATE THE IRAN SANCTIONS CAN
 8   BE SHOWN BY -- YOU KNOW, THE BASIC ARGUMENT IS HE DIDN'T CARE
 9   WHAT LAW HE VIOLATED.  HE WANTED TO GET THIS TO IRAN, AND HE
10   KNEW IT WAS GOING TO VIOLATE LAWS.  ALL RIGHT.  AND HE KNEW IT
11   WAS UNLAWFUL TO BREAK THE LAW -- TO GIVE IT TO IRAN, WHETHER
12   IT WAS VIOLATING ITAR, WHETHER IT WAS VIOLATING IEEPA.  DOES
13   THAT MAKE SENSE?  I MEAN, I STILL THINK --
14          THE COURT:  IT DOES TO ME, BUT NOT TO MR. JOHNSTON.
15          MR. HARRIGAN:  I KNOW THEY THINK THERE IS THIS GREAT
16   FOLD OVER, BUT I DON'T THINK I CAN ARGUE THAT, YOU KNOW,
17   VIOLATION OF LAW MEANS VIOLATING THE ARMS EXPORT CONTROL ACT,
18   AND THAT IS IT.  THAT IS NOT WHAT WE ARE ARGUING.  IT IS JUST
19   OTHER EVIDENCE OF HIS INTENT -- OF HIS WILLFULNESS.
20          THE COURT:  I THINK WITH THE LIMITING INSTRUCTION WE
21   HAVE ADDRESSED THAT, AND I CAN GIVE IT AGAIN AT THE
22   APPROPRIATE TIME.
23          MR. CAMDEN:  SO FOR -- I AM LOOKING AT GOVERNMENT'S
24   INSTRUCTION NO. 18.  AN ACT IS DONE WILLFULLY IF IT IS
25   VOLUNTARILY COMMITTED WITH THE KNOWLEDGE IT WAS PROHIBITED BY
```

APRIL 17, 2015

```
1    LAW WITH THE PURPOSE OF DISOBEYING THE LAW.

2              I CAN SEND A ONE-SENTENCE INSERT TO GO IN THERE.  IN

3    THIS CASE MR. GHAHREMAN IS CHARGED WITH WILLFUL VIOLATIONS OF

4    IEEPA AND THE IRAN TRADE REGULATIONS.  FOR EACH COUNT YOU MUST

5    FIND THAT HE INTENDED TO VIOLATE THE UNITED STATES EMBARGO ON

6    TRANSACTIONS WITH IRAN.

7              THAT IS DIRECT FROM MOUSAVI.  JUST TO MAKE SURE THEY

8    DON'T -- I AM NOT ACCUSING THE GOVERNMENT OF DELIBERATELY

9    TRYING TO OBSCURE THIS, THEY ARE NOT.

10             THE COURT:  WILL YOU RUN THAT BY ME AGAIN?

11             MR. CAMDEN:  AN ACT IS DONE WILLFULLY IF IT IS

12   VOLUNTARILY COMMITTED WITH THE KNOWLEDGE THAT IT IS -- THIS IS

13   SUCH A GENERAL STATEMENT.  SO I WOULD LIKE, MR. GHAHREMAN IS

14   CHARGED -- IN EACH COUNT THE GOVERNMENT HAS ALLEGED THAT MR.

15   GHAHREMAN INTENDED TO VIOLATE IEEPA AND THE ITSR.

16             WE CAN INCLUDE ALL OF THE INSTRUCTIONS THAT THE

17   GOVERNMENT DOES NOT NEED TO PROVE THAT HE WAS AWARE OF THE

18   SPECIFIC LICENSING REQUIREMENTS, THE GOVERNMENT MUST BE PROVE

19   THAT THE DEFENDANT KNEW HIS ACTION VIOLATED THE UNITED STATES

20   EMBARGO ON TRANSACTIONS WITH IRAN.

21             MR. HARRIGAN:  YOUR HONOR, FORGIVE ME.  I DON'T

22   HAVE -- I HAVE MOUSAVI BACK AT MY OFFICE, I DON'T HAVE THAT

23   CASE IN FRONT OF ME.  IF WE CAN DO THIS.  WE HAVE AN

24   OPPORTUNITY, THEN, TO SEE WHAT HE IS PROPOSING, IT WOULD BE

25   EASIER FOR ME TO ADDRESS IT.  I DON'T KNOW IF THE COURT IS
```

APRIL 17, 2015

1    PLANNING TO DRAFT IT NOW.

2         **MR. CAMDEN:**  I AM ALSO UNCOMFORTABLE JUST DICTATING.

3    MAYBE WE WILL REACH AN AGREEMENT.

4         **MR. HARRIGAN:**  I JUST DON'T WANT TO MAKE IT LONGER

5    SO NO ONE UNDERSTANDS WHAT IS GOING ON.  I TRIED TO KEEP IT

6    REASONABLE.  AND I THINK I UNDERSTAND THEIR CONCERNS, AND

7    HOPEFULLY MAYBE WE CAN MAKE IT WHERE IT IS NOT TWO PAGES AND

8    KEEP IT RELATIVELY SHORT AND ADDRESS THEIR CONCERNS.

9         **THE COURT:**  OKAY.

10        I WILL START WORKING ON THE INSTRUCTIONS AS TO

11   COUNTS 1 THROUGH 9, WORKING WITH THE PROPOSALS THAT HAVE BEEN

12   MADE HERE TODAY BY MR. CAMDEN AND USING THE GOVERNMENT'S

13   INSTRUCTIONS AS WELL.  AND THEN TRY TO GET A DRAFT SET TO

14   COUNSEL MONDAY, AND THEN WE CAN ADDRESS IT MONDAY AFTERNOON.

15        **MR. HARRIGAN:**  THANK YOU, YOUR HONOR.  I APPRECIATE

16   THAT.

17        **THE COURT:**  ANY OTHER THINGS?

18        **MR. CAMDEN:**  ONE LAST REQUEST.  ANOTHER COPY OF JUST

19   ONE LAST SPECIFIC INSTRUCTION.

20        THERE ARE A LOT OF MODEL INSTRUCTIONS RELATING TO

21   CONSPIRACY AND SURROUNDING IT, SO THIS IS 8. -- 5. -- 8.26,

22   WHICH IS THE SEARS CHARGE.  SO THE FIRST PARAGRAPH IS NOT IN

23   BRACKETS, THAT IS DIRECTLY FROM THE MODEL JURY INSTRUCTIONS.

24   I HAVE INCLUDED A SPECIFIC INSTRUCTION.  THE MODEL

25   INSTRUCTIONS SAY -- I THINK IT INCLUDES INFORMANTS AND OTHER

APRIL 17, 2015

```
 1   PEOPLE, BUT IT ALSO INCLUDES UNDERCOVER OFFICERS SO THEY ARE
 2   NOT LIKE INFORMANTS THAT HAVE BEEN RECRUITED BY THE
 3   GOVERNMENT.  THAT IS JUST A CASE SPECIFIC EXPLANATION OF THE
 4   SEARS CHARGE.
 5            THE COURT:  OKAY.
 6            MR. CAMDEN:  WE DON'T EVEN HAVE TO DISCUSS IT NOW, I
 7   AM JUST PROVIDING IT TO THE COURT.
 8            THE COURT:  VERY WELL.  I WILL TAKE A LOOK AT IT.
 9            OKAY.  ANYTHING ELSE?
10            MR. HARRIGAN:  NOT ON BEHALF OF THE GOVERNMENT, YOUR
11   HONOR.
12            MR. JOHNSTON:  NO, YOUR HONOR.  THANK YOU.
13            THE COURT:  HAVE A GOOD WEEKEND.
14            MR. HARRIGAN:  SORRY FOR NOT BEING ABLE TO TAKE CARE
15   OF THIS MORNING.
16            THE COURT:  THE TIMING WORKED OUT PERFECTLY.
17
18                         *   *   *
19            I CERTIFY THAT THE FOREGOING IS A CORRECT
             TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
20            IN THE ABOVE-ENTITLED MATTER.
21            S/LEEANN PENCE                    6/14/2015
22            LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
23
24
25
```

APRIL 17, 2015