UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                       )
UNITED STATES OF AMERICA,              )
            PLAINTIFF,                 )   CASE NO. 13CR4228-DMS
                                       )
                                       )   SAN DIEGO, CALIFORNIA
                                       )TUESDAY, APRIL 21, 2015
                                       )   1:30 P.M. CALENDAR
ARASH GHAHREMAN,                       )
            DEFENDANT.                 )
_____)        VOLUME VII


REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL/JURY INSTRUCTION CONFERENCE


REPORTED BY:                LEE ANN PENCE,
                            OFFICIAL COURT REPORTER
                            UNITED STATES COURTHOUSE
                            333 WEST BROADWAY ROOM 1393
                            SAN DIEGO, CALIFORNIA 92101

```
COUNSEL APPEARING:

FOR PLAINTIFF:          LAURA E. DUFFY,
                        UNITED STATES ATTORNEY
                        BY:   SHANE P. HARRIGAN
                              TIMOTHY D. COUGHLIN
                        ASSISTANT U.S. ATTORNEYS
                        880 FRONT STREET
                        SAN DIEGO, CALIFORNIA 92101

FOR DEFENDANT           FEDERAL DEFENDERS OF SAN DIEGO, INC.
GHAHREMAN:                    BY:   ELLIS M. JOHNSTON
                                    JOSEPH S. CAMDEN
                        TRIAL ATTORNEYS
                        225 BROADWAY, SUITE 900
                        SAN DIEGO, CALIFORNIA 92101
```

1240

```
 1    SAN DIEGO, CALIFORNIA - TUESDAY, APRIL 21, 2015 - 1:30 P.M.
 2                              *   *   *
 3          THE CLERK:  NO. 1 ON CALENDAR, CASE NO. 13CR4228,
 4    UNITED STATES OF AMERICA VERSUS ARASH GHAHREMAN; ON FOR JURY
 5    INSTRUCTION CONFERENCE.
 6              THE COURT:  GOOD AFTERNOON.  WE ARE PRESENT --
 7              MR. HARRIGAN:  GOOD AFTERNOON, YOUR HONOR.
 8              THE COURT:  -- WITH COUNSEL ONLY.
 9          I DID ANOTHER DRAFT WHICH WAS FORWARDED TO COUNSEL.
10          GOVERNMENT HAVE ANY OBJECTIONS?
11              MR. HARRIGAN:  JUST SOME CORRECTIONS, YOUR HONOR.
12    WE TRIED TO TALK BEFOREHAND.
13              THE COURT:  YES.
14              MR. HARRIGAN:  SO IN MY REVIEW OF THE INITIAL 16
15    INSTRUCTIONS, APPEARED TO BE THE SAME.  UNLESS I MISSED
16    SOMETHING.
17              THE COURT:  THEY ARE ALL THE SAME.  I DID ADD 9.1
18    ABOUT SEPARATE CRIMES BEING CHARGED.  FOR SOME REASON THAT WAS
19    NOT INCLUDED.
20              MR. HARRIGAN:  OKAY.  SO THESE, REALLY, APPLY TO
21    INSTRUCTION 17 THROUGH THE REMAINING OF THEM?
22              THE COURT:  YES.  SO WHAT I DID, 16 IS KIND OF THE
23    ROAD MAP, SO I THINK THE JURORS WILL FIND THAT VERY HELPFUL.
24    IT IS WHAT I READ TO THE VENIRE WHEN WE STARTED VOIR DIRE.  IT
25    OUTLINES THE CHARGES AND REFERENCES THE COUNTS SO THEY CAN GO
```

APRIL 21, 2015

```
 1   TO THE INSTRUCTIONS.

 2              I THINK THAT ADDRESSES SOME OF MR. CAMDEN'S

 3   CONCERNS.

 4              SO ON 17?

 5         MR. HARRIGAN:  THE GOVERNMENT WOULD REQUEST A

 6   MODIFICATION AS TO SUBPARAGRAPHS A AND B.

 7              MR. CAMDEN:  WHICH ONE?

 8              MR. HARRIGAN:  17.

 9              AS TO SUBPARAGRAPHS A AND B OF THE FOLLOWING.  WE

10   ELECTED TO GO WITH EXPORT OR SUPPLY, NOT SELL.  SO WE WOULD

11   ASK THAT IN SUBPARAGRAPH A, THE LINE, IT READS EXPORT OR

12   SUPPLY RATHER THAN EXPORT, SELL OR SUPPLY.

13              THE COURT:  OKAY.

14              MR. HARRIGAN:  AND THE SAME WOULD APPLY IN

15   SUBPARAGRAPH B, WHICH INVOLVES ENGAGING IN TRANSACTIONS.

16              THE COURT:  AGAINST EXPORTING.

17              MR. HARRIGAN:  OR SUPPLYING.  TAKING OUT THE

18   SELLING.

19              THE COURT:  OKAY.  SO THAT WOULD NEED TO BE CHANGED

20   THROUGHOUT.

21              MR. HARRIGAN:  YES.  AND I AM READY TO GO THROUGH

22   THE REST.

23              THE COURT:  YES.

24              MR. HARRIGAN:  THE SAME CHANGE IN DESCRIBING THE

25   GENERAL ELEMENTS OF.
```

APRIL 21, 2015

124

```
 1            THE COURT:  CAN YOU HOLD ON FOR ONE SECOND?
 2            (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND
 3            DEPUTY CLERK)
 4            THE COURT:  MR. HARRIGAN.
 5            MR. HARRIGAN:  AS TO INSTRUCTION NO. 18.
 6            THE COURT:  YES.
 7            MR. HARRIGAN:  THE SUBPARAGRAPHS WOULD BE THE SAME
 8     MODIFICATIONS, IT SHOULD READ, SUBPARAGRAPH A, EXPORT OR
 9     SUPPLY.  AND SUBPARAGRAPH B, THE THIRD LINE SHOULD ELIMINATE
10     THE SELLING, JUST BE EXPORTING OR SUPPLYING.
11            THE COURT:  OKAY.
12            MR. HARRIGAN:  AND GOING TO INSTRUCTION NO. 21
13     DEALING WITH THE DESCAMPS ISSUE, AND WITH THE, AGAIN, EXPORT
14     OR SUPPLY, THERE ARE CHANGES THAT NEED TO BE MADE TO BOTH
15     SUBPARAGRAPHS A AND B OF THE FIRST ELEMENT, AS WELL AS SOME
16     OTHER MINOR CHANGES.
17            THE COURT:  SO THAT WOULD BE AT THE BOTTOM OF 21,
18     AND ON TO THE NEXT.
19            MR. CAMDEN:  IF I COULD INTERJECT JUST FOR A SECOND.
20            THE COURT:  YES.
21            MR. CAMDEN:  THIS IS COUNTS 3 AND 4?
22            THE COURT:  YES.
23            MR. CAMDEN:  COUNTS 3 AND 4 THE INDICTMENT SAYS
24     KNOWINGLY AND WILLFULLY ATTEMPT TO EXPORT, SELL AND SUPPLY
25     MARINE NAVIGATION EQUIPMENT.
```

APRIL 21, 2015

```
 1            IT DOESN'T SAY ATTEMPT TO ENGAGE IN TRANSACTIONS

 2   WHICH ARE INTENDED TO AVOID OR EVADE, THAT REQUIREMENT.

 3            MR. HARRIGAN:  RIGHT.

 4            MR. CAMDEN:  I THINK PARAGRAPH A IS FINE.  I THINK

 5   PARAGRAPH B OUGHT TO BE TAKEN OUT, AND THAT ALSO WOULD TAKE

 6   OUT THE UNANIMITY INSTRUCTION AT THE END, THE LAST PARAGRAPH.

 7            MR. HARRIGAN:  I AM AGREEING TO TAKE OUT THE -- IT

 8   WILL SIMPLIFY THINGS.

 9            THE COURT:  SO AS TO PARAGRAPH 21, IT WOULD BE -- WE

10   WOULD BE REFERENCING ONLY EXPORT OR SUPPLY THE GOODS.

11            MR. HARRIGAN:  YES.  AND CUT OUT DIRECTLY OR

12   INDIRECTLY.  IT SHOULD BE INDIRECTLY AS CHARGED IN THE

13   INDICTMENT.  WE HAVE ALLEGED THAT THEY WERE GOING INDIRECTLY

14   FROM UNITED STATES TO IRAN, OR THE GOVERNMENT OF IRAN, VIA A

15   THIRD COUNTRY.

16            THE COURT:  THEN REMOVE SUBPARAGRAPH B?

17            MR. HARRIGAN:  YES.  THAT WOULD TAKE AWAY THE

18   NECESSITY TO HAVE --

19            THE COURT:  THE UNANIMITY.

20            MR. HARRIGAN:  UNANIMITY FOR THIS.  BUT WE SHOULD

21   INCLUDE A UNANIMITY FOR WHETHER IT IS EXPORT, SUPPLY.  AND WE

22   HAVE TAKEN LANGUAGE FROM -- FROM 7.9 OF THE NINTH CIRCUIT, WE

23   SUGGEST IN SUBPARAGRAPH A, AFTER VIA THIRD COUNTRY -- IT IS

24   NOT GOING TO BE SUBPARAGRAPH A ANYMORE.

25            THE COURT:  RIGHT.
```

APRIL 21, 2015

```
 1           MR. HARRIGAN:  THAT IT SHOULD READ:  WITH ALL OF YOU
 2   AGREEING AS TO WHETHER DEFENDANT INTENDED TO EXPORT OR SUPPLY,
 3   COMMA, OR BOTH.
 4           THE COURT:  WILL YOU GIVE THAT LANGUAGE TO ME AGAIN?
 5           MR. HARRIGAN:  WITH ALL OF YOU AGREEING AS TO
 6   WHETHER DEFENDANT INTENDED TO EXPORT OR SUPPLY, COMMA, OR
 7   BOTH.
 8           THE COURT:  OKAY.
 9           MR. HARRIGAN:  I THINK THAT COVERS THE DESCAMPS
10   ISSUE.  AND WE HAVE THE SAME DESCAMPS ISSUE IN INSTRUCTION
11   NO. 22.  THAT WOULD BE THE FIRST ELEMENT.
12           THE COURT:  FIRST ELEMENT?
13           MR. HARRIGAN:  YES.  AND THE QUESTION IS -- I THINK
14   IT SHOULD BE AFTER PRIOR TO THOSE ITEMS BEING EXPORTED, COMMA,
15   WITH ALL OF YOU AGREEING AS TO WHETHER DEFENDANT RECEIVED OR
16   BOUGHT OR BOTH.  COMMA, OR BOTH.
17           THE COURT:  WITH ALL OF YOU AGREEING AS TO WHETHER
18   THE DEFENDANT RECEIVED OR BOUGHT, OR BOTH.
19           MR. HARRIGAN:  RIGHT.  IF THEY WANT WE COULD ADD THE
20   MERCHANDISE.  I THINK IT IS SUPERFLUOUS BUT -- TRYING TO CUT
21   DOWN THE WORDING.
22           THE COURT:  OKAY.
23           MR. HARRIGAN:  AND THEN FINALLY --
24           THE COURT:  SO WE WOULD TAKE OUT, THEN, THE LAST
25   PARAGRAPH.
```

APRIL 21, 2015

1245

1          **MR. HARRIGAN:**  I MEAN, WE COULD -- FOR EITHER OF

2    THEM WE COULD PUT IT IN THERE.  WHATEVER THE COURT'S

3    PREFERENCE IS.  I DIDN'T SEE THAT, I AM SORRY.  I WAS FOCUSED

4    ON THE FIRST.

5          **MR. JOHNSTON:**  YOUR HONOR, JUST FOR PURPOSES OF 5

6    AND 6, THOSE ARE NOT CONSPIRACY COUNTS.  AND I THINK WHAT WE

7    HAVE IN THE FINAL PARAGRAPH IS THE WORDING FROM COUNT 1 AND

8    COUNT 2.

9          **THE COURT:**  YES.

10          **MR. JOHNSTON:**  I AM HAPPY WITH THE GOVERNMENT'S

11   LANGUAGE ABOUT WITH ALL AGREEING, AND THEN THIS PARAGRAPH

12   BEING OMITTED.  OTHERWISE WE ARE GOING TO HAVE MORE CONFUSION

13   THAN WE ALREADY ARE GOING TO HAVE.

14          **THE COURT:**  SO THAT LAST PARAGRAPH IN INSTRUCTION 22

15   WE WOULD LEAVE IN:  IT IS SUFFICIENT IF THE GOVERNMENT PROVES

16   BEYOND A REASONABLE DOUBT A CONSPIRACY TO COMMIT AT LEAST ONE

17   OF THE OBJECTS IDENTIFIED IN SUBDIVISIONS A AND B OF JURY

18   INSTRUCTION NO. 18.  HOWEVER, IN ORDER TO RETURN A GUILTY

19   VERDICT YOU MUST UNANIMOUSLY AGREE ON THE OBJECT OR OBJECTS

20   THAT WAS OR WERE THE SUBJECT OF THE CONSPIRACY.

21          REDACT THE NEXT SENTENCE SINCE IT IS ALREADY COVERED

22   IN MR. HARRIGAN'S PROPOSAL.

23          **MR. HARRIGAN:**  I DON'T THINK WE NEED ANY OF THOSE

24   PARAGRAPHS, THEY ARE NOT TALKING ABOUT A CONSPIRACY HERE.

25          **MR. CAMDEN:**  RIGHT, YOUR HONOR.  THIS IS COUNTS 5

APRIL 21, 2015

1  AND 6, THEY ARE SUBSTANTIVE COUNTS.

2          **MR. HARRIGAN:**  THEY ARE SUBSTANTIVE COUNTS.

3          **THE COURT:**  OKAY.

4          **MR. HARRIGAN:**  THAT SHOULD HAVE APPEARED IN THE

5  CONSPIRACY COUNT FOR COUNT 2.

6          **THE COURT:**  SO IN INSTRUCTION 22, THE ENTIRE LAST

7  PARAGRAPH WOULD COME OUT.

8          **MR. HARRIGAN:**  YES.  AND IT PROBABLY SHOULD BE --

9  BUT I THINK YOU ALREADY TOOK CARE OF THAT IN THE GENERAL

10  CONSPIRACY INSTRUCTION.

11          **THE COURT:**  YES.

12          **MR. HARRIGAN:**  THAT APPLIES TO BOTH.

13          **THE COURT:**  YES.

14          **MR. CAMDEN:**  YOUR HONOR, WE STILL DO HAVE A

15  UNANIMITY.  SO THERE IS -- BUY OR RECEIVE WAS TAKEN CARE OF,

16  BUT THIS INSTRUCTION REFERS BACK TO JURY INSTRUCTION 18 FOR

17  THE SECOND ELEMENT.  AT THE TIME HE RECEIVED OR BOUGHT THE

18  MERCHANDISE HE KNEW THAT THOSE ITEMS WERE INTENDED FOR

19  EXPORTATION CONTRARY TO THE LAWS OF THE UNITED STATES.  REFER

20  TO JURY INSTRUCTION 18.

21          JURY INSTRUCTION 18 STILL HAS THE A AND B PARAGRAPHS

22  WHICH ARE ALTERNATIVES, I THINK.

23          ONE SOLUTION -- I HAVEN'T -- NOW THAT WE ARE TALKING

24  ABOUT IT, ONE SOLUTION MIGHT BE TO PUT JUST A UNANIMITY

25  INSTRUCTION IN 18, SINCE IT IS DISCUSSING THE TWO DIFFERENT

APRIL 21, 2015

1247

```
 1    ASPECTS OF THE -- BUT IT IS NOT A CHARGE.

 2              MR. HARRIGAN:  AGAIN, THIS IS MY ERROR, YOUR HONOR.

 3    IT CAN BE -- IT CAN BE CONTRARY TO LAW AS IT IS DEFINED UNDER

 4    THE CONSPIRACY OR UNDER INSTRUCTION 18, THE SUBSTANTIVE COUNT.

 5    IT APPLIES TO EITHER ONE.

 6              SO I DON'T KNOW IF WE ARE MAKING IT MORE CONFUSING,

 7    BUT, YOU KNOW, WE JUST HAVE TO SHOW THAT IT WAS A VIOLATION OF

 8    U.S. LAWS OR REGULATIONS.  HERE I AGREE WE HAVE TO PICK THAT,

 9    AND WHAT WE PICKED WERE THE IEEPA VIOLATIONS, WHICH ARE BOTH

10    THE --

11              THE COURT:  SO DO YOU --

12              MR. HARRIGAN:  LET ME THINK ABOUT THIS, YOUR HONOR.

13    AND IT SHOULD BE 17 AND 18, REALLY.

14              THE COURT:  SO INSTRUCTION NO. 22, IN THE SECOND

15    ELEMENT, DO YOU AGREE, MR. CAMDEN, THAT WE SHOULD REFERENCE

16    BOTH JURY INSTRUCTION 17 AND 18?

17              MR. CAMDEN:  I DON'T THINK SO, YOUR HONOR, BECAUSE

18    COUNT 5 -- SO COUNT 5 IS RECEIVING OR BUYING WITH THE

19    UNANIMITY, THE NAVIGAT-2100 -- KNOWING THE SAME TO BE INTENDED

20    FOR EXPORTATION FROM THE UNITED STATES CONTRARY TO LAW OR

21    REGULATION OF THE UNITED STATES, COMMA, TO WIT, THAT IS

22    WITHOUT HAVING FIRST OBTAINED THE AUTHORIZATION FROM OFAC IN

23    VIOLATION OF TITLE 50, SECTIONS 1702 AND 1705, AND TITLE 31,

24    SECTIONS .203 AND .204.

25              I STILL THINK THOSE ARE -- .203 AND .204 AT THE END
```

APRIL 21, 2015

```
 1   OF THE TEXT OF COUNT 5 ARE STILL ALTERNATIVES THAT THE JURY
 2   HAS GOT TO BE TOLD THEY HAVE TO REACH ONE OF THOSE TWO
 3   UNANIMOUSLY, OR BOTH.
 4           THE COURT:  SO --
 5           MR. HARRIGAN:  THERE DOESN'T HAVE TO BE A UNANIMITY
 6   INSTRUCTION ON THE VIOLATION OF THE LAW, THEY JUST HAVE TO
 7   AGREE THAT IT WAS IN VIOLATION OF THE LAW.  I DON'T THINK WE
 8   NEED TWO UNANIMITY INSTRUCTIONS FOR THAT.
 9           THE COURT:  SO ARE YOU SUGGESTING THAT SIMPLY A
10   REFERENCE TO INSTRUCTION 18 IS SUFFICIENT?
11           MR. HARRIGAN:  I THINK IT SHOULD BE A REFERENCE TO
12   SECTION 17 AND 18.  THAT CAN BE DONE THERE OR IT CAN BE DONE
13   ELSEWHERE.  BUT 17 IS THE CONSPIRACY, 18 IS THE GENERAL.
14           THE COURT:  RIGHT.
15           MR. CAMDEN:  FOR THAT, THOUGH, YOUR HONOR, COUNT 5
16   DOES SAY THE EXPORTATION IS CONTRARY TO LAW.  AND THE ONLY LAW
17   THAT FORBIDS THE EXPORTATION IS 560.204.  DOESN'T SAY CONTRARY
18   TO -- GOING TO BE EXPORTED FROM THE UNITED STATES CONTRARY TO
19   LAW.  I DON'T THINK THAT IS BROAD ENOUGH TO COVER THE
20   CONSPIRACY COUNT AS WELL AS THE SUBSTANTIVE ACTUAL
21   EXPORTATION.
22           MR. HARRIGAN:  THE WAY COUNT 5 READS -- AND I AM NOT
23   GETTING WHAT MR. CAMDEN SAYS -- IS THAT, YOU KNOW, IN
24   VIOLATION OF JUST TITLE 50, UNITED STATES CODE SECTION 1702
25   AND 1705 AND 560.203, .204.
```

APRIL 21, 2015

1240

```
1            BOTH OF THEM REQUIRE -- YOU KNOW, WE HAVE CHARGED
2    BOTH 560.203 AND 560.204.  I REALIZE IN THE ONE SUBSTANTIVE
3    COUNT WHICH DEALS WITH IEEPA WE DIDN'T INCLUDE THAT, BUT FOR
4    THE 554 COUNT WE JUST HAVE TO SHOW IT WAS IN VIOLATION OF
5    IEEPA.  IEEPA INCLUDES BOTH CONSPIRACY AND SUBSTANTIVE
6    CHARGES.  AND THEY CERTAINLY ARE PUT ON NOTICE THAT THERE WE
7    WERE REFERENCING BOTH.  WE DON'T HAVE TO SET OUT THOSE
8    STATUTES IN THE INDICTMENT.
9            AND MY RECOMMENDATION WOULD BE THAT AS DEFINED IN
10   JURY INSTRUCTIONS NOS. 17 AND 18.  THERE IS NO REQUIREMENT OF
11   UNANIMITY FOR DETERMINATION IF THIS IS VIOLATING LAW.  THEY
12   JUST HAVE TO -- IN TERMS OF VIOLATING IEEPA, HE WOULD BE
13   GUILTY EITHER WAY, YOU KNOW.  ONE COULD BE GUILTY BY
14   CONSPIRACY, ONE COULD BE GUILTY BY, YOU KNOW, IF THEY FOUND
15   GENERALLY.
16            MR. JOHNSTON:  BUT, YOUR HONOR -- I DON'T WANT TO
17   TRY TO MAKE THIS MORE CONFUSING, BUT LET'S ASSUME HALF THE
18   JURORS FOUND THAT IT WAS A VIOLATION OF 560.204 AND HALF OF
19   THEM FELT IT WAS A VIOLATION OF 560.203, IN WHICH CASE UNDER
20   THE CONSPIRACY COUNT AS INSTRUCTED THEY COULDN'T REACH A
21   GUILTY VERDICT.
22            IF WE GET TO 554, COUNT 5, AND WE HAVE THE SAME
23   JURORS DIVIDED, CAN'T AGREE ON WHICH ONE WAS VIOLATED, IT
24   CAN'T BE THE THEORY OF THE GOVERNMENT THAT THEY CAN STILL
25   CONVICT UNDER 554 IF THEY HAVEN'T AGREED ON WHICH ONE OF THOSE
```

APRIL 21, 2015

1250

```
 1   HE VIOLATED.

 2            I THINK THAT IS THE PROBLEM.  YES, IT IS CONFUSING;

 3   BUT I DON'T THINK WE CAN ANSWER IT BY SUGGESTING THAT A

 4   DIVIDED JURY ON WHICH MAY NOT HAVE BEEN VIOLATED.

 5            MR. HARRIGAN:  I THINK THE PROBLEM WE HAVE HERE IS

 6   THAT THERE IS REALLY NOT A QUESTION FOR THE JURY TO DECIDE

 7   HERE AS WHICH ONE THEY VIOLATED THERE, HE JUST HAS TO KNOW

 8   THEY WERE -- THAT THEY WERE INTENDED FOR EXPORTATION CONTRARY

 9   TO LAW OF THE UNITED STATES.

10            AND THE FACT IS THAT IT IS -- WE JUST HAVE TO SHOW

11   THAT IT VIOLATED IEEPA.  WE ALREADY SHOWED THAT.  THEY DIDN'T

12   HAVE -- ANYBODY WHO EXPORTED THIS DID NOT HAVE A LICENSE, IF,

13   IN FACT IT WAS GOING TO IRAN.  ALL RIGHT.  THE FACT THAT HE

14   ACTED WILLFULLY IS WHAT COVERS ANY CONCERNS THEY HAVE.

15            SO, IN OTHER WORDS, THE ELEMENT, COUNT 2, WE JUST

16   HAVE TO PROVE THAT HE KNEW THE ITEMS WERE INTENDED FOR

17   EXPORTATION, CONTRARY TO LAWS OF THE UNITED STATES, ALL RIGHT,

18   AS DEFINED.  IT IS NOT REQUIRED THAT HE KNOW -- OR THE

19   GOVERNMENT -- OR THE JURY FIND THAT HE KNEW WHICH ONES IT

20   VIOLATED.  ALL RIGHT.  THAT WOULD MAKE THE SAME PROBLEM WE

21   HAVE WITH WILLFULLY.  OKAY.

22            SO THEIR ARGUMENT THAT IT REQUIRED A UNANIMITY

23   INSTRUCTION I THINK IS JUST NOT TRUE.  I THINK THAT THE COURT

24   COULD SAY CONTRARY TO LAWS OF THE UNITED STATES AS DEFINED IN

25   JURY INSTRUCTION 17 OR 18, OR 17 AND 18.  THE GOVERNMENT
```

APRIL 21, 2015

```
 1    DOESN'T CARE.  IT JUST -- BOTH OF THEM SHOULD BE REFERRED TO.
 2    AND I THINK IT SHOULD BE 17 AND 18 IS HOW IT SHOULD READ.
 3              AND WE WILL ARGUE THAT WE ALREADY KNOW THAT.  WE
 4    ALREADY KNOW IT WAS GOING CONTRARY -- HE KNEW IT WAS CONTRARY
 5    TO LAW.  AND WHAT WE MEAN BY CONTRARY TO LAW HERE IS THAT IT
 6    COULDN'T GO.  WE KNOW THAT.  AND THE QUESTION IS, DID HE ACT
 7    WILLFULLY.  AND MORE IMPORTANTLY THE ISSUE HERE, DID HE KNOW
 8    IT WAS GOING TO IRAN.
 9              THE COURT:  ANYTHING ELSE?
10              MR. CAMDEN:  I THINK WE WILL STAND ON WHAT WE SAID
11    SO FAR, YOUR HONOR.
12              THE COURT:  OKAY.  I WILL MAKE A NOTE OF THAT.
13              STAYING WITH THE GOVERNMENT, IS THERE ANYTHING ELSE
14    GOING ON FROM NO. 23?
15              MR. HARRIGAN:  WITH 23, NO, YOUR HONOR.
16              IT HAS TO BE 56(H).
17              THE COURT:  56 --
18              MR. HARRIGAN:  LINE 3.
19              THE COURT:  (H)(2)(A)?
20              MR. HARRIGAN:  NO.  IT IS (H) AND --
21              MR. COUGHLIN:  57 SHOULD COME OUT.  IT SHOULD BE
22    1956(H) INSTEAD OF 1957.
23              THE COURT:  TELL ME THAT AGAIN.  57 COMES OUT?
24              MR. COUGHLIN:  IT SHOULD READ 1956(H), CONSISTENT
25    WITH THE INDICTMENT, WHICH IS A CONSPIRACY CHARGE, COUNT 7.
```

APRIL 21, 2015

```
 1          THE COURT:  OKAY.
 2          MR. HARRIGAN:  AND 24 IS THE FINAL, I THINK,
 3   MODIFICATION.  AGAIN, DEFENSE COUNSEL AND THE UNITED STATES
 4   WERE TRYING TO FIGURE OUT WHETHER THIS NEEDED ANOTHER
 5   UNANIMITY.
 6          WE SEARCHED, AND I DON'T THINK EITHER PARTY CAN FIND
 7   THE DIFFERENCE BETWEEN TRANSMITTING OR TRANSFERRING FUNDS.
 8   YOU KNOW, I SUGGESTED THAT IF THEY WANT WE CAN PICK TRANSFER,
 9   AS LONG AS DEFENSE COUNSEL AGREES THAT THEY HAVE, ESSENTIALLY,
10   I THINK, THE SAME MEANING.
11          IT IS A WIRE TRANSFER BUT IT IS ELECTRONICALLY
12   TRANSMITTED, OR ARGUABLY ELECTRONICALLY -- THERE ARE THREE
13   DESCRIPTIONS:  TRANSPORTATION, TRANSMISSION OR A TRANSFER.
14   AND WE TOOK OUT TRANSPORT.  THEY ARE NOT PHYSICALLY
15   TRANSPORTING, IT IS BEING TRANSMITTED.  IT IS CALLED A WIRE
16   TRANSFER CONFIRMATION FORM, OR TRANSFER CONFIRMATION FORM.
17          SO IF DEFENDANT DOES NOT WANT TO AGREE TO, YOU KNOW,
18   WE CAN USE ONE THEN -- AND THEY STILL BELIEVE THERE IS A
19   DESCAMPS ISSUE WITH THIS, THEN WE WOULD RECOMMEND THAT THE
20   COURT PUT IN THE FOLLOWING LANGUAGE AFTER THE FIRST ELEMENT:
21   WITH ALL OF YOU AGREEING AS TO WHETHER DEFENDANT TRANSMITTED
22   OR TRANSFERRED, COMMA, OR BOTH.
23          MR. JOHNSTON:  YOUR HONOR, I WOULDN'T WANT TO BE ONE
24   TO SECOND GUESS CONGRESS OR THEIR DECISION TO INCLUDE WORDS
25   THAT APPARENTLY MADE A DIFFERENCE IN WRITING THE STATUTE.
```

APRIL 21, 2015

```
1              MR. HARRIGAN:  OKAY.

2              MR. JOHNSTON:  BUT, HONESTLY, I DON'T KNOW, BASED ON

3    THE DEFENSE PRESENTED, WHAT DEFENSE I WOULD MAKE THAT WOULD

4    MAKE A DISTINCTION BETWEEN TRANSMITTING AND TRANSFER.

5              THE COURT:  ARE YOU --

6              MR. JOHNSTON:  IF THE GOVERNMENT ELECTS, I DON'T

7    THINK THEY ARE GOING TO FIND ANY PROBLEM WITH ANY ARGUMENT I

8    MAKE ABOUT THE NATURE OF THIS COUNT.  BUT IF THEY ARE

9    CONCERNED ABOUT THAT, WE CAN PUT IN THE UNANIMITY.  BUT,

10   HONESTLY, I CAN'T SIT HERE AND THINK OF AN ARGUMENT THAT I CAN

11   MAKE TOMORROW THAT WOULD DISTINGUISH THOSE TWO WORDS.

12             THE COURT:  MR. HARRIGAN, WHAT WOULD YOU LIKE TO DO?

13             MR. HARRIGAN:  WELL, I DON'T HEAR HIM AGREEING TO

14   WHAT I WANT HIM TO AGREE TO, WHICH IS THIS IS NOT SOMETHING WE

15   ARE -- WE ARE NOT CLAIMING A DESCAMPS ISSUE HERE, BECAUSE HIS

16   FIRST STATEMENT WAS ACT OF CONGRESS.

17             IF THEY ARE NOT GOING TO AGREE TO THAT, THEN WE WILL

18   HAVE TO INCLUDE IT IN.  I AM GOOD WITH THAT.  IF THEY HAVE TO

19   PRESERVE THE ISSUE, THAT IS FINE.  WE UNDERSTAND THAT.

20             I THINK THAT COVERS IT FOR THE INSTRUCTIONS, YOUR

21   HONOR, FOR THE GOVERNMENT, INCLUDING THE WILLFULLY.  I HAVE

22   THROWN UP THE FLAG, BELIEVE IT OR NOT.

23             THE COURT:  SO AS TO THE UNANIMITY IT WOULD BE WITH

24   ALL OF YOU AGREEING AS TO WHETHER THE DEFENDANT TRANSMITTED OR

25   TRANSFERRED, OR BOTH.
```

APRIL 21, 2015

1254

```
 1            MR. HARRIGAN:  RIGHT.

 2            THE COURT:  OKAY.  SO THAT'S IT FOR THE GOVERNMENT.

 3            MR. HARRIGAN:  THAT'S IT FOR THE GOVERNMENT, YOUR

 4    HONOR.

 5            THE COURT:  HOW ABOUT FOR THE DEFENSE?

 6            MR. CAMDEN:  IF WE CAN JUST GO IN ORDER.

 7            THE COURT:  YES.

 8            MR. CAMDEN:  SO STARTING WITH COURT'S INSTRUCTION --

 9    I DIDN'T BRING THIS UP LAST TIME.  THE COURT'S INSTRUCTION 4

10    ON REASONABLE DOUBT.  AND I DID SUBMIT --

11            THE COURT:  YES.

12            MR. CAMDEN:  -- ONE THAT I DRAFTED BASED ON THAT

13    THAT INCLUDES EXTRA LANGUAGE.

14            TO EXPLAIN A LITTLE BIT, THE PROBLEM WE GET A LOT IS

15    THE GOVERNMENT, DURING CLOSING ARGUMENT, SAYS -- MENTIONS

16    COMMON SENSE.  AND WE HEAR IT TO MEAN THEY ARE TELLING THE

17    JURY TO USE THEIR COMMON SENSE TO FIND THE DEFENDANT GUILTY;

18    AND THEY SAY THEY ARE JUST USING IT TO USE COMMON SENSE,

19    WHETHER IT IS A REASONABLE DOUBT.  AND IT IS A GRAY AREA AND

20    EVERYBODY GETS -- IT DRAWS A LOT OF OBJECTIONS AND THERE IS A

21    LOT OF AMBIGUITY IN IT.

22            SO I THINK WHAT I DRAFTED -- I THINK THE REASON THAT

23    AMBIGUITY IS THERE IS IN THIS INSTRUCTION IT TELLS THEM ON THE

24    ONE HAND REASONABLE DOUBT IS A DOUBT THAT IS BASED ON REASON

25    AND COMMON SENSE, BUT IT IS ALSO NOT BASED ON SPECULATION.
```

APRIL 21, 2015

1255

```
 1              AND SPECULATION REALLY CAN HAVE TWO DIFFERENT TYPES

 2    OF CONNOTATIONS.  SPECULATION CAN BE, WELL, MAYBE ALIENS CAME

 3    AND IMPLANTED HIM WITH A MIND CONTROL DEVICE, AND THEREFORE HE

 4    DIDN'T KNOW WHAT HE WAS DOING.

 5              OBVIOUSLY THAT IS MAYBE TECHNICALLY A DOUBT IF IT IS

 6    NOT IMPOSSIBLE, BUT IT IS NOT A REASONABLE DOUBT BECAUSE IT

 7    DEFIES COMMON SENSE.  SO THAT IS THE TYPE OF SPECULATION THAT

 8    THE JURY IS NOT ALLOWED TO ENGAGE IN.

 9              WHEN A DOUBT IS BASED ON LACK OF EVIDENCE, THE ONLY

10    WAY THAT CAN CREATE A DOUBT, WITH LACK OF EVIDENCE, IS IF THEY

11    ARE SPECULATING THAT THIS COULD HAVE HAPPENED AND IT IS A

12    REASONABLE OR COMMON SENSE EXPLANATION OF THE EVENTS THAT

13    OCCURRED.

14              SO I THINK WHAT I DRAFTED TRIED TO CUT IN BETWEEN

15    THOSE TO EXPLAIN REALLY THE ROLE OF COMMON SENSE HERE IS TO

16    EVALUATE WHETHER OR NOT THE DOUBT YOU HAVE IS REASONABLE.  YOU

17    CAN'T FIND THE DEFENDANT GUILTY JUST BASED ON YOUR -- COMMON

18    SENSE TELLS ME HE IS GUILTY.  BUT THEY CAN -- THEY ALSO CAN'T

19    FIND HIM NOT GUILTY BASED ON A DOUBT THAT OFFENDS COMMON SENSE

20    OR IS WILD SPECULATION.

21              THAT IS WHERE I TRIED TO STRIKE THAT BALANCE.

22              **THE COURT:**  ON THOSE PROPOSED INSTRUCTIONS, I AM

23    GOING TO RESPECTFULLY DECLINE TO GIVE THEM AND STAY WITH THE

24    PATTERN INSTRUCTIONS FOR REASONABLE DOUBT, AS WELL AS

25    CIRCUMSTANTIAL EVIDENCE AND THE OTHER ONES THAT WERE PROPOSED.
```

APRIL 21, 2015

1256

```
 1          MR. CAMDEN:  MOVING ON, THEN, TO -- I THINK COURT'S
 2   NO. 15 REFERRED TO EXPERT TESTIMONY.  AND I DON'T REMEMBER
 3   EXACTLY BUT I DON'T BELIEVE ANYBODY WAS QUALIFIED AS AN
 4   EXPERT.  THERE WERE GOING TO BE, POSSIBLY, BUT NOBODY WAS.
 5          THE COURT:  THE GOVERNMENT DESIGNATED OR MENTIONED
 6   OR I GUESS GAVE NOTICE THAT THERE COULD BE POTENTIAL EXPERT
 7   TESTIMONY, ALTHOUGH THEY DIDN'T BELIEVE IT REALLY QUALIFIED AS
 8   EXPERT TESTIMONY, BUT IN AN ABUNDANCE OF CAUTION GAVE THAT
 9   NOTICE.
10          DO WE NEED IT?
11          MR. HARRIGAN:  I DON'T HAVE ANY -- I DON'T PLAN TO
12   TALK ABOUT AN EXPERT.  I MEAN, REALLY, THE ONLY ONE THAT MIGHT
13   BE AN EXPERT IS MOLLY MILLER.
14          THE COURT:  SO YOU ARE REQUESTING THAT IT NOT BE
15   GIVEN?
16          MR. CAMDEN:  I DON'T THINK IT IS NECESSARY, YOUR
17   HONOR.
18          THE COURT:  OKAY.  THEN I WILL RENUMBER THESE.  SO
19   9.1 WILL BECOME 10.  AND THEN I WILL RENUMBER THESE, AND THEN
20   IT WILL CATCH UP SO THAT WE DON'T -- AS TO THE KEY
21   INSTRUCTIONS WE CAN STAY WITH THE SAME NUMBERS.
22          MR. CAMDEN:  JUST GOING WITH -- JUST FOR EVERYBODY'S
23   REFERENCE, GOING WITH THE COURT'S ORIGINAL NUMBERING SO I
24   DON'T HAVE TO SIT HERE AND RENUMBER, IF THAT IS OKAY.
25          MR. HARRIGAN:  THAT WAS 15, YOUR HONOR, IS THAT
```

APRIL 21, 2015

```
 1   RIGHT?  THE ONE WE ARE STRIKING?
 2          THE COURT:  YES.  WE WILL TAKE OUT 15, RENUMBER 9.1
 3   TO 10, AND FOLLOW THAT THROUGH.  SO WHEN WE GET TO INSTRUCTION
 4   16 THE NUMBERING WILL REMAIN THE SAME.
 5          MR. HARRIGAN:  OKAY.
 6          MR. CAMDEN:  GOT IT.
 7          MR. HARRIGAN:  THAT MAKES SENSE.
 8          THE COURT:  MR. CAMDEN, WHAT ABOUT ON 16 THROUGH 28?
 9          HERE, AS TO THE DEFENDANT'S PROPOSED, I HAVE TRIED
10   TO ADDRESS -- A LOT OF THIS, I AGREE WITH MR. HARRIGAN, WAS
11   SUBSTANTIVELY THEY WERE VERY SIMILAR BUT IT WAS KIND OF A
12   STRUCTURAL ISSUE OF HOW BEST TO PRESENT ANY INSTRUCTIONS TO
13   SIMPLIFY IT FOR THE JURY, AND SO I AM DECLINING TO GIVE THE
14   DEFENSE INSTRUCTIONS.
15          I THINK THE COURT'S PROPOSAL IS CLEAR, RELATIVELY
16   STRAIGHTFORWARD.  SOME OF THE DEFENSE INSTRUCTIONS, I THINK,
17   WERE ARGUMENTATIVE AND LACKED THE CLARITY, I THINK, OF THE
18   COURT'S PROPOSED INSTRUCTIONS.
19          SO WITH THAT ARE THERE ANY SPECIFIC SUBSTANTIVE
20   OBJECTIONS TO THESE?
21          MR. CAMDEN:  YES, YOUR HONOR.
22          NO. 17, I BELIEVE -- WELL, ALL OF THE ONES RELATING
23   TO IEEPA THAT REFER TO IRAN OR THE GOVERNMENT OF IRAN.
24          THE COURT:  YES.
25          MR. CAMDEN:  IN OUR -- THE DISTINCTION I AM WORRIED
```

APRIL 21, 2015

1   ABOUT MAKING CLEAR TO THE JURY IS PRIVATE IRANIAN CITIZENS OR

2   PRIVATE IRANIAN COMPANIES -- PRIVATE IRANIAN COMPANIES ARE NOT

3   INCLUDED WITH THAT DEFINITION, THAT IT HAS TO BE THE COUNTRY

4   ITSELF, MEANING THE TERRITORY, OR THE GOVERNMENT.

5          AND JUST THE WORD IRAN BY ITSELF, SOME PEOPLE MIGHT

6   INCLUDE, WELL, IRAN INCLUDES THE COUNTRY AND THE CITIZENS AND

7   THE PEOPLE AND THE CORPORATIONS.

8          **THE COURT:**  THAT ISSUE WILL BE CLEAR WITH THE

9   ARGUMENT.  BUT IF THERE IS SOME -- FOR SOME REASON AT THE END

10  OF ARGUMENT YOU BELIEVE THERE IS SOME AMBIGUITY, THEN I WILL

11  ADDRESS IT.

12         **MR. CAMDEN:**  I THINK WITHOUT -- DURING ARGUMENT

13  WITHOUT AN INSTRUCTION TO REFER TO TO SAY, YOU KNOW, EVEN IF

14  THIS STUFF WAS GOING TO A PRIVATE IRANIAN CITIZEN, IT STILL

15  DOESN'T MATTER, HE IS NOT GUILTY UNLESS IT WAS ACTUALLY GOING

16  TO THE TERRITORY OR THE GOVERNMENT.

17         SO I THINK WE NEED AN INSTRUCTION JUST TO BE ABLE TO

18  TELL THE JURY, THIS IS NOT JUST ME, THE LAWYER, TELLING YOU

19  SOMETHING, THIS IS WHAT THE LAW IS, AS THE JUDGE HAS TOLD YOU.

20         IT IS THE LAW.  I MEAN, THAT IS THE DEFINITION OF

21  IRAN.  SO I THINK THAT IS A CLEAR DISTINCTION THAT SHOULD BE

22  MADE TO THE JURY BEFORE ARGUMENTS ARE MADE.

23         **MR. HARRIGAN:**  I DON'T PLAN TO ARGUE THAT IF THEIR

24  DEFENSE THAT IT WAS GOING TO AN IRANIAN COMPANY, LIKE I THINK

25  THEY TRIED TO IMPLY AT LEAST THROUGH ERGUN YILDIZ' STATEMENTS,

APRIL 21, 2015

```
1    AND MAYBE THEY MAY TRY TO DEVELOP THROUGH FURTHER REDIRECT OF
2    THEIR OWN CLIENT, THAT IF IT WAS GOING TO AN IRANIAN PERSON IN
3    DUBAI THAT'S NOT SUFFICIENT FOR THE GOVERNMENT.  OUR ARGUMENT
4    WILL BE IT WAS GOING TO IRAN OR THE GOVERNMENT OF IRAN.
5             AND HAVING SAID THAT, AGAIN I CAUGHT ANOTHER TYPO,
6    PROBABLY FROM MY DRAFT, YOUR HONOR.  IT IS ON THE LAST PAGE OF
7    17.  THAT SHOULD READ IRAN OR, NOT IRAN AND.  INSTRUCTION
8    NO. 17.
9             THE COURT:  YES.  OKAY.
10             MR. CAMDEN.
11             MR. CAMDEN:  SO THAT OBJECTION WOULD APPLY TO ANY
12    MENTION -- INSTEAD OF GOING THROUGH AND MENTIONING EVERY PLACE
13    WHERE THIS IRAN AND THE GOVERNMENT OF IRAN HAPPENS, THAT IS
14    OUR REQUESTED --
15             THE COURT:  YES.
16             MR. CAMDEN:  -- DEFINITION OF IRAN.
17             NEXT IS, I BELIEVE, COURT'S INSTRUCTION NO. 20.  AND
18    OUR CORRESPONDING INSTRUCTIONS ON THIS WERE 15 AND 14.  IT IS
19    ACTUALLY THE SECOND PAGE OF 20, THE LAST PARAGRAPH.
20             THE COURT:  YES.
21             MR. CAMDEN:  THE LAST SENTENCE:  THERE CAN BE NO
22    CONSPIRACY WHEN THE ONLY PERSON WITH WHOM THE DEFENDANT
23    ALLEGEDLY CONSPIRED WAS A GOVERNMENT AGENT WHO SECRETLY
24    INTENDED TO FRUSTRATE THE CONSPIRACY.
25             I AM NOT SURE THAT FULLY STATES THE ROLE THAT
```

APRIL 21, 2015

1260

1    UNDERCOVER AGENTS COULD POSSIBLY PLAY IN A CONSPIRACY.  SO IF

2    THEY FIND THAT THERE IS SOME KIND OF AGREEMENT AND THEN THE

3    ONLY -- SAY BETWEEN TWO PEOPLE, TWO NON AGENTS AND ONE

4    UNDERCOVER AGENT.  AND THE ONLY EVIDENCE THEY HAVE THAT THE

5    OBJECT OF THE CONSPIRACY OR THE -- WAS ONE THING COMES FROM

6    THAT AGENT BEING INVOLVED, I THINK IT WOULD STILL HAVE TO VOTE

7    NOT GUILTY BECAUSE THE AGREEMENT HAS TO BE BETWEEN TWO NON

8    AGENTS.

9            SO GIVEN THE NUMBER OF PEOPLE INVOLVED IN THIS

10   CASE -- THERE IS TIG MARINE AS A CORPORATION, WE HAVE HEARD

11   SOME EVIDENCE OF OTHER EMPLOYEES, AND IT INCLUDES PERSONS

12   CHARGED AND UNCHARGED.  BUT EVEN THE NAMED DEFENDANTS ARE

13   ERGUN YILDIZ, KOORUSH TAHERKHANI AND OUR CLIENT, AND THEN THE

14   TWO UNDERCOVER OFFICERS THAT WE HEARD FROM SO FAR.  GIVEN THE

15   NUMBER OF PEOPLE INVOLVED, I THINK THE INSTRUCTION IS TOO

16   NARROW WHEN IT SAYS THERE IS NO CONSPIRACY WHEN THE ONLY

17   PERSON WITH WHOM THE DEFENDANT CONSPIRED.

18           THAT IS TRUE AS FAR AS IT GOES, BUT ALSO I THINK

19   THEY SHOULDN'T BE ALLOWED TO CONSIDER THE AGREEMENT WITH OR

20   BETWEEN THE AGENTS AS PROVIDING ANY KIND OF BASIS FOR THE

21   CONSPIRACY, EVEN IF IT EXISTS INDEPENDENT.  THEY HAVE TO FIND

22   IT INDEPENDENT OF THE AGENTS' INVOLVEMENT, IS WHAT I AM

23   SAYING.

24           **THE COURT:**  WHAT ABOUT WHEN READ IN CONJUNCTION WITH

25   INSTRUCTION 25, MAKES CLEAR THAT IT HAS TO BE A PERSON OTHER

APRIL 21, 2015

```
 1    THAN AN UNDERCOVER AGENT AND THE LAST PARAGRAPH ALSO --

 2              MR. CAMDEN:  WELL, THIS INSTRUCTION IS SPECIFIC,

 3    THOUGH, TO THE AIDING AND ABETTING ON COUNTS 3, 4, 5, 6, 8 AND

 4    9.  AND INSTRUCTION 20 IS ONLY SPECIFIC TO THE CONSPIRACY

 5    COUNTS, WHICH ARE 1, 2, AND I THINK 7.

 6              SO IF THE JURY IS GOING THROUGH COUNT BY COUNT AND

 7    THEY CAN JUST SEE, OH, THIS INSTRUCTION DOESN'T APPLY TO THAT

 8    COUNT, I THINK THERE COULD BE SOME CONFUSION THERE.  THEY

 9    WOULDN'T KNOW NECESSARILY THAT AN INSTRUCTION RELATING TO

10    COUNTS 3, 4, 5, 6, 8 AND 9 WOULD APPLY TO CONSPIRACY FOR

11    COUNTS 1, 2 AND 7.

12              THE COURT:  WHAT LANGUAGE DO YOU PROPOSE?

13              MR. CAMDEN:  IT WAS OUR INSTRUCTIONS NO. 15 -- OR

14    14.  SORRY.

15              THE COURT:  14?

16              MR. CAMDEN:  FOR 14 I QUOTED, FOR THE FIRST

17    PARAGRAPH, WAS JUST A QUOTE DIRECTLY FROM THE MODEL

18    INSTRUCTIONS 8.26.

19              THE COURT:  THAT'S THE ONE I ADOPTED.

20              MR. CAMDEN:  RIGHT.  AND THEN THE EXPLANATION, WHICH

21    I PUT IN BRACKETS BELOW THAT, WAS THE CASE SPECIFIC

22    INSTRUCTION REGARDING THE INVOLVEMENT OF THE UNDERCOVER AGENTS

23    IN CONSPIRACIES.

24              MR. HARRIGAN:  THAT TELLS THEM NOT CONSIDER ANY

25    EVIDENCE OF WHAT WAS SAID TO AGENT HELSING OR AGENT COLE.
```

APRIL 21, 2015

1262

1     THAT IS CONFUSING, YOUR HONOR.

2              **THE COURT:**  I AGREE, THAT IS WHY I DIDN'T --

3              **MR. CAMDEN:**  YOUR HONOR, I AM OPEN TO EVEN CHANGING.

4     I DIDN'T SAY YOU CAN'T CONSIDER ANY EVIDENCE OF WHAT THEY SAID

5     AND WHETHER THE PERSON AGREED WITH IT; I SAID YOU CAN'T

6     CONSIDER ANY AGREEMENT WITH OR BETWEEN THOSE INDIVIDUALS.

7     THAT IS JUST MAKING SURE THAT AN AGREEMENT BETWEEN THOSE

8     PEOPLE IS NOT A FOUNDATION FOR A FINDING OF CONSPIRACY.

9              **THE COURT:**  THAT AN AGREEMENT BETWEEN TWO UNDERCOVER

10    AGENTS.

11             **MR. CAMDEN:**  OR BETWEEN AN UNDERCOVER AGENT AND ANY

12    OTHER INDIVIDUAL.

13             **THE COURT:**  RIGHT.  RIGHT.

14             **MR. CAMDEN:**  THEY ARE SEVERED FROM THE POSSIBILITY

15    OF BEING CONSIDERED AS THE BASIS FOR A CONSPIRACY, OR THEIR

16    INVOLVEMENT.  THEY ARE NOT CONSPIRATORS.

17             **MR. HARRIGAN:**  ANY AGREEMENT WITH OR BETWEEN THOSE

18    INDIVIDUALS, WHETHER IT WAS A CONSPIRACY TO VIOLATE THE LAWS.

19             THERE WERE AGREEMENTS WITH THE UNDERCOVER AGENTS

20    WHICH SHOWS THAT THERE WAS A MEETING OF MINDS WITH OTHER

21    PEOPLE.  I AM NOT ARGUING THAT THEY CONSPIRED, IT IS EVIDENCE

22    THAT THERE WAS A CONSPIRACY.  I STILL HAVE TO SHOW AN

23    AGREEMENT BETWEEN TWO PEOPLE.

24             **THE COURT:**  RIGHT.

25             **MR. HARRIGAN:**  I KNOW WHAT THEY ARE SAYING BUT WHAT

APRIL 21, 2015

```
 1    THEY ARE SAYING IS CREATING ANOTHER HURDLE THAT WOULD PRECLUDE

 2    THE JURY FROM CONSIDERING COMPETENT, RELEVANT EVIDENCE.

 3              THE COURT:  OKAY.  WHAT ELSE?

 4         MR. CAMDEN:  THE NEXT, YOUR HONOR, THE COURT DIDN'T

 5    INCLUDE AN INSTRUCTION ON MULTIPLE CONSPIRACIES.  IT IS OUR

 6    NO. 15, THE NEXT ONE.

 7              AGAIN, JUST GIVEN THE NUMBER OF PLAYERS IN THIS

 8    CASE, THE DIFFERENT GOALS OF EACH PLAYER AND ORGANIZATION, I

 9    THINK IT IS NECESSARY TO CLARIFY TO THE JURY THAT IT IS

10    POSSIBLE THAT MULTIPLE CONSPIRACIES CAN EXIST.

11              AND ESPECIALLY, I MEAN, IT IS NOT JUST THE NUMBER OF

12    PEOPLE, IT IS NOT JUST THE DIFFERENT GOALS OF ALL OF THE

13    DIFFERENT ACTORS, IT IS ALSO THE DISCUSSION OF ITAR AND A

14    POSSIBLE CONSPIRACY, IF THERE WAS ONE, TO VIOLATE THE

15    MUNITIONS EXPORT LAWS AS OPPOSED TO IEEPA.

16              SO I THINK IT IS A GENERAL INSTRUCTION THAT IS

17    DIRECTLY FROM THE NINTH CIRCUIT MODEL UNEDITED.  AND I THINK

18    IT IS NECESSARY.

19              THE COURT:  WHAT IS THE PATTERN INSTRUCTION?

20         MR. CAMDEN:  I THOUGHT I PUT IT IN THERE.  I

21    APOLOGIZE, YOUR HONOR.

22         MR. HARRIGAN:  I THINK IT IS 8.22, YOUR HONOR.  AND

23    THE FOOTNOTE TO IT SAYS IT IS INTENDED FOR NOT WHERE THERE ARE

24    MULTIPLE -- MULTIPLY CHARGED CONSPIRACIES BUT WHERE THERE IS A

25    SINGLE CONSPIRACY WHERE THERE MAY BE MULTIPLE -- ARGUMENT OF
```

APRIL 21, 2015

1   MULTIPLE -- THE ONLY ARGUMENT THEY HAVE MADE IN THE PAST IS

2   THERE ARE TWO SEPARATE CONSPIRACIES INVOLVING -- WHICH THEY

3   MADE IN THE MOTION FOR SEVERANCE -- THE Y-690 AND THE

4   NAVIGAT-2100, WHICH THIS COURT REJECTED.

5          AGAIN, THE FACTS DON'T WARRANT THAT INSTRUCTION.

6   AGAIN, IT WOULD BE CONFUSING TO TALK ABOUT MULTIPLE

7   CONSPIRACIES WHEN THERE HAS BEEN -- AT LEAST UNDER THE THEORY

8   OF DEFENSE.  AND I DON'T INTEND THERE IS GOING TO BE ANY

9   ARGUMENT THAT, YOU KNOW, HE WAS AGREEING TO SOMETHING BUT IT

10  WAS A DIFFERENT ONE CHARGED IN THE INDICTMENT.  HE WAS JUST

11  SAYING I WASN'T AGREEING TO A CRIME AT ALL.

12          **THE COURT:**  SO THE CONCERN YOU HAVE IS REFERENCED,

13  AND THE COMMENT IS 8.22 IS USED WHEN THE INDICTMENT CHARGES A

14  SINGLE CONSPIRACY, AND HERE THERE IS A NUMBER OF

15  CONSPIRACIES --

16          **MR. HARRIGAN:**  RIGHT.

17          **THE COURT:**  -- CHARGED.

18          **MR. HARRIGAN:**  RIGHT.

19          **THE COURT:**  OKAY.  WHAT'S NEXT?

20          **MR. CAMDEN:**  GOING BACK TO THE COURT'S.  LET'S SEE,

21  21 WE ALREADY ADDRESSED.

22          **THE COURT:**  YES.

23          **MR. CAMDEN:**  22 THE GOVERNMENT ELECTED -- OR WE HAVE

24  A UNANIMITY REQUIREMENT.

25          24, I THINK, WOULD BE THE NEXT ISSUE.  THE SECOND

APRIL 21, 2015

```
 1    ELEMENT, SO THE PARAGRAPH BEGINNING AT THE END OF THE FIRST
 2    PAGE OF INSTRUCTION 24.
 3            THE COURT:  YES.
 4            MR. CAMDEN:  I WOULD CONTINUE THE ARGUMENT THAT
 5    THERE IS A STILL A UNANIMITY REQUIREMENT AS TO THE -- WHICH
 6    CRIME THIS TRANSMISSION OF FUNDS WAS INTENDED TO PROMOTE.
 7            AND, FIRST, I THINK THERE SHOULD BE AT LEAST A
 8    UNANIMITY INSTRUCTION AT THE END OF THAT.
 9            SECOND, THE INDICTMENT -- SORRY, YOUR HONOR.
10            SO THIS IS COUNTS 8 AND 9.  AND IT SAYS WITH THE
11    INTENT TO PROMOTE THE CARRYING ON OF SPECIFIED UNLAWFUL
12    ACTIVITY, COMMA, TO WIT.  AND THEN IT LISTS 1705 ALONG WITH
13    IEEPA REGULATIONS, AND 554 AND 1956.  AT LEAST FOR 554 AND
14    1956 IT DOESN'T LIST THE CONSPIRACY, AND WHEREAS THE
15    INSTRUCTION DOES.  SO THE INSTRUCTION SAYS CONSPIRACY TO
16    EXPORT TO EMBARGOED COUNTRY OR THE ATTEMPTED EXPORT.
17    CONSPIRACY TO SMUGGLE GOODS FROM THE UNITED STATES OR
18    SMUGGLING GOODS FROM THE UNITED STATES.
19            SO I THINK CONSPIRACY --
20            MR. HARRIGAN:  YOUR HONOR, I THINK I CAN SIMPLIFY
21    THIS, BECAUSE THERE IS -- IN ORDER TO FIND THE 554 YOU HAVE
22    GOT TO FIND THE IEEPA.  IF THEY AGREE, LET'S JUST MAKE IT AS
23    DEFINED IN COUNTS 17 AND 18.
24            IS THAT GOOD WITH DEFENSE?  THAT WOULD BE THE IEEPA,
25    BECAUSE WE DON'T -- AND CUT OUT THE --
```

APRIL 21, 2015

```
 1          MR. CAMDEN:  I AGREE.  EVEN THE MONEY LAUNDERING OR
 2   THE PROMOTION AND THE SMUGGLING ALL RELATE BACK TO IEEPA.
 3   THEY ALL CITE IEEPA.  SO IT REALLY ALL GOES BACK TO IEEPA.
 4          MR. HARRIGAN:  I DON'T THINK IT MAKES A DIFFERENCE,
 5   BECAUSE IF THEY DON'T FIND IEEPA THEY ARE NOT GOING TO FIND
 6   THE 554.
 7          THE COURT:  WHAT ARE YOU PROPOSING?
 8          MR. HARRIGAN:  I AM PROPOSING THAT IT JUST SAY
 9   ATTEMPTED EXPORT IN VIOLATION OF IEEPA, THE 50 USC 1702 AND
10   1705 AS DEFINED IN COURT'S INSTRUCTIONS 17 AND 18.
11          THE COURT:  THEN STRIKE THE --
12          MR. HARRIGAN:  STRIKE THE REST.
13          THE COURT:  CONSPIRACY TO SMUGGLE.
14          MR. HARRIGAN:  YES.  IF THAT MAKES IT EASIER.
15          THE COURT:  SO IT WOULD READ, IN TOTAL THEN, ON THE
16   SECOND ELEMENT IT WOULD BE:  SECOND, THE DEFENDANT ACTED WITH
17   THE INTENT TO PROMOTE THE CARRYING ON OF ONE OR MORE -- IT
18   WOULD BE THE INTENT TO PROMOTE THE CARRYING ON OF THE
19   FOLLOWING ACTIVITY?
20          MR. HARRIGAN:  IT IS ONE OR MORE.  THE CONSPIRACY TO
21   EXPORT TO EMBARGOED COUNTRY OR THE ATTEMPTED EXPORT TO
22   EMBARGOED COUNTRY.
23          THE COURT:  RIGHT.  AND CONSPIRACY TO EXPORT TO
24   EMBARGOED COUNTRY OR THE ATTEMPTED EXPORT IN VIOLATION OF 50
25   USC 1702 AND 1705, AS DEFINED IN INSTRUCTIONS 17 AND 18.
```

APRIL 21, 2015

1     **MR. HARRIGAN:**  RIGHT.  WHICH REFER BACK TO THE IEEPA

2   AND THE ITSR.

3          **THE COURT:**  AND THAT IS IT.

4          **MR. CAMDEN:**  I WOULD STILL ASK FOR THE:  WITH ALL OF

5   YOU AGREEING ON THE PARTICULAR -- WHAT THE OBJECT OF THE -- OR

6   SORRY.

7          WITH ALL OF YOU AGREEING ON WHICH CRIME WAS INTENDED

8   TO BE PROMOTED, I GUESS.

9          **MR. HARRIGAN:**  NO.  FOR MONEY LAUNDERING ALL THEY

10  HAVE TO DO IS INTEND TO COMMIT THE ACTIVITY.  AND THAT

11  ACTIVITY THEN HAS TO FALL WITHIN -- WHICH IS -- HERE IT IS

12  EXPORTING GOODS TO IRAN.

13         WE STILL HAVE TO PROVE THAT AND HE DID SO WILLFULLY,

14  BUT WE DON'T HAVE TO -- LET ME THINK THIS THROUGH, YOUR HONOR.

15         I DON'T BELIEVE THIS NEEDS A UNANIMITY INSTRUCTION.

16  WE JUST NEED TO SHOW THAT IT IS AN UNLAWFUL ACTIVITY.  ONE CAN

17  AGREE IT IS UNLAWFUL ACTIVITY, IT IS A CONSPIRACY, THE OTHERS

18  AGREE IT IS AN ATTEMPT, OR THEY CAN AGREE ON BOTH.

19         **THE COURT:**  DON'T THEY, ALL 12, HAVE TO AGREE ON

20  WHAT THE UNLAWFUL ACTIVITY IS, THOUGH?  WHAT IF THEY ARE SPLIT

21  AS BETWEEN UNLAWFUL ACTIVITIES?

22         **MR. HARRIGAN:**  YOU KNOW, I WISH THAT THIS HAD BEEN

23  RAISED SOONER, THEN I WOULD HAVE THE ANSWER.  I THINK THE

24  COURT HAS A VALID QUESTION.

25         I DON'T BELIEVE IT REQUIRES IT, BUT I HAVE NOTHING

APRIL 21, 2015

```
 1    TO PRESENT TO YOUR HONOR RIGHT NOW IN REGARDS TO THAT.
 2              SO, YOU KNOW, IF I FIND SOMETHING DIFFERENT TOMORROW
 3    MORNING I WILL PROVIDE IT TO YOU, OTHERWISE YOU CAN INCLUDE
 4    THE UNANIMITY INSTRUCTION.
 5              THE COURT:  HOW WOULD THE UNANIMITY INSTRUCTION
 6    READ?  WHAT ARE YOU PROPOSING?
 7              MR. HARRIGAN:  THEY ALL HAVE TO AGREE -- IT
 8    SHOULDN'T BE PART OF THE ELEMENT.  BUT THEY ALL HAVE TO AGREE
 9    THAT -- I THINK IT WOULD BE MUCH THE SAME WAY THE CONSPIRACY
10    IS, IT HAS TWO -- IT CITES TWO UNLAWFUL ACTIVITIES, YOU HAVE
11    GOT TO AGREE WHICH ONE.  IT CAN BE ONE OR BOTH THAT THEY
12    INTEND TO PROMOTE.
13              I DON'T WANT TO CREATE THE IDEA THAT THEY AGAIN HAVE
14    TO KNOW ABOUT THE ITSR AND THEY AGAIN HAVE TO KNOW ABOUT
15    IEEPA.  THAT IS THE CONCERN I HAVE.  WE STILL HAVE TO PROVE HE
16    COMMITTED AN UNLAWFUL ACTIVITY, WHICH IN ITSELF IS WILLFUL;
17    BUT THAT DOESN'T REQUIRE KNOWING THE ACTUAL SPECIFIC
18    REGULATIONS AND OTHER THINGS.  I THINK THE WAY IT IS WORDED IT
19    MAY SUGGEST SOMEHOW THEY HAVE TO -- MAYBE I AM OVERTHINKING
20    IT.
21              MY SUGGESTION WOULD BE TO USE LANGUAGE SIMILAR THAT
22    YOU USED WITH THE CONSPIRACY COUNT.
23              THE COURT:  IN 17?
24              MR. HARRIGAN:  YES.  THAT THE CHARGE IS TWO
25    UNSPECIFIED UNLAWFUL ACTIVITIES.
```

APRIL 21, 2015

1269

```
 1              I DON'T BELIEVE IT REQUIRES UNANIMITY, BUT I WILL
 2    FIND THAT OUT.
 3              THE COURT:  SO WITH A UNANIMITY INSTRUCTION IT WOULD
 4    HAVE TO BE WITH ALL OF THE JURORS AGREEING AS TO --
 5              MR. HARRIGAN:  OR WE COULD JUST THROW IN SIMILAR
 6    LANGUAGE:  WITH ALL OF YOU AGREEING AS TO WHETHER THE
 7    DEFENDANT -- WHETHER THE UNLAWFUL ACTIVITY -- OR THE ACTIVITY
 8    WAS CONSPIRACY TO EXPORT OR ATTEMPT TO EXPORT, OR BOTH.
 9              THAT WOULD PUT IT IN TWICE.  THERE WOULD BE TWO
10    UNANIMITY INSTRUCTIONS ON THE SAME --
11              THE COURT:  THAT WORKS.
12              MR. HARRIGAN:  -- ELEMENTS.
13              IT JUST PARROTS THE LANGUAGE OF SUBPARAGRAPH A
14    THERE.
15              AND, WITH THE COURT'S PERMISSION, IF WE FIND
16    SOMETHING TOMORROW THAT WE COULD SUBMIT TO YOU, I WOULD
17    APPRECIATE THAT.
18              THE COURT:  YES.
19              MR. HARRIGAN:  I HAVE NEVER HAD A UNANIMITY
20    INSTRUCTION BE GIVEN ON MONEY LAUNDERING, BUT DESCAMPS CHANGES
21    A LOT OF THINGS.  BUT THIS IS NOT NECESSARILY THE SAME
22    DIVISIBILITY THAT YOU WOULD HAVE IN DESCAMPS, SINCE IT TALKS
23    ABOUT SPECIFIED UNLAWFUL ACTIVITIES.
24              THE COURT:  SO GIVE ME THE LANGUAGE, THEN.  WITH ALL
25    OF YOU AGREEING AS TO WHETHER.
```

APRIL 21, 2015

```
 1              MR. HARRIGAN:  THE ACTIVITY --
 2          DO YOU HAVE THE JURY INSTRUCTION?
 3              MR. JOHNSTON:  WHICH ONE?
 4              MR. HARRIGAN:  THE NINTH CIRCUIT MODEL JURY
 5     INSTRUCTION.
 6          YOUR HONOR, MAY I LOOK AT YOUR NINTH CIRCUIT
 7     INSTRUCTION?
 8              THE COURT:  SURE.
 9              MR. HARRIGAN:  THANK YOU.  I AM SORRY.
10              THE COURT:  WHAT ABOUT THE LANGUAGE TO THIS EFFECT:
11     WITH ALL OF YOU AGREEING AS TO WHETHER THE ACTIVITY INVOLVED
12     CONSPIRACY TO EXPORT OR THE ATTEMPTED EXPORT TO AN EMBARGOED
13     COUNTRY, OR BOTH.
14              MR. COUGHLIN:  I THINK UNLESS WE FIND SOMETHING
15     DIFFERENT THAT IS WHAT WE WOULD AGREE TO AT THIS TIME.
16              THE COURT:  DO YOU AGREE?
17              MR. CAMDEN:  NO OBJECTION TO THAT, YOUR HONOR.
18          THIS MIGHT BE THE POINT TO INTERJECT.  WE SUBMITTED
19     THE PROPOSED INSTRUCTIONS.  I AM JUST DEATHLY AFRAID OF BEING
20     SHOUTED AT BY AN APPELLATE ATTORNEY SO I JUST WANT TO MAKE
21     SURE THAT WE -- OUR PRIMARY REQUEST IS FOR THE INSTRUCTIONS WE
22     SUBMITTED.
23              THE COURT:  YES.
24              MR. CAMDEN:  THANK YOU.
25              THE COURT:  AND I WILL RESPECTFULLY OVERRULE THOSE
```

APRIL 21, 2015

1271

1    OBJECTIONS, AND GIVE THE INSTRUCTIONS THAT I PROPOSED IN THE

2    SECOND PACKAGE AS MODIFIED PURSUANT TO OUR DISCUSSION TODAY.

3         **MR. CAMDEN:**  WE STILL HAVE THE THEORY OF DEFENSE

4    INSTRUCTION, YOUR HONOR.

5         **THE COURT:**  I AM SORRY?

6         **MR. CAMDEN:**  THE THEORY OF DEFENSE INSTRUCTION.

7         **THE COURT:**  YES, I HAVE THAT.

8         **MR. CAMDEN:**  THERE WERE THREE, ACTUALLY, THAT I

9    SUBMITTED.

10        **THE COURT:**  IT SEEMED TO ME ON THOSE, THE THEORY OF

11   DEFENSE I HAVE GIVEN BUT MODIFIED.

12        AND I DECLINED TO GIVE THE BUYER/SELLER

13   RELATIONSHIP.  IT SEEMS TO ME THAT IS ADEQUATELY COVERED IN

14   THE PRESENT INSTRUCTIONS.

15        AND THE LIMITING INSTRUCTION I HAVE ALREADY GIVEN, I

16   CAN GIVE THAT AGAIN.

17        **MR. HARRIGAN:**  NO OBJECTION TO THAT, YOUR HONOR.

18        **THE COURT:**  MR. CAMDEN HAS WRITTEN OUT A PROPOSAL.

19   IS THERE ANY OBJECTION TO THE COURT READING WHAT HE HAS

20   PROPOSED?

21        **MR. HARRIGAN:**  IT APPEARS TO BE THE SAME INSTRUCTION

22   YOU READ.

23        **THE COURT:**  VERY CLOSE.  OKAY.

24        ON THE THEORY OF DEFENSE, YOU ARE SIMPLY REQUESTING

25   THE INSTRUCTION THAT YOU PROPOSED?  DO YOU HAVE A SPECIFIC

```
 1   OBJECTION AS TO WHAT THE COURT PROPOSED?

 2          I THINK, TO ME, THE KEY CONCEPT WAS THAT SUSPICION,

 3   CARELESSNESS AND INDIFFERENCE IS NOT ENOUGH.

 4          MR. CAMDEN:  THAT IS TRUE, BUT THAT IS NOT THE FULL

 5   EXTENT OF DIRECT SALES.  I THINK DIRECT SALES SAYS THAT EVEN

 6   KNOWLEDGE, EVEN IF YOU KNOW THAT THE GOODS ARE GOING TO BE

 7   USED UNLAWFULLY -- IN DIRECT SALES THAT WAS AN ISSUE -- EVEN

 8   THAT IS NOT ENOUGH.  THERE IS A DIFFERENCE BETWEEN KNOWLEDGE

 9   AND THE ACTUAL INTENT.

10          SO THE -- I THREW IN SOME FULL DIRECT QUOTES.  THE

11   INTENT IS THE INTENT TO FURTHER, PROMOTE OR COOPERATE THE

12   ILLEGAL ACTIVITY.  AND THAT THE SUPREME COURT SAID, PRETTY

13   EXPLICITLY, THAT NOT EVERY INSTANCE OF SALE OF RESTRICTED

14   GOODS HARMFUL, AS ARE OPIATES IN THAT CASE, IN WHICH THE

15   SELLER KNOWS THE BUYER INTENDS TO USE THEM UNLAWFULLY WILL

16   SUPPORT A CHARGE OF CONSPIRACY.

17          IT EVEN SAYS:  THERE IS BROAD LATITUDE FOR IMMUNITY

18   -- OF IMMUNITY FOR A MORE -- EVEN A MORE CONTINUOUS COURSE OF

19   SALES, MADE EITHER WITH STRONG SUSPICION OF THE BUYER'S

20   WRONGFUL USE OR WITH KNOWLEDGE, BUT WITHOUT STIMULATION OR

21   ACTIVE INCITEMENT TO PURCHASE.

22          SO I THINK WE HAVE TO BE ABLE -- THE COURT'S

23   INSTRUCTION COVERS THE FIRST PART WHERE THEY TALK ABOUT

24   SUSPICION, CARELESSNESS OR INDIFFERENCE, BUT IT DOESN'T COVER

25   THE KNOWLEDGE PART.  THE KNOWLEDGE ALONE OF THE UNLAWFUL
```

APRIL 21, 2015

1   DESTINATION OF THE GOODS IN THIS CASE IS NOT ENOUGH, THERE HAS

2   TO BE THE INTENT TO ACTUALLY GET THEM TO THAT PLACE.

3          **THE COURT:**  THE INSTRUCTION DOES SAY THAT THE

4   GOVERNMENT HAS TO PROVE BEYOND A REASONABLE DOUBT THAT THE

5   DEFENDANT KNOWINGLY AND WILLFULLY EXPORTED, SOLD OR SUPPLIED

6   OR ENGAGED IN TRANSACTIONS THAT EVADE AND AVOID.

7          **MR. CAMDEN:**  I THINK -- THE ENGAGED IN TRANSACTIONS

8   WAS TAKEN OUT OF COUNTS 3 AND 4 TODAY.

9          **MR. HARRIGAN:**  IT IS STILL IN THE CONSPIRACY.

10         **MR. CAMDEN:**  RIGHT.  SO THAT IS REALLY WHAT -- SO

11   THE COURT'S INSTRUCTION TALKS ABOUT THE PRIMARY OFFENSE.  THE

12   GOVERNMENT IS NOT ALLEGING, AS FAR AS I CAN SEE, THAT HE

13   ACTUALLY -- THIS WAS A COMPLETED OFFENSE.  THESE ARE ATTEMPTS,

14   REGARDING THE IEEPA COUNTS, IT IS CONSPIRACY AND ATTEMPT.

15         **THE COURT:**  RIGHT.

16         **MR. CAMDEN:**  AND THAT IS WHY -- THAT IS WHAT RAISES

17   THE LEVEL OF THE MENS REA REQUIRED.

18          FOR A CIVIL VIOLATION OF IEEPA YOU JUST EXPORT THE

19   GOODS AND YOU KNOW THEY ARE GOING TO IRAN, THAT MIGHT BE

20   ENOUGH.  BUT WHEN IT IS WILLFUL AND WHEN IT IS A CONSPIRACY TO

21   COMMIT A WILLFUL VIOLATION OR AN ATTEMPT TO COMMIT A WILLFUL

22   VIOLATION, THAT IS WHEN, UNDER DIRECT SALES, THE MENS REA HAS

23   TO BE HIGHER.  IT IS NOT JUST THE KNOWLEDGE THAT THIS STUFF IS

24   GOING TO BE ILLEGALLY FORWARDED ON FROM DUBAI TO IRAN, IT HAS

25   TO BE THE INTENT THAT THAT HAPPEN.  THE ACTIVE PARTICIPATION,

```
 1    THE STIMULATION; THOSE ARE THE WORDS THAT DIRECT SALES USED.

 2            THE COURT:  THE FIRST SENTENCE REITERATES THAT

 3    CONCEPT, THAT THE DEFENDANT INTENDED THAT THE GOODS AT ISSUE

 4    BE EXPORTED, SOLD OR SUPPLIED, DIRECTLY OR INDIRECTLY, TO

 5    IRAN.  SO ALL --

 6            MR. CAMDEN:  IT DOESN'T --

 7            THE COURT:  -- OF THE ARGUMENTS YOU MADE CAN BE MADE

 8    AND ARGUED, FOCUSING ON THESE INSTRUCTIONS.

 9            MR. CAMDEN:  I THINK WHAT IT DOESN'T COVER IS WHAT

10    THE JURY MIGHT NOT BE ABLE TO UNPACK WITHOUT AN INSTRUCTION

11    FOR US TO REFER TO IS THAT INTENT REALLY HAS TWO COMPONENTS,

12    AND DIRECT SALES MAKES THIS EXPLICIT.

13            KNOWLEDGE IS THE BASIS FOR AN INTENT TO DO

14    SOMETHING.  YOU CAN'T INTEND TO DO SOMETHING WITHOUT KNOWING

15    ABOUT IT, OR THE FACTS NECESSARY FOR IT.  BUT KNOWLEDGE, ON

16    ITS OWN, ISN'T ENOUGH.

17            SO I AM WORRIED THAT THE GOVERNMENT IS GOING TO BE

18    ARGUING, WELL, HE DID THIS DEAL AND HE KNEW THE STUFF WAS

19    GOING TO IRAN, AND THAT IS ALL WE HAVE TO SHOW.  AND IT IS

20    NOT.

21            THE COURT:  WHAT ABOUT THE WILLFUL INSTRUCTION,

22    THOUGH?

23            MR. CAMDEN:  WELL, WILFULLNESS -- AND THAT REALLY

24    RELATES TO THE KNOWLEDGE THAT WHAT HE IS DOING VIOLATES THE

25    LAW, SOME LAW.  SO THIS IS REALLY THE KNOWLEDGE OF THE
```

APRIL 21, 2015

1275

```
1   BACKGROUND FACTS THAT MAKE THE CONDUCT ILLEGAL THAT WE ARE
2   TALKING ABOUT.
3          SO THIS ISN'T LIKE IN THE WILLFULNESS CASES LIKE
4   BRYAN AND MOUSAVI, THOSE ARE REALLY TALKING ABOUT THE
5   DEFENDANT'S KNOWLEDGE OF THE LAW.  THIS IS TALKING ABOUT THE
6   KNOWLEDGE OF WHAT IS HAPPENING, THE FACTS ON THE GROUND.  AND
7   THE KNOWLEDGE OF WHAT IS HAPPENING IS NOT ENOUGH, IT HAS TO BE
8   AN INTENT THAT THAT THING HAPPEN:  EITHER UNDER AIDING AND
9   ABETTING, BECAUSE THEY HAVE TO INTEND THE PRINCIPAL COMMIT THE
10  CRIME; OR UNDER ATTEMPT BECAUSE YOU HAVE TO HAVE THE SPECIFIC
11  INTENT THAT THE CRIME BE COMMITTED; OR UNDER CONSPIRACY
12  BECAUSE YOU HAVE TO AGREE TO COMMIT THE CRIME.
13         SO THOSE ARE ALL OF THE HIGHER MENS REA THAT MAKE
14  THE DISTINCTION BETWEEN KNOWLEDGE AND INTENT, I THINK, KEY IN
15  THIS CASE.
16         MR. HARRIGAN:  I DON'T KNOW WHAT WE ARE ARGUING
17  ABOUT HERE.  I DON'T THINK HE IS GOING TO ARGUE THAT HE
18  INTENDED IT TO STAY INSIDE THE UNITED STATES.  EVEN HIS OWN
19  TESTIMONY WASN'T THAT.  SO THE INTENT GOES TO, YOU KNOW, HIS
20  ACTIONS, INTENDING, KNOWING THAT IT IS GOING TO IRAN.  KNOWING
21  IS THE QUESTION.  SO IT REALLY IS DID HE ACT KNOWINGLY.
22         THE SPECIFIC INTENT THAT -- HE INTENDED TO DO ACTS.
23  THERE NO QUESTION, THAT IS NOT IN DISPUTE.  THE ISSUE HERE, I
24  THINK, IS, DID HE ACT KNOWINGLY, WAS HE A KNOWING PARTICIPANT
25  WHEN HE JOINED THAT CONSPIRACY AND INTENDING TO ACCOMPLISH
```

APRIL 21, 2015

1    THOSE OBJECTIVES.

2           I THINK WE CAN SHOW THAT HE KNOWINGLY INTENDED TO DO

3    CERTAIN THINGS, BUT IT REALLY IT COMES DOWN TO -- SO I GUESS

4    WHAT I AM SAYING IS WE ARE NOT GOING TO ARGUE THAT JUST MERELY

5    KNOWING IS ENOUGH, THAT IT IS GOING TO IRAN.  YOU HAVE TO DO

6    SOME ACTION, AND YOU HAVE TO INTEND TO ACCOMPLISH THAT ACTION.

7           WE TALKED ABOUT KNOWLEDGE -- I AM NOT SUGGESTING HE

8    DOESN'T HAVE THE INTENT TO DO IT.  I THINK HE HAS THE INTENT

9    TO DO IT.  KNOWLEDGE, KNOWINGLY, INCLUDES HAVING THE INTENT TO

10   DO THAT.  WE DON'T HAVE SEPARATE DEFINITIONS FOR INTENT AND

11   KNOWINGLY.

12          I THINK THE NINTH CIRCUIT RECOMMENDS AGAINST GIVING

13   THAT, TOO.  IF I AM NOT CORRECT, CORRECT ME.

14          **THE COURT:**  SO YOU WOULD LIKE SOME OF THAT

15   BUYER/SELLER LANGUAGE INSERTED?  IS THAT THE ESSENCE OF THE

16   ARGUMENT?

17          **MR. CAMDEN:**  I THINK THEY ARE DIFFERENT ISSUES,

18   REALLY, YOUR HONOR.  THE BUYER/SELLER ISSUE JUST MAKES SURE --

19   WHEN A STATUTE PUNISHES ONE SIDE OF A TRANSACTION, IN THIS

20   CASE EXPORT OR SUPPLY, THAT IS THE SUPPLY SIDE, AND THEN TIG

21   MARINE, ACCORDING TO THE GOVERNMENT AND OUR CLIENT AND

22   KOORUSH, ARE ON THE BUYERS SIDE.

23          SO WHEN A STATUTE FOCUSES ON ONE SIDE OF THAT

24   TRANSACTION YOU CAN'T PULL IN PEOPLE THAT ARE ON THE OTHER

25   SIDE AND INFER THE INTENT.  SO FOR EVERY SALE THE BUYER REALLY

APRIL 21, 2015

1   DOES INTEND THAT THE SALE HAPPEN AND THAT THE SELLER SELLS IT

2   TO HIM.  BUT THIS IS A SPECIAL RULE IN THE CONTEXT OF THESE

3   STATUTES THAT PUNISH ONE SIDE OF COMMERCIAL TRANSACTION.

4          I THINK THAT IS A SEPARATE RULE, THOUGH, OF THE

5   LEVEL OF INTENT AND KNOWLEDGE THAT DIRECT SALES TALKS ABOUT

6   WHEN IT GOES TO THE CONSPIRACY.

7          I THINK THEY ARE BOTH NECESSARY BECAUSE TO MAKE SURE

8   THAT THE JURY DOESN'T THINK THAT JUST BECAUSE YOU INTEND TO

9   BUY SOMETHING OR YOU INTEND THAT THE -- OF COURSE A BUYER

10  INTENDS THAT A SALE HAPPEN, BUT THAT IS NOT ENOUGH TO PROVE

11  THE INTENT TO SELL OR THE INTENT TO PARTICIPATE IN THE SUPPLY

12  SIDE OF THE TRANSACTION.

13          **THE COURT:**  SO, MR. JOHNSTON, IS THERE SOMETHING

14  MISSING IN INSTRUCTION 29 AS IT RELATES TO THE ARGUMENTS YOU

15  WANT TO MAKE AND YOUR THEORY OF DEFENSE?

16          **MR. JOHNSTON:**  WELL, THERE IS, YOUR HONOR.  AND THE

17  DEFENDANT'S PROPOSED 23, WHICH IS OUR THEORY OF DEFENSE

18  INSTRUCTION --

19          **THE COURT:**  TO ME IT WAS ARGUMENTATIVE IN THE SENSE

20  THAT IT IS NOT A COMPLETELY ACCURATE STATEMENT OF THE LAW AND

21  IT IS CONFUSING, POTENTIALLY, TO THE JURY.

22          **MR. JOHNSTON:**  YOUR HONOR, IT WASN'T WRITTEN IN A

23  WAY TO TRY TO BE ARGUMENTATIVE, IT WAS WRITTEN IN A WAY TO --

24  I MEAN, ONE WAY TO TAKE COURT'S INSTRUCTION 29 IS IF YOU FIND

25  ONLY THAT THE DEFENDANT WAS SUSPICIOUS, CARELESS OR

APRIL 21, 2015

1278

```
1    INDIFFERENT ABOUT THE DESTINATION OF THE GOODS, OR MERELY KNEW
2    THAT THEY WERE GOING TO IRAN, YOU MUST VOTE NOT GUILTY.
3             THAT WOULD BE ONE WAY TO BEGIN TO INCORPORATE WHAT
4    WE BELIEVE IS THE HOLDING OF DIRECT SALES.  BUT, OBVIOUSLY, IF
5    THE GOVERNMENT CAN PROVE THAT HE KNEW THE ITEMS WERE GOING TO
6    IRAN, THE GOVERNMENT WOULD HAVE MET PART OF THEIR BURDEN OF
7    PROVING WILLFULNESS.
8             THE LANGUAGE WE PROPOSED WAS SIMPLY TO CAUTION THE
9    JURY THAT IT IS NOT ENOUGH FOR THE GOVERNMENT TO PROVE ONLY
10   THAT HE KNEW THE GOODS WERE GOING TO -- WE SAID THE TERRITORY,
11   BUT LET'S JUST SAY IRAN OR THE GOVERNMENT OF IRAN.
12            AND THEN WE TRIED TO EXPLAIN WHAT THEY MUST FURTHER
13   PROVE, WHICH HERE IS THAT HE INTENDED AND AGREED THAT THE
14   GOODS GO TO IRAN.
15            SO IT IS ESSENTIALLY ADDING THAT KNOWLEDGE ALONE IS
16   NOT SUFFICIENT, IN ADDITION TO MERELY BEING SUSPICIOUS,
17   CARELESS OR INDIFFERENT, THAT BEGINS TO CAPTURE WHAT THE
18   SUPREME COURT SAID IN DIRECT SALES.
19            MR. HARRIGAN:  WELL, DIRECT SALES DEALT WITH THE
20   DRUG STATUTE, WHICH IS POSSESSION WITH INTENT TO DISTRIBUTE,
21   AND THE CUSTOMER WAS BEING CHARGED WITH THAT, IS THE WAY I
22   READ IT.
23            IT WAS A TITLE 21 CHARGE WHERE THEY CHARGED THE
24   COMPANY WITH CONSPIRACY TO DISTRIBUTE NARCOTICS BASED ON A
25   THEORY THAT IT CONSPIRED WITH A PURCHASING PHYSICIAN WHO
```

APRIL 21, 2015

1   DISTRIBUTED THE DRUGS ILLEGALLY.

2           THERE WAS A BUYER KIND OF SELLER RELATIONSHIP THERE

3   WHICH IS NOT PRESENT HERE.  HE IS NOT A BUYER/SELLER, HE IS AN

4   AGENT OF THE COMPANY.  THAT IS PRETTY CLEAR.

5           I UNDERSTAND WHAT THE SUPREME COURT WAS GETTING AT

6   AT THAT, BUT THE FACTS ARE INAPPOSITE TO THE PRESENT CASE.

7   THEY SIMPLY DON'T APPLY.

8           MR. GHAHREMAN WAS NOT SELLING THOSE GOODS TO -- IN

9   FACT, BY HIS OWN WORDS, I WAS ONLY AN INTERMEDIARY.  I WAS

10  PUTTING THE BUYER TOGETHER WITH THE SELLER.

11          SO I DON'T THINK THAT THE HOLDING OF THAT IS AT ALL

12  APPLICABLE TO THIS CASE, IN A CASE WHERE HE IS CHARGED WITH

13  EXPORTING OR SUPPLYING, WHICH HE DID.

14          **THE COURT:**  DO YOU OBJECT TO THE INSERTION OF THE

15  LANGUAGE, OR MERELY KNOW THEY WERE GOING TO IRAN.

16          SO WHAT MR. JOHNSTON PROPOSES, ON THE FIRST SENTENCE

17  OF THE SECOND PARAGRAPH IN INSTRUCTION 29, IT WOULD READ:  IF

18  YOU FIND ONLY THAT THE DEFENDANT WAS SUSPICIOUS, CARELESS OR

19  INDIFFERENT ABOUT THE DESTINATION OF THE GOODS OR MERELY KNEW

20  THEY WERE GOING TO IRAN.

21          **MR. HARRIGAN:**  THE PROBLEM IS, WE USE THE TERM

22  KNOWINGLY IN THE INSTRUCTION.  AND I AM GOING TO ARGUE HE

23  KNOWINGLY KNEW THE GOODS WERE GOING TO IRAN.  SO IT WOULD

24  UNDERCUT ANY ARGUMENT.  IT IS CONFUSING TO ME TO SAY

25  KNOWINGLY.  KNOWINGLY DOESN'T MEAN YOU JUST KNOW -- I THINK

APRIL 21, 2015

1280

1   WHAT THEY WANT TO SAY, IF YOU KNOW AND YOU DON'T ACT, THAT IS

2   ONE THING, YOU KNOW.  BUT THE FACT IS THERE IS -- YOU KNOW,

3   THERE IS NO QUESTION HE INTENDED TO GET THEM OUT OF THE

4   COUNTRY.  ALL RIGHT.

5           **THE COURT:**  THAT'S THE INTENT.

6           **MR. HARRIGAN:**  YEAH.  THAT'S THE INTENT.  HE

7   INTENDED TO GET THEM OUT OF THE COUNTRY.  AND THE QUESTION IS,

8   WHERE DID HE KNOW THEY WERE GOING?

9           **THE COURT:**  CAN'T YOU MAKE THAT -- I MEAN, YOU CAN

10  MAKE THE ARGUMENT THAT HE NOT -- YOU HAVE TO MAKE THE ARGUMENT

11  THAT HE NOT ONLY KNEW BUT HE INTENDED IN ORDER TO CONVICT.

12          I THINK WHAT MR. JOHNSTON WANTS TO ARGUE IS THAT

13  MERE KNOWLEDGE AS TO WHERE THEY ARE GOING ISN'T ENOUGH, HE HAS

14  TO ALSO INTEND IT.

15          **MR. HARRIGAN:**  THEN IT SHOULD SAY MERE KNOWLEDGE

16  WITHOUT MORE, YOU KNOW, IS WHAT IT SHOULD SAY.  BECAUSE THAT'S

17  WHAT HE IS ARGUING.  HE CAN'T SAY, I MERELY KNEW IT WAS GOING.

18  HE WOULD HAVE TO SAY, YOU KNOW -- THAT IS NOT TRUE IF HE KNEW

19  WHERE IT WAS GOING, AS HE DID IN THIS CASE, HE TOOK ACTION TO

20  MAKE SURE THAT IT WAS GOING THERE.

21          HE CAN'T SAY, I MERELY KNEW BUT I WENT ALONG WITH IT

22  ANYWAY.  THAT'S NOT A DEFENSE.  I DON'T THINK HE IS GOING TO

23  BE DENYING THAT HE WENT DOWN TO THE STORE, THAT HE INTENDED

24  THAT TO GO DOWN THERE.

25          **THE COURT:**  BUT SIMPLY AS A LEGAL PROPOSITION, DO

APRIL 21, 2015

```
 1    YOU AGREE WITH THE STATEMENT THAT MERE SUSPICION, CARELESSNESS
 2    OR INDIFFERENCE ABOUT THE DESTINATION OR MERE KNOWLEDGE THAT
 3    THEY WERE GOING TO IRAN IS NOT SUFFICIENT?
 4              MR. HARRIGAN:  I DISAGREE WITH THAT BECAUSE IT
 5    SUGGESTS THAT -- I FIND IT CONFUSING IN LIGHT OF THE OTHER
 6    INSTRUCTIONS.  I REALLY DO.  BECAUSE YOU SAY AN ACT -- IT
 7    TALKS ABOUT KNOWING IN THE INSTRUCTIONS, AND HE KNOWINGLY DID
 8    CERTAIN THINGS.
 9              THE COURT:  THE KNOWLEDGE INSTRUCTION, THOUGH, IS
10    THE PATTERN INSTRUCTION.  IT JUST SAYS AN ACT IS DONE
11    KNOWINGLY IF THE DEFENDANT IS AWARE OF THE ACT.
12              MR. HARRIGAN:  I THINK HIS DEFENSE IS HE DIDN'T
13    KNOW.  ALL RIGHT.  IT IS NOT THAT, I KNEW AND I DIDN'T DO
14    ANYTHING ELSE, YOU KNOW.  I THINK IT IS HE DIDN'T KNOW.
15              AND WHAT THEIR ARGUMENT IS, AT LEAST WHAT HAS BEEN
16    PRESENTED IS, YEAH, I HAD SUSPICIONS, BUT I CLEARED THOSE UP
17    ON EACH AND EVERY OCCASION.
18              SO IT IS NOT EVEN CONSISTENT WITH THE EVIDENCE THEY
19    PUT ON TO GO AS A THEORY OF THE DEFENSE.  WHAT IT DOES IS, IF
20    I GET UP THERE AND SAY, YOU KNOW WHAT?  KNOWLEDGE IS THE
21    ISSUE.  NOW I HAVE GOT TO SAY KNOWLEDGE AND INTENT IS THE
22    ISSUE, WHICH I CAN DO, BUT IT IS CLEAR KNOWLEDGE INCLUDES
23    INTENT.  YOU KNOW, IT IS AN ACT KNOWINGLY DONE, HE DID THIS
24    ACT KNOWINGLY.  ALL RIGHT.  THERE IS NO QUESTION THE JURY IS
25    GOING TO FIND HE DID CERTAIN ACTS, ALL RIGHT, THE QUESTION IS,
```

APRIL 21, 2015

```
1    DID HE DO THOSE KNOWINGLY.  THOSE ACTS CARRY WITH THEM AN
2    INTENT.  ALL RIGHT.  BUT HE HAS TO HAVE THE RIGHT SCIENTER OF
3    KNOWING THAT IT IS GOING TO IRAN.
4              I AM NOT TRYING TO MAKE IT TOO COMPLICATED, BUT I
5    JUST THINK THAT SAYING MERELY KNOWING IS CONFUSING TO THE JURY
6    AND IT IS NOT CONSISTENT WITH THE THEORY OF THE DEFENSE AS WE
7    HAVE HEARD, YOU KNOW, AS WE HAVE GONE THROUGH THE
8    CROSS-EXAMINATION OF THE DEFENDANT, TOO, AND THE DIRECT.
9              MR. JOHNSTON:  YOUR HONOR, KNOWLEDGE IS CERTAINLY
10   NECESSARY BUT NOT SUFFICIENT FOR A CONVICTION IN THIS CASE.
11   AND I THINK THAT'S WHAT UNDERLIES DIRECT SALES.
12             THE GOVERNMENT HAS SUGGESTED THAT THERE IS NO THEORY
13   OF DEFENSE THAT COULD SAY THAT HE KNEW THAT THEY WERE GOING TO
14   IRAN BUT DIDN'T INTEND FOR THEM TO GET THERE.  THEY HAVE
15   CHARGED AN INDIRECT -- AN INDIRECT TRANSACTION FOR GETTING
16   THESE ITEMS TO IRAN.  THE EVIDENCE MAY BE VERY CLEAR THAT
17   THERE WAS AN INTENT TO GET IT TO DUBAI, BUT THE REAL QUESTION
18   IS WHETHER THERE WAS FURTHER INTENT TO GET IT TO IRAN.
19             THE GOVERNMENT CROSS-EXAMINED MR. GHAHREMAN AND ONE
20   OF THE QUESTIONS IT ASKED IS, YOU KNEW VALFAJR IS AN IRANIAN
21   SHIPPING COMPANY.
22             AND THEY HAD MR. GHAHREMAN ADMIT THAT HE SAID YES,
23   THAT IS TRUE.  IT WAS A LIE IF I SAID NO.
24             SO THERE HAS BEEN EVIDENCE INTRODUCED ABOUT
25   KNOWLEDGE.  AND SO IT IS CONSISTENT WITH OUR THEORY AND IT IS
```

APRIL 21, 2015

1283

```
 1   CONSISTENT WITH WHAT THE SUPREME COURT HAS SAID.

 2            INTENT AND KNOWLEDGE CAN'T COLLAPSE INTO ONE

 3   ANOTHER.  KNOWLEDGE IS NECESSARY BEFORE THERE CAN EVEN BE

 4   INTENT.  I THINK MR. CAMDEN SAID IT BETTER THAN I COULD.

 5            AND OUR CONCERN IS THAT IF THE JURY FINDS MERE

 6   KNOWLEDGE AND CONVICTS WITHOUT DOING THE FURTHER DUTY OF

 7   DETERMINING HIS INTENT, WHETHER HE INTENDED FOR IT NOT JUST TO

 8   GO TO DUBAI BUT TO IRAN, THEN WE WILL HAVE FAILED UNDER DIRECT

 9   SALES FOR WHAT THE LAW REQUIRES.

10            AND I THINK MR. HARRIGAN CORRECTED HIMSELF WHEN HE

11   LOOKED AT THE CASE.  IT INVOLVED DRUG STATUTES, BUT WHAT

12   DIRECT SALES WAS REALLY TALKING ABOUT WAS CONSPIRACY, THAT

13   HIGHER MENS REA THAT COMES WHEN THERE ARE PARTIES ENGAGED IN

14   TRANSACTIONS THAT HAVE MULTIPLE STEPS.

15            **MR. HARRIGAN:**  I LOOKED AT THE FACTS AND IT DEALS

16   WITH BUYER/SELLER RELATIONSHIP, WHICH WE DON'T HAVE HERE.  AND

17   THAT IS UNIQUE, YOUR HONOR.

18            I AGREE THAT WE JUST DON'T HAVE TO PROVE THEY KNEW,

19   THOSE ARE COVERED BY THE JURY INSTRUCTIONS.

20            **THE COURT:**  WHAT ABOUT THIS LANGUAGE, THEN:  IF YOU

21   FIND ONLY THAT THE DEFENDANT WAS SUSPICIOUS, CARELESS OR

22   INDIFFERENT ABOUT THE DESTINATION OF THE GOODS, OR MERELY KNEW

23   THEY WERE GOING TO IRAN, WITHOUT THE INTENT THAT THE GOODS BE

24   EXPORTED OR SUPPLIED TO IRAN, YOU MUST VOTE NOT GUILTY.

25            **MR. HARRIGAN:**  RIGHT.  I AM FINE WITH THAT.
```

APRIL 21, 2015

1    **THE COURT:**  I THINK THAT'S THE LAW.  AND THEN

2    COUNSEL CAN MAKE THEIR ARGUMENTS.

3         AND THE DEFENSE IS ENTITLED TO A THEORY OF DEFENSE,

4    SO I WOULD BE INCLINED TO GIVE THAT INSTRUCTION AS MODIFIED.

5         IS THERE ANYTHING ELSE?

6    **MR. COUGHLIN:**  CAN YOU READ THAT ONE PART AGAIN,

7    YOUR HONOR?

8    **THE COURT:**  YES.

9         IF YOU FIND ONLY THAT THE DEFENDANT WAS SUSPICIOUS,

10   CARELESS OR INDIFFERENT ABOUT THE DESTINATION OF THE GOODS, OR

11   MERELY KNEW THEY WERE GOING TO IRAN, WITHOUT THE INTENT THAT

12   THE GOODS BE EXPORTED OR SUPPLIED TO IRAN, YOU MUST VOTE NOT

13   GUILTY.

14   **MR. HARRIGAN:**  SO IF YOU ONLY FIND THAT DEFENDANT

15   WAS SUSPICIOUS, CARELESS OR INDIFFERENT ABOUT THE DESTINATION

16   OF GOODS YOU MUST --

17   **THE COURT:**  OR MERELY KNEW THEY WERE GOING TO IRAN,

18   WITHOUT THE INTENT THAT THE GOODS BE EXPORTED OR SUPPLIED TO

19   IRAN.

20   **MR. HARRIGAN:**  WELL, THAT'S CONFUSING, BECAUSE, YOU

21   KNOW, THAT SUGGESTS HE HAS TO DO THE EXPORTING -- WITHOUT

22   INTENT THAT THE GOODS BE EXPORTED OR SUPPLIED TO IRAN.

23   **THE COURT:**  YES.

24   **MR. HARRIGAN:**  OKAY.  ALL RIGHT.

25   **THE COURT:**  OKAY.  ANYTHING ELSE?

APRIL 21, 2015

1285

```
1             OKAY.  I WILL FINALIZE THESE INSTRUCTIONS, AND EMAIL
2   TO COUNSEL A CLEAN SET FOR TOMORROW.
3             THERE IS AN AGREEMENT ON THE JURY VERDICT?  ANY
4   DISAGREEMENT WITH IT, THE FORM?
5             MR. HARRIGAN:  NO, YOUR HONOR, NOT ON BEHALF OF THE
6   GOVERNMENT.
7             MR. JOHNSTON:  LET ME JUST MAKE SURE.  WAS THERE
8   ONLY A SINGLE COPY?  WE GOT DIFFERENT COPIES, I WANT TO MAKE
9   SURE THEY WEREN'T MODIFIED.
10             THE CLERK:  THE NEXT TO THE LAST COUNT WAS MODIFIED.
11             (PAUSE IN PROCEEDINGS)
12             MR. JOHNSTON:  ARE YOU WAITING ON ME?
13             THE COURT:  YES.
14             MR. JOHNSTON:  SORRY.  WE DON'T HAVE AN OBJECTION,
15   YOUR HONOR.
16             MR. COUGHLIN:  COULD WE JUST BRING UP ONE MORE
17   THING?
18             ONE IS THE TRANSCRIPTS.  WE ARE NOT LETTING THE
19   TRANSCRIPTS GO BACK, CORRECT?
20             THE COURT:  CORRECT.
21             MR. COUGHLIN:  SO WE WILL PULL THEM OUT OF THERE
22   RIGHT NOW.
23             THE COURT:  YES.
24             MR. COUGHLIN:  AND THE SECOND THING IS, COUNSEL
25   BROUGHT UP THE POSSIBILITY OF SOMEHOW PUTTING A RECORDER IN
```

APRIL 21, 2015

THAT THEY COULD PLAY THEM IN THE JURY LOUNGE.  AND I DON'T

THINK WE WOULD BE IN FAVOR OF THAT.

        **THE COURT:**  WHAT I CAN TELL THE JURY IS THAT IF THEY

WANT TO LISTEN TO ANY OF THE RECORDINGS, WE CAN DO IT ONE OF

TWO WAYS:  WE CAN EITHER PROVIDE THEM WITH THE EQUIPMENT AND

THEY CAN LISTEN IN THE JURY ROOM; OR WE CAN BRING THEM BACK

OUT HERE, IN WHICH CASE WE ALL NEED TO BE PRESENT AND SIT WITH

THEM.

        **MR. JOHNSTON:**  YOUR HONOR, I AM HAPPY FOR THE JURY

TO TAKE ALL OF THE TIME THEY WANT TO REVIEW THE VIDEOS AND THE

AUDIOS ON THEIR OWN.  I THINK WE ALL MIGHT BE SITTING HERE A

LONG TIME IF WE HAVE TO COME OUT EACH TIME THEY WANT TO REVIEW

THE SEPARATE ONES.

        **THE COURT:**  IF THEY DO THAT, THEN, BECAUSE THE WAY

THAT IT IS SET UP ON THE VIDEO OR THE AUDIO, IS THEY GET THE

LANGUAGE, THE TRANSCRIPT ACTUALLY APPEARS ON SCREEN.  IF

COUNSEL ARE OKAY WITH THAT, THAT IS FINE WITH ME.

        **MR. CAMDEN:**  I AM NOT SURE THEY DO.  THE GOVERNMENT

SUBMITTED DISKS, WE ARE NOT SURE WHAT FORMAT THEY ARE IN.  I

THINK THE TRANSCRIPTS WERE ON THE GOVERNMENT'S COMPUTER HERE,

THE DISKS THAT THEY HAVE.

        I SPOKE WITH SOMEBODY FROM OUR -- ONE OF OUR TECH

PEOPLE.  I THINK WE WILL BE ABLE TO -- I CAN'T PROMISE, WE ARE

WORKING ON IT, BUT WE MIGHT BE ABLE TO HAVE A WIPED LAPTOP, SO

WITH NO PROGRAMS, WITHOUT ACCESS TO THE INTERNET, THAT THEY

APRIL 21, 2015

1287

```
 1    COULD JUST USE TO PLAY WHATEVER AUDIO OR VIDEO.
 2         THE COURT:  SO I WOULD PROPOSE THAT IF THEY WANT TO
 3    LISTEN TO THE AUDIO AND/OR VIDEO, THAT WE PROVIDE THEM THE
 4    EQUIPMENT AND THEY CAN PLAY IT IN THE JURY ROOM ON THEIR OWN,
 5    WITHOUT THE LANGUAGE APPEARING ON THE BOTTOM OF THE SCREEN SO
 6    IT IS NOT -- IT IS PROVIDED SIMPLY WITH THE AUDIO.
 7         MR. HARRIGAN:  I CAN'T TELL YOUR HONOR IN
 8    PREPARATION WHETHER THOSE DON'T HAVE THE -- I THINK IT IS PART
 9    OF THE SANCTION PROGRAM.
10         MR. CAMDEN:  I CAN CHECK THAT RIGHT NOW.
11         MR. HARRIGAN:  NO, I WOULD REALLY LIKE TO GET GOING.
12    WE WILL FIGURE IT OUT FOR YOU LATER.  WE WILL TAKE CARE OF
13    THAT, IF THAT'S THE WAY THE COURT WANTS TO PROCEED.
14         I JUST WOULD LIKE THE DEFENDANT TO WAIVE ANY
15    OBJECTION HE MIGHT HAVE TO THAT OCCURRING.
16         THE COURT:  I AM NOT SURE THAT'S NECESSARY, BUT I AM
17    HAPPY TO DO THAT, BECAUSE THE AUDIO AND THE VIDEOS ARE IN
18    EVIDENCE.
19         MR. HARRIGAN:  RIGHT.
20         THE COURT:  AND THEY WOULD -- THE JURY WAS
21    ADMONISHED THAT THAT IS THE EVIDENCE, AND THAT THE AUDIO AND
22    THE VIDEO WOULD NOT BE SUBTITLED.
23         MR. HARRIGAN:  RIGHT.
24         THE COURT:  SO I THINK WHAT I WILL TELL THE JURY IS
25    IF THEY WANT TO LISTEN TO THE AUDIO AND SEE THE VIDEO AND
```

APRIL 21, 2015

```
 1    LISTEN TO THE AUDIO ON THE VIDEO THEY ARE FREE TO DO THAT.  WE
 2    WILL GIVE THEM THE EQUIPMENT.  THERE IS NO SUBTITLES.
 3              MR. HARRIGAN:  OKAY.
 4              ONE LAST QUESTION WITH REGARD TO THE VOLUMINOUS
 5    GOVERNMENT EXHIBITS, IS THERE ANY KIND OF INDEX AT ALL FOR
 6    THEM THAT WOULD BE ACCEPTABLE?
 7              THE COURT:  SURE.
 8              HOW ABOUT OURS?  DO WE HAVE AN INDEX?
 9              THE CLERK:  I HAVE THE EXHIBIT LIST.  I MIGHT REVIEW
10    WHAT IS WRITTEN TO MAKE SURE THERE IS NOTHING ON THERE.
11              THE COURT:  GENERALLY IT IS VERY EASY TO FOLLOW,
12    VERY ORGANIZED.
13              MR. COUGHLIN:  THAT'S FINE.
14              THE COURT:  DO COUNSEL STIPULATE TO WAIVE REPORTING
15    OF THE READING OF THE JURY INSTRUCTIONS, KNOWING THAT THE
16    INSTRUCTIONS THEMSELVES WILL BE ON FILE?
17              MR. JOHNSTON:  YES, YOUR HONOR.
18              MR. HARRIGAN:  YES, YOUR HONOR.
19              THE COURT:  ALL RIGHT.
20              I WILL FINALIZE THESE INSTRUCTIONS, AND PROVIDE THEM
21    TO COUNSEL IN AN HOUR OR SO.
22              MR. JOHNSTON:  THAT WOULD BE GREAT, YOUR HONOR.
23              CAN I RAISE ONE MORE ISSUE REGARDING TESTIMONY
24    TOMORROW?
25              THE COURT:  YES.
```

APRIL 21, 2015

1289

```
1        MR. JOHNSTON:  THE GOVERNMENT HAS NOW INTRODUCED

2   SOME OF MR. GHAHREMAN'S POST-ARREST STATEMENTS.  3501 REQUIRES

3   THE JURY TO CONSIDER ANY EVIDENCE CONCERNING THE VOLUNTARINESS

4   OF THOSE STATEMENTS.

5        THE COURT:  YES.

6        MR. JOHNSTON:  ONE WAY FOR ME TO PRESENT THAT

7   EVIDENCE IS TO CALL AN AGENT ABOUT WHAT HE MAY HAVE SAID TO

8   MR. GHAHREMAN ABOUT HIS ABILITY TO HAVE AN ATTORNEY PRESENT.

9   I HAVE A SHORT, MAYBE LIKE 20-SECOND CLIP THAT I COULD PLAY

10  FOR MR. GHAHREMAN WHILE HE IS TESTIFYING TO BRING IN THE

11  EVIDENCE I THINK I NEED TO SHOW THE CIRCUMSTANCES OF THOSE

12  STATEMENTS.

13        SO I AM JUST RAISING THAT NOW SO THAT WE DON'T HAVE

14  TO STOP IN FRONT OF THE JURY AND ASK ABOUT HOW TO DO THAT.

15        I HAVEN'T HAD A CHANCE TO DISCUSS THIS WITH MR.

16  HARRIGAN, SO I DON'T MEAN TO SURPRISE HIM WITH ANY OF THIS.  I

17  AM JUST TRYING TO THINK OF THE MOST EFFICIENT WAY.

18        THE COURT:  WHATEVER YOU AGREE ON WOULD BE FINE WITH

19  ME.

20        MR. HARRIGAN:  I DON'T KNOW IF WE CAN AGREE.  I

21  DON'T THINK HE CAN JUST PLAY THE CLIP AND SAY, LISTEN TO THIS,

22  TELL US WHAT HAPPENED.

23        I THINK HE CAN ASK HIM, YOU KNOW, I THINK THAT IS

24  THE PROPER THING TO DO.  I DON'T THINK IT IS ADMISSIBLE -- HIS

25  STATEMENTS ARE NOT ADMISSIBLE.
```

APRIL 21, 2015

1280

```
 1          THE COURT:  SO ABSENT AN AGREEMENT, YOU CAN DO IT ON

 2   CROSS.

 3          MR. JOHNSTON:  AND IF HE CAN'T REMEMBER THE EXACT

 4   WORDS THAT WERE SAID TO HIM, I CERTAINLY WOULD HAVE THE

 5   ABILITY UNDER THE RULES TO REFRESH HIS RECOLLECTION WITH THE

 6   TRANSCRIPT.

 7          THE COURT:  RIGHT.

 8          MR. JOHNSTON:  AND I WOULD DO IT THE WAY MR.

 9   HARRIGAN DID IT, WITHOUT PUBLISHING THE TRANSCRIPT TO THE

10   JURY.

11          THE COURT:  THAT WORKS.

12          MR. JOHNSTON:  THE LAST ISSUE I WANTED TO RAISE IS

13   MR. HARRIGAN DID CHOOSE SOME PARTICULAR STATEMENTS MADE BY

14   MR. GHAHREMAN TO THE AGENTS POST-ARREST.  I THINK OUT OF

15   FAIRNESS -- THESE STATEMENTS WERE VERY NARROW AND POTENTIALLY

16   TAKEN OUT OF CONTEXT.  ONE EXAMPLE WAS --

17          MR. HARRIGAN:  THAT IS FOR REDIRECT, YOUR HONOR.

18          MR. JOHNSTON:  AND I INTEND TO REDIRECT HIM, BUT I

19   AM RAISING THIS NOW SO THAT I CAN ASK HIM ABOUT WHAT HE SAID

20   IN RESPONSE TO THESE QUESTIONS.  AND AGAIN IN THE SAME WAY, IF

21   HE NEEDS TO REFRESH HIS RECOLLECTION FROM THE TRANSCRIPT, I

22   WILL HAVE HIM DO THAT.

23          BUT I ALSO HAVE THESE CLIPS PREPARED TO AT LEAST

24   GIVE CONTEXT TO HIS STATEMENTS BEYOND THE SMALL LINES THAT THE

25   GOVERNMENT HAS EXAMINED HIM ON.
```

APRIL 21, 2015

1    **MR. HARRIGAN:**  I WOULD OBJECT TO THE ADMISSIBILITY

2    OF THE CLIPS WITHOUT SOME FURTHER -- IT WAS FOR THE PURPOSE OF

3    IMPEACHING HIM.  I BROUGHT OUT HIS STATEMENTS.  IT IS NOT LIKE

4    I INTRODUCED THESE IN, YOU KNOW, WHERE THE RULE OF

5    COMPLETENESS NECESSARILY WOULD OCCUR.

6         TO THE EXTENT HE WANTS TO CORRECT THAT, HE CAN ASK

7    HIM.  TO THE EXTENT HE WANTS TO PLAY THEM FOR THE JURY, I

8    OBJECT TO THAT.  I DON'T THINK THEY ARE ADMISSIBLE.  THEY MAY

9    BE ADMISSIBLE TO REFRESH RECOLLECTION, BUT THEY ARE HIS OWN

10   STATEMENTS AND THEY ARE HEARSAY.

11   **THE COURT:**  THEY ARE HEARSAY.  SO YOU ARE MAKING A

12   611 TYPE FAIRNESS --

13   **MR. JOHNSTON:**  611, RULE OF COMPLETENESS.

14   COMPLETENESS, AS WELL AS 806, WHICH IS AN EXCEPTION TO HEARSAY

15   WHEN THE GOVERNMENT INTRODUCES A STATEMENT WHERE FURTHER

16   STATEMENTS BY THE DECLARANT WOULD IMPEACH THE CREDIBILITY OF

17   THAT STATEMENT.

18        LET ME READ AN EXAMPLE SO THE COURT KNOWS WHERE I AM

19   COMING FROM.

20        MR. HARRIGAN SAID TO MR. GHAHREMAN:  MR. HAMAKO

21   SAID -- AGENT HAMAKO SAID, BUT YOU KNEW THAT VALFAJR WORKS

22   WITH IRISL AND IS PART OF IRISL, ISLAMIC REPUBLIC OF IRAN

23   SHIPPING LINES, YES?

24        MR. GHAHREMAN:  THAT IS THE -- YES.  THAT I KNOW.

25        THE VERY NEXT QUESTION:  SO YOU KNEW THAT VALFAJR IS

APRIL 21, 2015

```
 1    AN IRANIAN COMPANY, YES?
 2              I AM NOT SURE.  THAT IS 100 PERCENT.
 3              AND THEN THEY GO ON AND MR. GHAHREMAN TRIES TO
 4    EXPLAIN HOW HE DOESN'T KNOW IF IT IS OWNED BY THE IRANIAN
 5    GOVERNMENT, WHAT SHARES THERE ARE.
 6              AND SO I THINK TO HAVE A FAIR UNDERSTANDING OF WHAT
 7    HIS STATEMENTS WERE, IT WASN'T THE SINGLE STATEMENT THAT, YES,
 8    THEY WORKED FOR IRISL.
 9              AND EVEN AGENT HAMAKO, TOWARDS THE END OF THIS,
10    AGREES:  OKAY.  SO YOU THINK, BUT THEY WORK WITH IRISL A LOT.
11    MAYBE THEY ARE NOT A DIRECT SUBSIDIARY, BUT THEY WORK WITH
12    IRISL A LOT, YES?
13              MR. GHAHREMAN:  YES.
14              THAT IS QUITE DIFFERENT THAN THE STATEMENT THAT HAS
15    BEEN INTRODUCED IN ISOLATION.  SO I NEED TO BE ABLE TO GET
16    THAT OUT.  I WILL DO IT IN THE MOST EFFICIENT WAY.
17              **THE COURT:**  YOU CAN ASK HIM.
18              **MR. HARRIGAN:**  ASK HIM.
19              **MR. JOHNSTON:**  I CAN ASK HIM, BUT IF HE CAN'T
20    REMEMBER THE EXACT WORDS I AM GOING TO NEED TO HAVE HIM
21    REFRESH HIS RECOLLECTION.
22              **THE COURT:**  I THINK ALL I CAN INDICATE AT THIS
23    POINT, THERE BEING AN OBJECTION, IS WHAT MR. GHAHREMAN
24    ACTUALLY SAID, SO WHAT'S IN THE TRANSCRIPT, IS HEARSAY.  IT
25    DOESN'T QUALIFY UNDER RULE 106, AS THAT RELATES TO WRITINGS,
```

APRIL 21, 2015

1283

```
1   RULE OF COMPLETENESS.  IT IS REALLY A 611 ISSUE, A FAIRNESS
2   ISSUE.
3              THE EXAMPLE YOU JUST GAVE, YOU COULD ASK MR.
4   GHAHREMAN NOT WHAT HE SAID TO THE AGENT AT THAT TIME, BUT
5   JUST TO CLARIFY ON IRISL AND WHAT'S HIS UNDERSTANDING OF IT,
6   WITHOUT GETTING INTO HEARSAY.
7              IF YOU ACTUALLY WANT TO GO INTO THE TRANSCRIPT AND
8   INDICATE, HERE IS WHAT MR. HARRIGAN QUOTED YOU SAID, BUT THEN
9   HERE IS THE REST OF WHAT YOU SAID, THAT COULD BE PROBLEMATIC.
10             MR. JOHNSTON:  THAT IS WHY I RAISE IT NOW, BECAUSE I
11  DO THINK UNDER 806, AS WELL AS 801(D)(1)(E), PRIOR CONSISTENT
12  STATEMENTS --
13             THE COURT:  RIGHT.  BUT HE --
14             MR. JOHNSTON:  THERE ARE EXCEPTIONS THAT I THINK ARE
15  WARRANTED IN THIS CASE.  AND I THINK IT IS MORE -- IF MR.
16  GHAHREMAN SAYS, THAT'S WHAT I SAID THEN, BUT THIS IS WHAT I
17  KNOW NOW; THAT IS NOT NEARLY THE SAME THING AS SAYING, BUT I
18  FURTHER TRIED TO EXPLAIN TO HIM AT THE TIME OF THAT
19  INTERROGATION THAT I WASN'T 100 PERCENT SURE.
20             THAT'S WHAT IT IS REALLY ABOUT.  SAYING TODAY
21  SOMETHING THAT HE DIDN'T SAY THEN DOESN'T CURE THAT, IN MY
22  OPINION, UNFAIRNESS OF THE ISOLATED SUBJECT.
23             THE COURT:  CAN YOU MAKE SURE I HAVE A TRANSCRIPT,
24  AND THEN YOU CAN POINT TO PAGE AND LINE SUMMARY.  JUST SO YOU
25  WILL HAVE THE BENEFIT OF MY THOUGHT, IS THAT 106 DOESN'T APPLY
```

APRIL 21, 2015

```
 1    BECAUSE IT IS NOT A WRITTEN STATEMENT.  THE PRIOR CONSISTENT
 2    STATEMENT DOESN'T APPLY BECAUSE THERE WAS A MOTIVE TO,
 3    CANDIDLY SPEAKING, FABRICATE, SO IT DOESN'T FALL WITHIN THAT
 4    EXCEPTION.
 5            WHAT DOES APPLY IS 611, AND IT MAY BE A FAIRNESS
 6    ISSUE, THAT GOVERNMENT BRINGS OUT POINT A, AND THEN IN THE
 7    SAME SENTENCE OR PARAGRAPH MR. GHAHREMAN SAID SOMETHING ELSE.
 8            BUT I CAN'T RULE ON THAT UNLESS I SEE THE
 9    TRANSCRIPT.  IT MAY COME IN UNDER 611, THE ACTUAL HEARSAY
10    STATEMENT.  BUT I CAN ONLY RULE ON IT IF I SEE THE TRANSCRIPT
11    AND I KNOW SPECIFICALLY WHAT YOU ARE ASKING.
12            MR. JOHNSTON:  MINE HAS A LOT OF SCRIBBLES ON IT,
13    BUT MAYBE THE GOVERNMENT CAN EMAIL ME A COPY.
14            MR. HARRIGAN:  I CAN PROVIDE THE COURT -- WOULD THE
15    COURT LIKE ME TO EMAIL IT TO MS. KLOSTERMAN?
16            THE COURT:  SURE.
17            MR. HARRIGAN:  I CAN DO THAT.  I WILL DO THAT THIS
18    AFTERNOON.
19            THE COURT:  YES.
20            MR. HARRIGAN:  I DON'T KNOW I HAVE AN OBJECTION TO,
21    UNDER THAT, HAVING HIM ASK WHAT ELSE DID HE SAY.  IT SOUNDED
22    LIKE WHAT WAS GOING TO HAPPEN, I AM GOING TO PLAY A TAPE, AND
23    ISN'T THAT WHAT YOU SAID?  WITH HIM BEING ABLE TO SAY AND
24    ARTICULATE WHAT HE SAID.  AND IF HE CAN'T REMEMBER SHOW HIM.
25    BUT JUST SHOWING HIM -- PLAYING THE TRANSCRIPT IS -- I THINK
```

APRIL 21, 2015

```
 1    IT IS -- IT IS IMPROPER.  MR. GHAHREMAN SAID A LOT OF THINGS
 2    IN THAT INTERVIEW AND IN THAT REPORT.  HE SAID YES, AND THEN
 3    LATER ON, AFTER THAT, WENT BACK AND SAID, I HEARD ABOUT IT SIX
 4    MONTHS AGO.
 5             I PICKED OUT TWO VERY SHORT -- I BELIEVE THE
 6    TESTIMONY WAS, AT LEAST WHAT I TRIED TO ELICIT WAS THAT HE
 7    KNEW THEY WORKED FOR THEM SOMEHOW, AND THAT WAS HIS -- HIS
 8    ANSWER. NOT THAT THEY WERE A SUBSIDIARY.  IF THAT WAS THE
 9    IMPRESSION THAT WAS LEFT, I THINK THAT IS THE ANSWER HE GAVE
10    WAS HE KNEW THEY WORK FOR THEM.
11             I STILL SAY I AM NOT GOING TO ARGUE -- AND I THINK
12    IT WAS MADE PRETTY CLEAR THAT HE SAID HE KNEW THAT WAS AN
13    IRANIAN COMPANY IN IRAN.  HE DOESN'T SAY THAT IN THE -- IN
14    THE -- OR NECESSARILY THAT IT WAS MEANT IT WAS GOING TO IRAN.
15    BUT HE ALSO SAID, IN THAT SAME TRANSCRIPT, I DON'T KNOW WHERE
16    IT IS GOING TO BE INSTALLED.
17             SO I THINK MAYBE IF MR. JOHNSTON AND I TALK TOMORROW
18    MORNING MAYBE WE WILL BE ABLE TO RESOLVE THIS WITHOUT THE
19    COURT'S INTERVENTION.
20             MR. JOHNSTON:  I AM HAPPY TO JUST PUSH FORWARD, YOUR
21    HONOR, AND FIND THE MOST EFFICIENT WAY TO GET THROUGH THIS.
22    THAT IS WHY I RAISED IT NOW INSTEAD OF LATER.
23             MR. HARRIGAN:  I THOUGHT YOU WERE GOING TO PLAY THE
24    TRANSCRIPT.
25             MR. JOHNSTON:  NO, I DIDN'T INTEND TO PLAY THE WHOLE
```

APRIL 21, 2015

```
 1   HOUR-AND-40-MINUTE LONG INTERROGATION.
 2           THE COURT:  SO YOU ARE ANTICIPATING HALF HOUR MORE?
 3           MR. HARRIGAN:  YES.
 4           THE COURT:  AND YOU ANTICIPATE A HALF HOUR?
 5           MR. HARRIGAN:  IT TAKES ME -- YOU SAW.  IT TAKES,
 6   JUST FOR THE ONE POINT, 10 MINUTES.  I MAY JUST GIVE UP.
 7           MR. COUGHLIN:  YOUR HONOR, NO OFFENSE TO THE CLIENT.
 8           DO YOU PREINSTRUCT?
 9           THE COURT:  YES.
10           MR. COUGHLIN:  AND THEN THEY ARGUE.
11           THE COURT:  YES.
12           MR. COUGHLIN:  VERY GOOD.
13           THE COURT:  AND YOU HAVE A HALF HOUR ON REDIRECT?
14           MR. JOHNSTON:  DEPENDING ON WHAT MR. HARRIGAN DOES.
15   I AM HAPPY TO CLOSE THIS UP AND --
16           MR. HARRIGAN:  I PLAN TO GO OVER TWO AREAS, YOUR
17   HONOR.
18           THE COURT:  HOW ABOUT FOR CLOSING, WHAT IS YOUR TIME
19   ESTIMATE?
20           MR. HARRIGAN:  90 MINUTES.
21           THE COURT:  90?
22           MR. HARRIGAN:  YEAH.
23           MR. JOHNSTON:  I AM SHOOTING FOR UNDER AN HOUR, YOUR
24   HONOR.
25           THE COURT:  OKAY.
```

APRIL 21, 2015

1287

```
 1              MR. JOHNSTON:  I AM NOT PROMISING THAT.
 2              THE COURT:  OKAY.  SO I AM NOT GOING TO SET TIME
 3    LIMITS, BUT I WOULD SIMPLY POINT OUT THAT THE JURY, THEY ARE
 4    READY.  THEY HAVE HEARD -- THEY HAVE GOT THE CASE.
 5              SO I THINK TOMORROW YOU WILL REALLY BE PICKING AT
 6    THE EDGES ON YOUR CROSS AND ON YOUR REDIRECT.  AND THE JURY IS
 7    GOING TO REACH A POINT, PRETTY QUICKLY, WHERE THEY GET --
 8              MR. HARRIGAN:  IF THEY ARE NOT ALREADY --
 9              THE COURT:  -- ANNOYED.  THEY ARE REALLY READY.
10              MR. HARRIGAN:  THANK YOU.
11              THE COURT:  THANK YOU.
12
13                              *   *   *
14              I CERTIFY THAT THE FOREGOING IS A CORRECT
                TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
15              IN THE ABOVE-ENTITLED MATTER.
16              S/LEEANN PENCE                    6/16/2015
17              LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
18
19
20
21
22
23
24
25
```

APRIL 21, 2015